








AXR    7/24/02    13:02

3:02-CV-00046   NICHOLS INSTITUTE V. SCANTIBODIES CLINIC

*57*

*DECL.*

1
Douglas E. Olson (State Bar Number 38649)
Vicki G. Norton (State Bar Number 175076)
2
BROBECK, PHLEGER & HARRISON LLP
12390 El Camino Real
3
San Diego, CA 92130-2081
Telephone: (858) 720-2500
4
Facsimile: (858) 720-3700
5
Attorneys for Plaintiff Nichols Institute Diagnostics Inc.
6

FILED

JUL 22 2002

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

7
UNITED STATES DISTRICT COURT
8
FOR THE SOUTHERN DISTRICT OF CALIFORNIA
9

| NICHOLS INSTITUTE DIAGNOSTICS, INC., | ) | Case No.:  02 CV 0046 B (LAB) |
|---|---|---|
| Plaintiff, | ) ) ) ) ) | **DECLARATION OF JAMES T. CARMICHAEL IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT PURSUANT TO 35 U.S.C. § 102(f) FOR NONJOINDER OF CO-INVENTOR** |
| v. | ) | |
| SCANTIBODIES CLINICAL LABORATORY, INC.; and SCANTIBODIES LABORATORY, INC. | ) ) ) | |
| Defendants. | ) ) ) ) | Date:        August 5, 2002 Time:        10:30 a.m. Crtroom:    2 |
| | ) ) | The Hon. Rudi M. Brewster |
| AND RELATED COUNTERCLAIMS | ) ) ) ) | |





57

I, JAMES T. CARMICHAEL, the undersigned, declare as follows:

1.     I am the managing partner of the Washington, D.C. office of Lyon & Lyon LLP.

2.     On July 1, 2002, I personally hand-carried to the U.S. Patent and Trademark Office (PTO) and filed therewith the documents attached hereto as "Exhibit 1."

3.     A filing receipt for the documents in Exhibit 1 is attached hereto as "Exhibit 2." The filing receipt is labeled "Lyon & Lyon LLP Filing Record" and was stamped at the PTO with a stamp reading "RECEIVED July 01 2002 TECH CENTER 1600/2900."

4.     Within Exhibit 1, tab 2 does not have anything behind it because the original check behind tab 2 was removed by me before filing in the PTO. I filed Exhibit 1 with nothing behind tab 2.

5.     Within Exhibit 1, tab 7 is followed by a "PETITION FOR CORRECTION OF INVENTORSHIP." That petition requested the PTO to add Wolf-Georg Forssmann as one of the inventors in U.S. Patent No. 6,030,790.

6.     On July 3, 2002, PTO Supervisory Patent Examiner (SPE) Yvonne Eyler wrote a memo to the PTO Certificates of Correction Branch. A copy of the memo is attached hereto as "Exhibit 3." The memo instructs: "[p]lease issue a Certificate of Correction in U.S. Letters Patent No. 6,030,790 as specified on the attached Certificate." The memo includes a Certificate prepared and signed by SPE Eyler. The signed Certificate states "it has been found that the above identified patent, through error and without deceptive intent, improperly sets forth the inventorship."

7.     On July 8, 2002, the PTO issued a "DECISION GRANTING PETITION." A copy of the decision is attached hereto as "Exhibit 4." The decision granted the "PETITION FOR CORRECTION OF INVENTORSHIP" and indicated that "[t]he patented file is being forwarded to Certificate of Correction Branch for issuance of a certificate naming only the actual inventor or inventors."

8.     After receiving the July 3, 2002, memo from SPE Eyler, Antonio Johnson in the PTO Certificates of Correction Branch prepared a version of the Certificate for publication in the PTO Official Gazette. The publication version is dated for August 6, 2002, and is attached hereto as "Exhibit 5."

9.    On July 16, 2002, Mr. Johnson sent a form memo asking the SPE to check the wording of the publication version he prepared. The memo is attached hereto as "Exhibit 6."

10.    On July 17, 2002, I inspected the official file for U.S. Patent No. 6,030,790 at the PTO in Arlington, Virginia. At that time the PTO provided me with copies of Exhibits 3, 4, 5, and 6 attached hereto.

11.    Based on my review of the official file and my fifteen years experience as a patent attorney, including eight years as a PTO employee, I believe that the Certificate attached hereto as Exhibit 5 is proper and will be published in the PTO Official Gazette on August 6, 2002. This will officially correct U.S. Patent No. 6,030,790 to include Mr. Forssman's name as one of the inventors.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on July 19 2002, at Washington, D.C.

_____
JAMES T. CARMICHAEL, ESQ.

Subscribed and sworn to before me this 19th day of July 2002.

Welsi Cueto
Notary Public

BELKIS A. CUETO
Notary Public District of Columbia
My Commission Expires August 31, 2005

CASE NO. 02CV0046 B (LAB)
DECLARATION OF JAMES T. CARMICHAEL IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

## INDEX TO EXHIBITS ATTACHED TO
## DECLARATION OF JAMES T. CARMICHAEL IN SUPPORT OF
## PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
## PURSUANT TO 35 U.S.C. § 102(f) FOR NONJOINDER OF CO-INVENTOR

Exhibit 1:  Documents filed with U.S. Patent and Trademark Office
in connection with Petition for Correction of Inventorship ........................................ 3

Exhibit 2:  Filing receipt for the documents in Exhibit 1 ........................................................ 198

Exhibit 3:  July 3, 2002, Memo to the PTO Certificates of Correction Branch from
PTO Supervisory Patent Examiner Yvonne Eyler .................................................. 199

Exhibit 4:  July 8, 2002, "DECISION GRANTING PETITION"  issued by the
U.S. Patent and Trademark Office ......................................................................... 201

Exhibit 5:  Version of Certificate of Publication which is scheduled to appear
in the August 6, 2002, U.S. Patent and Trademark Office Official Gazette .......... 203

Exhibit 6:  July 16, 2002, Form Memo from Antonio Johnson Requesting the
Supervisory Patent Examiner SPE to check the wording of the publication
version prepared by Mr. Johnson .......................................................................... 204

**EXHIBIT 1**

1

Patent
274/128

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Patent of: | ) |
| | ) Group Art Unit:  1646 |
| Knut Adermann et al. | ) |
| | ) Attention:  Supervisory Primary |
| Patent No.:  6,030,790 | ) Examiner |
| | ) |
| Filed:       March 27, 1997 | ) **HAND-CARRY TO EXAMINER** |
| | ) |
| For:       ANTIBODIES THAT BIND | ) |
|              PEPTIDES FROM THE HPTH | ) |
|              SEQUENCES | ) |

## TRANSMITTAL LETTER

Assistant Commissioner for Patents
Washington, D.C.  20231

Sir:

The following are attached:

1. Transmittal Letter
2. Check for $130.00
3. Appointment of Associate Attorney
4. Request for Expedited Handling of Certificate of Correction of Office Mistake
5. Certificate of Correction of Office Mistake
6. Form PTO 1050
7. Petition for Correction of Inventorship
8. Statement of Markus Magerlein
9. Statement of Dieter Hock
10. Statement of Assignee
11. Statement of Knut Adermann
12. Statement of Wolf-Georg Forssmann
13. Complaint for Patent Infringement
14. Answer and Counterclaim
15. Scantibodies' Notice of Motion and Motion for Summary Judgment for Nonjoinder of Co-Inventor
16. Scantibodies' Memorandum of Points and Authorities in Support of Motion for Summary Judgment

DC-11474.1

**Exh. 1, Page 3**

17. Declaration of M. Andrew Woodmansee in Support of Scantibodies' Motion for Summary Judgment

18. [Proposed] Order Granting Motion for Summary Judgment

Please charge or credit Deposit Account No. 12-2475 for any fees due, which are not covered by the above check, as needed.

Respectfully submitted,

LYON & LYON LLP

Dated: _7/1/02_                          By: _____

James T. Carmichael
Reg. No. 45,306

633 West Fifth Street, Suite 4700
Los Angeles, California 90071-2066
202-974-6018

DC-6062.1                          2

Exh. 1, Page 4

CHECK RETURNED

ALL FEES CHARGED TO DEPOSIT ACCOUNT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Patent No.: | ) |
| | ) |
| **6,030,790** | ) Art Unit: **1646** |
| | ) |
| Patentees: **Knut Adermann et al.** | ) Attn: **Supervisory Primary** |
| | ) **Examiner** |
| Serial No. **08/817,547** | ) |
| | ) |
| Filed: **March 27, 1997** | ) |
| | ) |
| For:   **ANTIBODIES THAT BIND PEPTIDES FROM THE** ) | |
| **HPTH SEQUENCES** | ) |

### APPOINTMENT OF ASSOCIATE ATTORNEY

Assistant Commissioner for Patents
Washington, D.C.  20231

Sir:

Please recognize <u>James T. Carmichael</u>, Reg. No. <u>45,306</u> of the firm of Lyon & Lyon LLP, 1701 Pennsylvania Avenue, N.W., Suite 1040, Washington, D.C., 20006, as Associate Attorney in the above-entitled application, and address all future communication to the firm.

Respectfully submitted,

By: Roger T. Frost
Reg. No. 22,176

KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia  30309-4530
(404) 815-6500
Docket:  07826-0007 (44816-236089)

ATL.LIB02 83653.1

Patent
274/128

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Patent of: )<br><br>    Knut Adermann et al. )<br><br>Patent No.: 6,030,790 )<br><br>Filed: March 27, 1997 )<br><br>For: ANTIBODIES THAT BIND )<br>    PEPTIDES FROM THE HPTH )<br>    SEQUENCES )| Group Art Unit: 1646<br><br>Attention: Supervisory Primary<br>Examiner<br><br>**HAND-CARRY TO EXAMINER** |

## REQUEST FOR EXPEDITED HANDLING OF
## CERTIFICATE OF CORRECTION OF OFFICE MISTAKE

Assistant Commissioner for Patents
Washington, D.C. 20231

Sir:

    Applicants hereby petition for expedited handling of the accompanying petition for "Certificate of Correction of Office Mistake." The reason for expediting is that the above-identified patent is involved in litigation, as demonstrated by the pleadings filed herewith. These pleadings include:

- Complaint for Patent Infringement
- Answer and Counterclaim
- Scantibodies' Notice of Motion and Motion for Summary Judgment for Nonjoinder of Co-Inventor
- Scantibodies' Memorandum of Points and Authorities in Support of Motion for Summary Judgment
- Declaration of M. Andrew Woodmansee in Support of Scantibodies' Motion for Summary Judgment
- [Proposed] Order Granting Motion for Summary Judgment

DC-11482.1

**Exh. 1, Page 7**

U.S. Patent No. 6,030,790
Attorney Docket: 274/128
July 1, 2002
Page 2

Please charge or credit Deposit Account No. 12-2475 for any fees due, which are not covered by the enclosed check, as needed.

Respectfully submitted,

LYON & LYON LLP

Dated: ___7/1/02___                      By: _____
                                             James T. Carmichael
633 West Fifth Street, Suite 4700            Reg. No. 45,306
Los Angeles, California 90071-2066
202-974-6018

DC-6062.1                         2

**Exh. 1, Page 8**

Patents

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Patent No.:  ) | |
| ) | |
| **6,030,790**  ) | |
| ) | |
| Patentees: **Knut Adermann et al.**  ) | **Attn:**   **Certificate of Correction** |
| ) | **Branch** |
| Serial No. **08/817,547**  ) | |
| ) | |
| Filed:  **March 27, 1997**  ) | |
| ) | |
| For:   **ANTIBODIES THAT BIND PEPTIDES**  ) | |
| **FROM THE HPTH SEQUENCES**  ) | |

## CERTIFICATE OF CORRECTION OF OFFICE MISTAKE

Assistant of Commissioner of Patents
Certificate of Correction Branch
Washington, DC  20231

Sir:

The Patentees identified above, through the undersigned attorney of record, here request the Office to issue a Certificate of Correction for that patent. This request is made pursuant to 37 CFR 1.322 and is accompanied by Form PTO-1050 setting forth the text of the correction.

The error for which correction is sought is the omission from the printed patent of the last two paragraphs in page 9 and all of page 10 in the translated specification. A courtesy copy of the entire translated specification and claims, as submitted on March 27, 1997 with the request to enter the national phase, is attached for the convenience of the Office.

Serial No. 08/817,547

Accordingly, the Office is requested to issue a Certificate of Correction for this

error.

Respectfully submitted,

Roger T. Frost
Reg. No. 22,176

KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia  30309-4530
(404) 815-6500
Docket:  07826-0007 (44816-236089)

## Peptides from the hPTH(1-37) Sequence

The present invention relates to peptides from the sequence of hPTH(1-37), a diagnostic agent obtainable by immunization of animals using said peptides, antibodies or fragments thereof obtainable by immunization of animals using said peptides, and the use of said peptides in the preparation of an agent for diagnosing biologically active hPTH.

Human parathyroid hormone (hPTH), a linear polypeptide having 84 amino acids, plays an important role in the regulation of the calcium metabolism. The metabolism of this hormone gives rise to a large number of C-terminal fragments, the biological functions of which have not yet been elucidated. The hPTH(1-37) has been established as a circulating N-terminal fragment (EP-A 0 349 545). This fragment has the full biological activity of the entire hormone. However, upon loss of the first amino acid, serine, the activity significantly decreases and is lost completely without the first two amino acids, serine and valine.

Serum levels in the range of $10^{-12}$ mol/l are measured for the intact hormone hPTH(1-84) and for the N-terminal fragment. Immunological measuring procedures are employed to determine such low concentrations. Here, the most valid results are provided by measuring procedures according to the double antibody or sandwich principle (e.g., the two-site radioimmunometric assay, IRMA, or the sandwich enzyme-linked immuno sorbent assay, Sandwich ELISA). For hPTH(1-84), such assays are commercially available. For the measurement of hPTH(1-34), an assay according to the double antibody principle is not known.

Here, two antibodies are required. In order to avoid mutual steric hindrance, they must be capable of recognizing antigen epitopes located at a sufficient distance from each other. When immunizing using the intact antigen, a heterogeneous mixture of various antibodies is obtained, which first

- 2 -

must be subjected to an expensive purification in order to
conduct a sandwich assay. According to theoretical calcula-
tions by B.A. Jameson and H. Wolf, The Antigenic Index: A
Novel Algorithm for Predicting Antigenic Determinants,
CABIOS 4, p. 181-186, 1988; it has been possible so far to
detect a preferred sequence having immunogenic activity in
the region of the amino acids 7-14 at the N-terminus. Immuni-
zation with N-terminal fragments according to established
methods predominantly results in antibodies which, as has
been described for hPTH(1-34) (J. Tampe, P. Brozio, H.E.
Manneck, A. Mißbichler, E. Blind, K.B. Millers, H. Schmidt-
Gayk, and F.P. Armbruster, Characterisation of Antibodies
Against Human N-Terminal Parathyroid Hormone by Epitope Map-
ping; J. Immunoassay 13, p. 1-13, 1992), bind in the region
of these amino acids. However, these antibodies are not capa-
ble of discriminating between biologically active and biolog-
ically inactive PTH(1-84) or fragments thereof lacking the
first two amino acids serine and valine.

The technical problem which this invention is based
upon is to provide peptides by means of which it is possible
to eliminate the above-mentioned drawbacks in the diagnosis
of biologically active hPTH.

Surprisingly, the technical problem described above
is solved by means of peptides from the sequence of
hPTH(1-37), which contain α-helical amino acid sequence re-
gions and/or non-structured amino acid sequence regions, said
peptides being capable of inducing antibodies when injected
into animals. The peptides preferably contain the N-terminal
α-helix in the region of the amino acids 5-9, a non-struc-
tured section of the amino acids 10-16, and/or a C-terminal
α-helix in the region of the amino acid sequence 17-34 of
hPTH(1-37). The following peptides of the invention are pref-
erably used for immunizing:

- 3 -

hPTH 1-10

$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-Leu^7-Met^8-His^9-Asn^{10}-OH$ (1)

hPTH 1-9

$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-Leu^7-Met^8-His^9-OH$ (2)

hPTH 1-8

$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-Leu^7-Met^8-OH$ (3)

hPTH 1-7

$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-Leu^7-OH$ (4)

hPTH 1-6

$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-OH$ (5)

hPTH 1-5

$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-OH$ (6)

hPTH 9-18

$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$ (7)

hPTH 10-18

$NH_2-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$ (8)

hPTH 11-18

$NH_2-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$ (9)

hPTH 12-18

$NH_2-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$ (10)

hPTH 13-18

$NH_2-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$ (11)

hPTH 14-18

$NH_2-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$ (12)

Exh. 1, Page 13

- 4 -

hPTH 9-17

$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-OH$ (13)

hPTH 9-16

$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-OH$ (14)

hPTH 9-15

$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-OH$ (15)

hPTH 9-14

$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-OH$ (16)

hPTH 9-13

$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-OH$ (17)

hPTH 24-37

$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-$
$Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (18)

hPTH 25-37

$NH_2-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-$
$Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (19)

hPTH 26-37

$NH_2-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-$
$Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (20)

hPTH 27-37

$NH_2-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-$
$Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (21)

hPTH 28-37

$NH_2-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (22)

hPTH 29-37

$NH_2-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (23)

– 5 –

hPTH 30-37

$NH_2-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (24)

hPTH 31-37

$NH_2-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (25)

hPTH 32-37

$NH_2-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (26)

hPTH 33-37

$NH_2-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (27)

hPTH 24-36

$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-$
$Phe^{34}-Val^{35}-Ala^{36}-OH$ (28)

hPTH 24-35

$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-$
$Phe^{34}-Val^{35}-OH$ (29)

hPTH 24-34

$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-$
$Phe^{34}-OH$ (30)

hPTH 24-33

$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-OH$ (31)

hPTH 24-32

$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-OH$ (32)

hPTH 24-31

$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-OH$ (33)

hPTH 24-30

$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-OH$ (34)

Exh. 1, Page 15

- 6 -

hPTH 24-29

$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-OH$ (35)

hPTH 24-28

$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-OH$ (36)

The indicated sequences represent essential features of the secondary structure in their primary structure, as can be demonstrated by supporting NMR data. One precondition to this end was a determination of the PTH(1-37) secondary structure in physiological solution.

The above-mentioned regions of conspicuous structure have good immunogenic activity. Antibodies are formed, binding to the first amino acids of the N-terminus. Deficiency of only two amino acids gives rise to a substantial loss in affinity. Because these amino acids are indispensable for the biological activity to arise, it is possible by using the peptides of the invention to obtain antibodies recognizing only hPTH and fragments thereof which are biologically active.

Furthermore, antibodies can be produced which detect the mid-region 9-15, as well as antibodies giving C-terminal binding in the region of the amino acids 30-37. According to the invention, it is therefore possible to produce antibodies against hPTH(1-37) regions which, according to theoretical calculations, do not exhibit immunogenic activity within the entire molecule. In addition, these regions are separated from each other by such a far distance that no steric hindrance is present which would prevent simultaneous binding of two antibodies.

In preferred embodiments, the peptides may be modified at the N-terminal end, in the side-chain and/or at the C-terminal end, namely, taking the form of acetylation, amidation, phosphorylation and/or glycosylation products.

Exh. 1, Page 16

- 7 -

Eventually, the peptides of the invention may also be bound to carrier proteins such as hemocyanin, thyroglobulin, bovine serum albumin, ovalbumin, or mouse serum albumin etc.. Binding to the carrier proteins is preferably effected using carbodiimide or formaldehyde.

The peptides of the invention may be used in the preparation of a diagnostic agent. The diagnostic agent of the invention can be obtained using the per se known immunization of animals with at least one of the peptides according to the invention. Following immunization, an immunoglobulin fraction can be isolated from the immunized animals, which contains antibody fractions having an antibody titer against at least one of the peptides of the invention. The invention is also directed to the antibodies thus obtained. In addition to the complete antibodies consisting of $F_{ab}$ and $F_c$, fragments thereof such as $F_{ab}$ or fragments of the antibodies being idiotypes of peptide epitopes may also be used in an alternative embodiment.

The peptides according to the invention are suitable for preparing an agent for the diagnosis of biologically active hPTH(1-37).

Referring to the following examples, the invention will be described in more detail.

Example 1

Solid-Phase Synthesis of Peptides

The method of the invention for synthesizing the peptides is based on the peptide synthesis using a solid support. Each of the C-terminal amino acids is bound to the support material in the presence of dicyclohexylcarbodiimide and dimethylaminopyridine. Wang resin or similar resins are used as support material for the syntheses.

- 8 -

The following derivatives of L-amino acids are used in the synthesis of the sequence, starting from the peptidyl resin as specified: a) hPTH(1-10): Fmoc-Asn(Trt)-Wang resin, Fmoc-His(Trt)-OH, Fmoc-Met-OH, Fmoc-Leu-OH, Fmoc-Gln(Trt)-OH, Fmoc-Ile-OH, Fmoc-Glu(OtBu)-OH, Fmoc-Ser(tBu)-OH, Fmoc-Val-OH, Boc-Ser(tBu)-OH; b) hPTH(9-18): Fmoc-Met-Wang resin, Fmoc-Ser(tBu)-OH, Fmoc-Asn(Trt)-OH, Fmoc-Leu-OH, Fmoc-His(Trt)-OH, Fmoc-Lys(Boc)-OH, Fmoc-Gly-OH, Fmoc-Leu-OH, Fmoc-Asn(Trt)-OH, Boc-His(Trt)-OH; c) hPTH(24-37): Fmoc-Leu-Wang resin, Fmoc-Ala-OH, Fmoc-Val-OH, Fmoc-Phe-OH, Fmoc-Asn(Trt)-OH, Fmoc-His(Trt)-OH, Fmoc-Val-OH, Fmoc-Asp(OtBu)-OH, Fmoc-Gln(Trt)-OH, Fmoc-Leu-OH, Fmoc-Lys(Boc)-OH, Fmoc-Lys(Boc)-OH, Fmoc-Arg(Pmc)-OH, Fmoc-Leu-OH.

The synthesis may be carried out by in situ activation using 2-(1H-benzotriazol-1-yl)-1,1,3,3-tetramethyluronium tetrafluoroborate (TBTU) or derivatives thereof, or benzotriazol-1-yloxy-tris(dimethylamino)phosphonium hexafluorophosphate (BOP) or derivatives thereof in the presence of diisopropylethylamine or N-methylmorpholine and 1-hydroxybenzotriazole, using a four- to tenfold excess of Fmoc-L-amino acid during the coupling reactions in N,N-dimethylformamide, N,N-dimethylacetamide or N-methylpyrrolidone. Removal of the Fmoc groups is effected using 20% piperidine or 2% piperidine and 2% 1,8-diazabicyclo[5.4.0]undec-7-ene (DBU) in N,N-dimethylformamide, N,N-dimethylacetamide or N-methylpyrrolidone. Following synthesis, the resins are washed with 2-propanol and dichloromethane and dried to constant weight in a high vacuum.

Removal from the support and deprotection are carried out by reacting the peptidyl resin with trifluoroacetic acid containing 5% scavenger, water, ethanediol, phenol or thioanisole for 30-90 minutes at room temperature, filtrating, washing with trifluoroacetic acid, and subsequently precipitating with tert-butyl methyl ether. The precipitate is lyophilized from aqueous solution.

Exh. 1, Page 18

**Example 2**

**Purification and Analysis**

The raw products are purified by chromatography on a C18 reversed phase column (10 μm, buffer A: 0.01 N HCl in water; buffer B: 20% isopropanol, 30% methanol, 50% water, 0.01 N HCl; gradient: 10-80% within 60 minutes; detection at 230 nm).

The purity of the products is determined using mass spectrometry and C18 reversed phase chromatography.

**Example 3**

**Coupling to Carrier Protein**

Used as carrier proteins are hemocyanin, thyroglobulin, bovine serum albumin, ovalbumin, or mouse serum albumin. Coupling is performed according to the carbodiimide method by way of the carboxyl groups of the peptides. The peptide is activated in aqueous solution by reaction with 1-ethyl-3-(3-dimethylaminopropyl)carbodiimide hydrochloride for 5 minutes. Coupling is effected by adding the activated peptide to an aqueous solution of the carrier. The molar ratio is 1 peptide on 50 amino acids of the carrier protein. The reaction takes 4 hours.

The reaction is stopped by adding sodium acetate with a final concentration of 100 mM. Incubation is allowed to proceed for one hour.

The protein-peptide conjugate is separated from the peptide by repeated dialysis against 100 mM phosphate buffer, pH 7.2.

- 10 -

Example 4

Synthesis of the Multiple Antigenic Peptides (MAP)

The triple lysine branching is achieved by binding Fmoc-L-lysine(Fmoc)-OH to C-terminal alanine bound to Wang resin using three coupling cycles. Cleavage with piperidine then results in eight free amino functions where the sequences of the human parathyroid hormone are synthesized according to the above description.

Example 5

Immunization

For the first immunization, 125 µg of carrier-peptide conjugate or MAP per kg body weight of the animal to be immunized is dissolved in 250 ml of water and emulsified with 250 µl of complete Freund adjuvant. The emulsion is applied subcutaneously in 10 portions at various positions on the back.

Boosting is carried out after 2-4 weeks in an analogous fashion, the only change being the substitution of the complete Freund adjuvant by the incomplete Freund adjuvant.

~ 11 ~

## CLAIMS

1.        Peptides from the sequence of hPTH(1-37), which contain α-helical amino acid sequence regions and/or non-structured amino acid sequence regions, said peptides being capable of inducing antibodies when injected into animals.

2.        The peptides according to claim 1 from hPTH(1-37) having the sequence

hPTH 1-10
$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-Leu^7-Met^8-His^9-Asn^{10}-OH$        (1)

hPTH 1-9
$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-Leu^7-Met^8-His^9-OH$        (2)

hPTH 1-8
$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-Leu^7-Met^8-OH$        (3)

hPTH 1-7
$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-Leu^7-OH$        (4)

hPTH 1-6
$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-OH$        (5)

hPTH 1-5
$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-OH$        (6)

hPTH 9-18
$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$        (7)

hPTH 10-18
$NH_2-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$        (8)

hPTH 11-18

$NH_2-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$ (9)

hPTH 12-18

$NH_2-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$ (10)

hPTH 13-18

$NH_2-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$ (11)

hPTH 14-18

$NH_2-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$ . (12)

hPTH 9-17

$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-OH$ (13)

hPTH 9-16

$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-OH$ (14)

hPTH 9-15

$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-OH$ (15)

hPTH 9-14

$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-OH$ (16)

hPTH 9-13

$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-OH$ (17)

hPTH 24-37

$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-$
$Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (18)

hPTH 25-37

$NH_2-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-$
$Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (19)

- 13 -

hPTH 26-37
$NH_2-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-$
$Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (20)

hPTH 27-37
$NH_2-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-$
$Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (21)

hPTH 28-37
$NH_2-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-$
$Leu^{37}-OH$ (22)

hPTH 29-37
$NH_2-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (23)

hPTH 30-37
$NH_2-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (24)

hPTH 31-37
$NH_2-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (25)

hPTH 32-37
$NH_2-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (26)

hPTH 33-37
$NH_2-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (27)

hPTH 24-36
$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-$
$Phe^{34}-Val^{35}-Ala^{36}-OH$ (28)

hPTH 24-35
$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-$
$Phe^{34}-Val^{35}-OH$ (29)

Exh. 1, Page 23

– 14 –

hPTH 24-34

$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-OH$ (30)

hPTH 24-33

$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-OH$ (31)

hPTH 24-32

$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-OH$ (32)

hPTH 24-31

$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-OH$ (33)

hPTH 24-30

$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-OH$ (34)

hPTH 24-29

$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-OH$ (35)

hPTH 24-28

$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-OH$ (36)

3.       The peptides according to claim 1 and/or 2, which are modified at the N-terminal end, in the side-chain and/or at the C-terminal end, taking the form of acetylation, amidation, phosphorylation and/or glycosylation products and/or are bound to carrier proteins such as hemocyanin, thyroglobulin, bovine serum albumin, ovalbumin, or mouse serum albumin.

4.       A diagnostic agent which can be obtained using the _per se_ known immunization of animals with at least one of the peptides according to at least one of claims 1 - 3, recovering fractions containing immunoglobulins from the immunized animals, and isolating fractions having an antibody titer against at least one of the

Exh. 1, Page 24

- 15 -

peptides according to at least one of claims 1 - 3, and which optionally contains additional adjuvants and/or vehicles.

5.     Antibodies or fragments of antibodies, which can be obtained by immunizing animals with at least one of the peptides according to at least one of claims 1 - 3.

6.     Use of the peptides according to at least one of claims 1 - 3 for producing an agent for the diagnosis of biologically active hPTH(1-37).

- 16 -

## Abstract

The present invention is directed to peptides from the sequence of hPTH(1-37), which contain α-helical amino acid sequence regions and/or non-structured amino acid sequence regions, said peptides being capable of inducing antibodies when injected into animals. Furthermore, the invention is directed to a diagnostic agent and antibodies obtainable by immunizing animals using the peptides according to the invention.

Exh. 1, Page 26

Staple
Here
Only!

# UNITED STATES PATENT AND TRADEMARK OFFICE
## CERTIFICATE OF CORRECTION

PATENT NO.      :      6,030,790

DATED           :      March 27, 1997

INVENTOR(S)     :      Knut Andermann, et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

Column 6, after line 56, insert the following text:

--The reaction is stopped by adding sodium acetate with a final concentration of 100mM. Incubation is allowed to proceed for one hour.

The protein-peptide conjugate is seperated from the peptide by repeated dialysis against 100 mM phosphate buffer, pH 7.2.

Example 4

Synthesis of the Multiple Antigenic Peptides (MAP)

The triple lysine branching is achieved by binding Fmoc-L-lysine (Fmoc) –OH to C-terminal alanine bound to Wang resin using three coupling cyles.  Cleavage with piperidine then results in eight free amino functions where the sequences of the human parathyroid hormone are synthesized according to the above description.

Example 5

Immunization

For the first immunization, 125 mg of carrier-peptide conjugate or MAP per kg body weight of the animal to be immunized is dissolved in 250 ml of water and emulsified with 250 ml of complete Freund adjuvant.  The emulsion is applied subcutaneously in 10 portions at various positions on the back.

Boosting is carried out after 2-4 weeks in an analogous fashion, the only change being the substitution of the complete Freund adjuvant by the incomplete Freund adjuvant.--

MAILING ADDRESS OF SENDER:                      PATENT NO. 6,030,790

KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia  30309-4530

No. of add'l copies
@ 30¢ per page

FORM PTO 1050 (REV. 3-82)

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Patent No.: | ) |
| | ) |
| **6,030,790** | ) Art Unit: **1646** |
| | ) |
| Patentees: **Knut Adermann et al.** | ) Attn: **Supervisory Primary** |
| | )        **Examiner** |
| Serial No. **08/817,547** | ) |
| | ) |
| Filed: **March 27, 1997** | ) |
| | ) |
| For:  ANTIBODIES THAT BIND PEPTIDES FROM THE | ) |
| HPTH SEQUENCES | ) |

## PETITION FOR CORRECTION OF INVENTORSHIP

Assistant of Commissioner of Patents
Washington , D.C.  20231

Attn: Supervisory Primary Examiner

Sir:

The above patentees, through the undersigned attorney of record, hereby petition to correct the inventorship named in that patent.

This petition is submitted pursuant to 37. C.F.R. 1.324 and is accompanied by the following documents:

      (a)     a statement from the person being added as an inventor;

      (b)     a statement from the current inventors named on the patent;

      (c)     a statement from the assignee of record of the patent; and

      (d)     the fee set forth in section 1.20(b).

This patent was granted on an application for national-phase prosecution of International Application No. PCT/EP 95/03757. When entering the national phase, the three inventors currently named on the printed patent were identified as "inventors". However, a fourth person (Wolf-Georg Forssmann), was named in the international application as applicant and inventor ("Anmelder und Erfinder") but was omitted from the national-phase entry. This omission occurred through error and without any deceptive intention.

Accordingly, the Office is requested to issue a Certificate adding the following individual as an inventor in this patent:

> Wolf-Georg Forssmann
> Blücherstrasse 5
> 30175 Hannover, Germany

Upon granting of this petition, the corrected inventorship should read as follows:

> Wolf-Georg Forssmann
> Blücherstrasse 5
> 30175 Hannover, Germany
>
> Knut Adermann
> Schleidenstrasse 5
> 30177 Hannover, Germany
>
> Dieter Hock
> Weinbergstrasse 14
> 74924 Neckarsbischofsheim, Germany
>
> Markus Mägerlein
> Eichendorff Strasse 8
> 68167 Mannheim, Germany

The enclosed statement of Wolf-Georg Forssmann states that the inventorship error occurred without any deceptive intention on his part.

The enclosed statement of the current named inventors shows that they agree to the change of inventorship.

The enclosed statement from the current assignee of all inventors, including Wolf-Georg Forssmann, shows that the assignee agrees to the change of inventorship.

The foregoing is submitted as full compliance with the requirements set forth in 37 C.F.R. 1.324.  Accordingly, the Office is requested to issue a certificate adding Wolf-Georg Forssmann to the inventors named in this patent.

Respectfully submitted,

Roger T. Frost
Reg. No. 22,176

KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia  30309-4530
(404) 815-6500
Docket:  07826-0007 (44816-236089)

ATLLIB02 81444.1

**Exh. 1, Page 30**

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re Patent No.: | **6.030,790** | ) | |
| Patentees: | **Knut Adermann et al.** | ) ) | Art Unit: **1646** |
| Serial No.: | **08/817,547** | ) ) | Attn: **Supervisory Primary Examiner** |
| Filed: | **March 27, 1997** | ) ) | |
| For: | **ANTIBODIES THAT BIND PEPTIDES FROM THE HPTH SEQUENCES** | ) ) ) | |

---

### STATEMENT OF MARKUS MÄGERLEIN

Assistant of Commissioner of Patents
Washington D.C. 20231

Attn. Supervisory Primary Examiner

Sir:

       I, the undersigned, Markus Mägerlein, am an inventor currently named in the patent identified above. I agree to the requested change of inventorship, namely, adding Wolf-Georg Forssmann as an inventor named in that patent.

Date: _____          _____
                                           Dr. Markus Mägerlein

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re Patent No.: | **6.030,790** | ) | |
| Patentees: | **Knut Adermann et al.** | ) Art Unit: **1646** | |
| Serial No.: | **08/817,547** | ) Attn: | **Supervisory Primary Examiner** |
| Filed: | **March 27, 1997** | ) | |
| For: | **ANTIBODIES THAT BIND PEPTIDES FROM THE HPTH SEQUENCES** | ) | |

STATEMENT OF DIETER HOCK

Assistant of Commissioner of Patents
Washington D.C. 20231

Attn. Supervisory Primary Examiner

Sir:


I, the undersigned, Dieter Hock, am an inventor currently named in the patent identified above. I agree to the requested change of inventorship, namely, adding Wolf-Georg Forssmann as an inventor named in that patent.

Date: _____

_____
Dr. Dieter Hock

Exh. 1, Page 32

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re Patent No.: | **6.030,790** | ) | |
| | | ) | |
| Patentees: | **Knut Adermann et al.** | ) Art Unit: **1646** | |
| | | ) | |
| Serial No.: | **08/817,547** | ) Attn: | **Supervisory Primary Examiner** |
| | | ) | |
| Filed: | **March 27, 1997** | ) | |
| | | ) | |
| For: | **ANTIBODIES THAT BIND PEPTIDES FROM THE hPTH SEQUENCES** | ) | |
| | | ) | |

### STATEMENT OF ASSIGNEE

Assistant of Commissioner of Patents
Washington D.C. 20231

Attn. Supervisory Primary Examiner

Sir:

      Pharis Biotec GmbH, a corporation under the laws of Germany and the owner by assignment of the patent identified above, agrees to add Wolf-Georg Forssmann to the inventors named in that patent.

Pharis Biotec GmbH

Date: _____

Prof. Dr. Markus Meyer
Managing Director

Date: _____

Dr. Michael Harder
Managing Director

## In the United States Patent and Trademark Office

| | | |
|---|---|---|
| In re Patent No.: | **6.030,790** | ) |
| | | ) |
| Patentees: | **Knut Adermann et al.** | ) Art Unit: **1646** |
| | | ) |
| Serial No.: | **08/817,547** | ) Attn:  **Supervisory Primary** |
| | | )             **Examiner** |
| Filed: | **March 27, 1997** | ) |
| | | ) |
| For: | **Antibodies that bind Peptides from the** | ) |
| | **hPTH Sequences** | ) |

### Statement of Knut Adermann

Assistant of Commissioner of Patents
Washington D.C. 20231

Attn. Supervisory Primary Examiner

Sir:

       I, the undersigned, Knut Adermann, am an inventor currently named in the patent identified above. I agree to the requested change of inventorship, namely, adding Wolf-Georg Forssmann as an inventor named in that patent.

Date: _Jun 13 2002_          _[signature]_
                                Dr. Knut Adermann

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| In re Patent No.: | **6.030,790** | ) | |
| | | ) | |
| Patentees: | **Knut Adermann et al.** | ) Art Unit: | **1646** |
| | | ) | |
| Serial No.: | **08/817,547** | ) Attn: | **Supervisory Primary** |
| | | ) | **Examiner** |
| Filed: | **March 27, 1997** | ) | |
| | | ) | |
| For: | **ANTIBODIES THAT BIND PEPTIDES FROM THE** | ) | |
| | **HPTH SEQUENCES** | ) | |

## STATEMENT OF WOLF-GEORG FORSSMANN

Assistant of Commissioner of Patents
Washington D.C. 20231

Attn. Supervisory Primary Examiner

Sir:

The failure to include the undersigned, Wolf-Georg Forssmann, as an inventor named in the patent identified above occurred without any deceptive intention on the part of the undersigned.

The undersigned acknowledges that on or about March 19, 1997, he signed a "Verified Statement (Declaration) by a Non-Inventor Supporting a Claim by Another for Small Entity Status". That statement was filed at the U.S. Patent and Trademark Office on or about March 27, 1997. My identification in that statement as a "non-inventor" was in error and occurred without any deceptive intention on my part.

Date: _____    _____
Prof. Dr. Wolf-Georg Forssmann

1  Douglas E. Olson (State Bar Number 38649)
   F.T. Alexandra Mahaney (State Bar Number 125984)
2  Moana L. McMullan (State Bar Number 199303)   02 JAN -3 PM 3:03
3  BROBECK, PHLEGER & HARRISON LLP
   12390 El Camino Real
4  San Diego, CA 92130-2081
   Telephone:  (858) 720-2500
5  Facsimile:  (858) 720-3700                    BY:            DEPUTY

6  Attorneys for Plaintiff Nichols Institute Diagnostics Inc.

7

8                 UNITED STATES DISTRICT COURT

9            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10 NICHOLS INSTITUTE DIAGNOSTICS,  ) Case No.: '02 CV 0046 B (LAB)
   INC., a California Corporation, )
11                                 ) COMPLAINT FOR PATENT
            Plaintiff,             ) INFRINGEMENT
12                                 )
       v.                          ) DEMAND FOR JURY TRIAL
13                                 )
   SCANTIBODIES CLINICAL           )
14 LABORATORY, INC., a California   )
   Corporation; SCANTIBODIES       )
15 LABORATORY, INC., a California   )
   Corporation; and DOES 1 through )
16 10,                             )
                                   )
17          Defendants.            )
                                   )
18                                 )
                                   )
19 ──────────────────────────────── )

20

21

22

23

24

25

26

27

28

SDILIB1\MLM2\
412487.04

COMPLAINT

## JURISDICTION AND VENUE

1.   This lawsuit is an action for patent infringement. The Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338, and has jurisdiction over the parties.

2.   Venue is proper in this district under 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b).  A substantial part of the events giving rise to the claim occurred in this district, Defendants' contacts with this district are sufficient to render them amenable to personal jurisdiction in this district, and Defendants have committed acts of infringement in this district.  Defendants' contacts with this judicial district include the following:  (1) Defendants' principal places of business are located in this district; (2) Defendants have purposefully directed the design and manufacture of infringing products which are in turn used, advertised, offered for sale and sold in this judicial district; and (3) Defendants have purposefully directed the use, advertisement, offer for sale and sale of infringing products in this judicial district.  These contacts are related to, or gave rise to, the claims for patent infringement contained in this complaint.

## PARTIES

3.   Plaintiff NICHOLS INSTITUTE DIAGNOSTICS, INC. is a corporation organized under the laws of the State of California and has its principal place of business at 33051 Calle Aviador, San Juan Capistrano, California, 92675.

4.   Defendant SCANTIBODIES CLINICAL LABORATORY, INC. is

1

1  a corporation organized and existing under the laws of the

2  State of California and has its principal place of business

3  at 9663 Abraham Way, Santee, CA, 92027.

4      5.   Defendant SCANTIBODIES LABORATORY, INC. is a

5  corporation organized and existing under the laws of the

6  State of California and has its principal place of business

7  at 9663 Abraham Way, Santee, CA, 92027.

8                          FIRST CLAIM

9          (Infringement of U.S. Patent No. 6,030,790)

10     6.   Plaintiff hereby incorporates by this reference

11  paragraphs 1 through 5 inclusive.

12     7.   U.S. Patent No. 6,030,790 ("the '790 Patent"),

13  entitled "Antibodies That Bind Peptides From The HPTH

14  Sequence (1-37)" was duly and lawfully issued on February 29,

15  2000.  A true and correct copy of the '790 Patent is attached

16  hereto as Exhibit 1.

17     8.   Plaintiff is the exclusive licensee of the

18  '790 Patent and has received all substantial rights under the

19  '790 Patent including the right to prosecute infringement

20  actions in the United States.

21     9.   Defendants have been, and are currently, infringing

22  the '790 Patent in violation of 35 U.S.C. § 271.

23     10.  Upon information and belief, Defendants' acts of

24  infringement will continue after service of this complaint.

25     11.  Upon information and belief, Defendants' past and

26  continued infringement is willful and deliberate, rendering

27  this case appropriate for treble damages under 35 U.S.C.

28  § 284 and making this an exceptional case under

2

SDILIB1\NLM2\
413487.02

COMPLAINT

1   35 U.S.C. § 285.

2      12.  As a result of Defendants' infringement, Plaintiff

3   has suffered and will suffer damages in the form of lost

4   profits, or at a minimum, will be entitled to recover a

5   reasonable royalty.

6      13.  Unless Defendants are enjoined by this Court from

7   continuing their infringement of the '790 Patent, Plaintiff

8   will suffer additional irreparable damages and impairment of

9   the value of its patent rights.  Thus, Plaintiff is entitled

10  to an injunction against further infringement.

11                      **PRAYER FOR RELIEF**

12     WHEREFORE, Plaintiff prays for judgment as follows:

13     A.   That judgment be entered that Defendants are

14  infringing the '790 Patent;

15     B.   That Defendants, and their agents, servants,

16  employees, successors and assignors, and all those acting

17  under the authority of, or in privity or concert with them,

18  and each of them, be preliminarily and permanently enjoined

19  from directly or indirectly infringing the '790 Patent;

20     C.   That judgment be entered for damages, together with

21  prejudgment interest, to compensate Plaintiff for Defendants'

22  infringement of the '790 Patent;

23     D.   That judgment be entered for treble damages pursuant

24  to 35 U.S.C. § 284;

25     E.   That judgment be entered that this case is an

26  exceptional case within the meaning of 35 U.S.C. § 285, and

27  for an award of reasonable attorneys' fees to Plaintiff;

28     F.   That judgment be entered for costs to be awarded to

3

SDILIB1\MLM2\
412487.02                                              COMPLAINT

1    Plaintiff; and

2         G.    For such other and further relief as the Court may

3    deem proper under the circumstances.

4                    DEMAND FOR TRIAL BY JURY

5         Pursuant to the Federal Rules of Civil Procedure,

6    Plaintiff respectfully demands a trial by jury.

7

8    Dated:   January 8, 2002      Respectfully submitted,

9                                  BROBECK, PHLEGER & HARRISON, LLP

10

11                                 BY: _____

12                                     Douglas E. Olson
                                       ATTORNEYS FOR PLAINTIFF

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

COMPLAINT

US006030790A

# United States Patent [19]

Adermann et al.

| | |
|---|---|
| [11] Patent Number: | 6,030,790 |
| [45] Date of Patent: | Feb. 29, 2000 |

[54] ANTIBODIES THAT BIND PEPTIDES FROM THE HPTH SEQUENCE (1-37)

[75] Inventors: Knut Adermann, Hannover; Dieter Hock, Neckarbischofsheim; Markus Mägerlein, Obernburg, all of Germany

[73] Assignee: Haemopep Pharma GmbH, Germany

[21] Appl. No.: 08/817,547

[22] PCT Filed: Sep. 22, 1995

[86] PCT No.: PCT/EP95/03757

§ 371 Date: Mar. 27, 1997

§ 102(e) Date: Mar. 27, 1997

[87] PCT Pub. No.: WO96/10041

PCT Pub. Date: Apr. 4, 1996

[30]     Foreign Application Priority Data

Sep. 28, 1994 [DE] Germany ..................... P 44 34 551

[51] Int. Cl.⁷ ........................... G01N 33/43; C07K 16/26

[52] U.S. Cl. ..................... 435/7.1; 436/512; 530/387.1; 530/387.2; 530/387.9; 530/388.24

[58] Field of Search .................... 435/7.1; 436/512; 530/387.1, 387.2, 387.9, 388.24

[56]        References Cited

U.S. PATENT DOCUMENTS

4,508,828   4/1985   Lindall et al. ..................... 436/500

OTHER PUBLICATIONS

Nussbaum et al. Chemical Abstracts 96(5), Abstract No. 29060, 1982.
Tampe et al. J. Immunoassay 13(1):1–13, 1992.
Daniel et al. Virology 202: 540–549, 1994.
Bowie et al. Science 247:1306–1310, 1990.
Ngo et al. The Protein Folding Problem and Tertiary Structure Prediction, Merz et al., eds., Birkhauser, Boston, pp. 492–495, 1994.

Primary Examiner—Elizabeth Kemmerer
Attorney, Agent, or Firm—Jones & Askew, LLP

[57]        ABSTRACT

The present invention is directed to peptides from the sequence of hPTH(1–37), which contain α-helical amino acid sequence regions and/or non-structured amino acid sequence regions, said peptides being capable of inducing antibodies when injected into animals. Furthermore, the invention is directed to a diagnostic agent and antibodies obtainable by immunizing animals using the peptides according to the invention.

25 Claims, No Drawings

6,030,790

## 1

### ANTIBODIES THAT BIND PEPTIDES FROM THE HPTH SEQUENCE (1-37)

This application was filed under 35 U.S.C. § 371 and claims priority from PCT/EP95/03757, filed Sep. 22, 1995.

The present invention relates to peptides from the sequence of hPTH(1-37), and the use of said peptides in the preparation of an agent for diagnosing biologically active hPTH.

Human parathyroid hormone (hPTH), a linear polypeptide having 84 amino acids, plays an important role in the regulation of the calcium metabolism. The metabolism of this hormone gives rise to a large number of C-terminal fragments, the biological functions of which have not yet been elucidated. The hPTH(1-37) has been established as a circulating N-terminal fragment (EP-A 0 349 545). This fragment has the full biological activity of the entire hormone. However, upon loss of the first amino acid, serine, the activity significantly decreases and is lost completely without the first two amino acids, serine and valine.

Serum levels in the range of $10^{-12}$ mol/l are measured for the intact hormone hPTH(1-84) and for the N-terminal fragment. Immunological measuring procedures are employed to determine such low concentrations. Here, the most valid results are provided by measuring procedures according to the double antibody or sandwich principle (e.g., the two-site radioimmunometric assay, IRMA, or the sandwich enzyme-linked immuno sorbent assay, Sandwich ELISA). For hPTH(1-84), such assays are commercially available. For the measurement of hPTH(1-34), an assay according to the double antibody principle is not known.

## 2

Here, two antibodies are required. In order to avoid mutual steric hindrance, they must be capable of recognizing antigen epitopes located at a sufficient distance from each other. When immunizing using the intact antigen, a heterogeneous mixture of various antibodies is obtained, which first must be subjected to an expensive purification in order to conduct a sandwich assay. According to theoretical calculations by B. A. Jameson and H. Wolf, The Antigenic Index: A Novel Algorithm for Predicting Antigenic Determinants, CABIOS 4, p. 181–186, 1988, it has been possible so far to detect a preferred sequence having immunogenic activity in the region of the amino acids 7–14 at the N-terminus. Immunization with N-terminal fragments according to established methods predominantly results in antibodies which, as has been described for hPTH(1-34) (J. Tampe, P. Brozio, H. E. Manneck, A. Mißbichler, E. Bünd, K. B. Millers, H. SchmidtGayk, and F. P. Armbruster, Characterisation of Antibodies Against Human N-Terminal Parathyroid Hormone by Epitope Mapping; J. Immunoassay 13, p. 1–13, 1992), bind in the region of these amino acids. However, these antibodies are not capable of discriminating between biologically active and biologically inactive PTH (1–84) or fragments thereof lacking the first two amino acids serine and valine.

The technical problem which this invention is based upon is to provide peptides by means of which it is possible to eliminate the above-mentioned drawbacks in the diagnosis of biologically active hPTH.

Surprisingly, the technical problem described above is solved by means of the following peptides from the sequence of hPTH(1-37):

hPTH 1-10 SEQ I.D. NO.1
$NH_2$-Ser$^1$-Val$^2$-Ser$^3$-Glu$^4$-Ile$^5$-Gln$^6$-Leu$^7$-Met$^8$-His$^9$-Asn$^{10}$-OH    (1)

hPTH 1-9 SEQ I.D. NO.2
$NH_2$-Ser$^1$-Val$^2$-Ser$^3$-Glu$^4$-Ile$^5$-Gln$^6$-Leu$^7$-Met$^8$-His$^9$-OH    (2)

hPTH 1-8 SEQ I.D. NO.3
$NH_2$-Ser$^1$-Val$^2$-Ser$^3$-Glu$^4$-Ile$^5$-Gln$^6$-Leu$^7$-Met$^8$-OH    (3)

hPTH 1-7 SEQ I.D. NO.4
$NH_2$-Ser$^1$-Val$^2$-Ser$^3$-Glu$^4$-Ile$^5$-Gln$^6$-Leu$^7$-OH    (4)

hPTH 1-6 SEQ I.D. NO.5
$NH_2$-Ser$^1$-Val$^2$-Ser$^3$-Glu$^4$-Ile$^5$-Gln$^6$-OH    (5)

hPTH 1-5 SEQ I.D. NO.6
$NH_2$-Ser$^1$-Val$^2$-Ser$^3$-Glu$^4$-Ile$^5$-OH    (6)

hPTH 9-18 SEQ I.D. NO.7
$NH_2$-His$^9$-Asn$^{10}$-Leu$^{11}$-Gly$^{12}$-Lys$^{13}$-His$^{14}$-Leu$^{15}$-Asn$^{16}$-Ser$^{17}$-Met$^{18}$-OH    (7)

hPTH 10-18 SEQ I.D. NO.8
$NH_2$-Asn$^{10}$-Leu$^{11}$-Gly$^{12}$-Lys$^{13}$-His$^{14}$-Leu$^{15}$-Asn$^{16}$-Ser$^{17}$-Met$^{18}$-OH    (8)

hPTH 11-18 SEQ I.D. NO.9
$NH_2$-Leu$^{11}$-Gly$^{12}$-Lys$^{13}$-His$^{14}$-Leu$^{15}$-Asn$^{16}$-Ser$^{17}$-Met$^{18}$-OH    (9)

hPTH 12-18 SEQ I.D. NO.10
$NH_2$-Gly$^{12}$-Lys$^{13}$-His$^{14}$-Leu$^{15}$-Asn$^{16}$-Ser$^{17}$-Met$^{18}$-OH    (10)

hPTH 13-18 SEQ I.D. NO.11
$NH_2$-Lys$^{13}$-His$^{14}$-Leu$^{15}$-Asn$^{16}$-Ser$^{17}$-Met$^{18}$-OH    (11)

hPTH 14-18 SEQ I.D. NO.12
$NH_2$-His$^{14}$-Leu$^{15}$-Asn$^{16}$-Ser$^{17}$-Met$^{18}$-OH    (12)

hPTH 9-17 SEQ I.D. NO.13
$NH_2$-His$^9$-Asn$^{10}$-Leu$^{11}$-Gly$^{12}$-Lys$^{13}$-His$^{14}$-Leu$^{15}$-Asn$^{16}$-Ser$^{17}$-OH    (13)

hPTH 9-16 SEQ I.D. NO.14

6,030,790

<table>
<tr><td>3</td><td>4</td></tr>
</table>

-continued

NH$_2$-His$^9$-Asn$^{10}$-Leu$^{11}$-Gly$^{12}$-Lys$^{13}$-His$^{14}$-Leu$^{15}$-Asn$^{16}$-OH     (14)

hPTH 9-15 SEQ I.D. NO.15
NH$_2$-His$^9$-Asn$^{10}$-Leu$^{11}$-Gly$^{12}$-Lys$^{13}$-His$^{14}$-Leu$^{15}$-OH     (15)

hPTH 9-14 SEQ I.D. NO.16
NH$_2$-His$^9$-Asn$^{10}$-Leu$^{11}$-Gly$^{12}$-Lys$^{13}$-His$^{14}$-OH     (16)

hPTH 9-13 SEQ I.D. NO.17
NH$_2$-His$^9$-Asn$^{10}$-Leu$^{11}$-Gly$^{12}$-Lys$^{13}$-OH     (17)

hPTH 24-37 SEQ I.D. NO.18
NH$_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-
Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH     (18)

hPTH 25-37 SEQ I.D. NO.19
NH$_2$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-
Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH     (19)

hPTH 26-37 SEQ I.D. NO.20
NH$_2$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-
Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH     (20)

hPTH 27-37 SEQ I.D. NO.21
NH$_2$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-
Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH     (21)

hPTH 28-37 SEQ I.D. NO.22
NH$_2$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH     (22)

hPTH 29-37 SEQ I.D. NO.23
NH$_2$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH     (23)

hPTH 30-37 SEQ I.D. NO.24
NH$_2$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH     (24)

hPTH 31-37 SEQ I.D. NO.25
NH$_2$-Val$^{31}$-His$^{32}$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH     (25)

hPTH 32-37 SEQ I.D. NO.26
NH$_2$-His$^{32}$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH     (26)

hPTH 33-37 SEQ I.D. NO.27
NH$_2$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH     (27)

hPTH 24-36 SEQ I.D. NO.28
NH$_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-
Phe$^{34}$-Val$^{35}$-Ala$^{36}$-OH     (28)

hPTH 24-35 SEQ I.D. NO.29
NH$_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-
Phe$^{34}$-Val$^{35}$-OH     (29)

hPTH 24-34 SEQ I.D. NO.30
NH$_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-
Phe$^{34}$-OH     (30)

hPTH 24-33 SEQ I.D. NO.31
NH$_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-OH     (31)

hPTH 24-32 SEQ I.D. NO.32
NH$_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-OH     (32)

hPTH 24-31 SEQ I.D. NO.33
NH$_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-OH     (33)

hPTH 24-29 SEQ I.D. NO.34
NH$_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-OH     (34)

hPTH 24-28 SEQ I.D. NO.35
NH$_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-OH     (35)

The indicated sequences represent essential features of the secondary structure in their primary structure, as can be demonstrated by supporting NMR data. One precondition to this end was a determination of the PTH(1-37) secondary structure in physiological solution.

The above-mentioned regions of conspicuous structure have good immunogenic activity. Antibodies are formed, binding to the first amino acids of the N-terminus. Deficiency of only two amino acids gives rise to a substantial loss in affinity. Because these amino acids are indispensable

Exh. 1, Page 43

6,030,790

5

for the biological activity to arise, it is possible by using the peptides of the invention to obtain antibodies recognizing only hPTH and fragments thereof which are biologically active.

Furthermore, antibodies can be produced which detect the mid-region 9–15, as well as antibodies giving C-terminal binding in the region of the amino acids 30–37. According to the invention, it is therefore possible to produce antibodies against hPTH(1–37) regions which, according to theoretical calculations, do not exhibit immunogenic activity within the entire molecule. In addition, these regions are separated from each other by such a far distance that no steric hindrance is present which would prevent simultaneous binding of two antibodies.

In preferred embodiments, the peptides may be modified at the N-terminal end, in the side-chain and/or at the C-terminal end, namely, taking the form of acetylation, amidation, phosphorylation and/or glycosylation products.

Eventually, the peptides of the invention may also be bound to carrier proteins such as hemocyanin, thyroglobulin, bovine serum albumin, ovalbumin, or mouse serum albumin etc. Binding to the carrier proteins is preferably effected using carbodiimide or formaldehyde.

The peptides of the invention may be used in the preparation of a diagnostic agent. The diagnostic agent of the invention can be obtained using the per se known immunization of animals with at least one of the peptides according to the invention. Following immunization, an immunoglobulin fraction can be isolated from the immunized animals, which contains antibody fractions having an antibody titer against at least one of the peptides of the invention. The invention is also directed to the antibodies thus obtained. In addition to the complete antibodies consisting of $F_{ab}$ and $F_c$, fragments thereof such as $F_{ab}$ or fragments of the antibodies being idiotypes of peptide epitopes may also be used in an alternative embodiment.

The peptides according to the invention are suitable for preparing an agent for the diagnosis of biologically active hPTH(1–37).

Referring to the following examples, the invention will be described in more detail.

EXAMPLE 1

Solid-Phase Synthesis of Peptides

The method of the invention for synthesizing the peptides is based on the peptide synthesis using a solid support. Each of the C-terminal amino acids is bound to the support material in the presence of dicyclohexylcarbodiimide and dimethylaminopyridine. Wang resin or similar resins are used as support material for the syntheses.

The following derivatives of L-amino acids are used in the synthesis of the sequence, starting from the peptidyl resin as specified: a) hPTH(1–10) Seq. I.D. No. 1: Fmoc-Asn(Trt)-Wang resin, Fmoc-His(Trt)-OH, Fmoc-Met-OH, Fmoc-Leu-OH, Fmoc-Gln(Trt)-OH, Fmoc-Ile-OH, Fmoc-Glu(OtBu)-OH, Fmoc-Ser(tBu)-OH, Fmoc-Val-OH, Boc-

6

Ser(tBu)-OH; b) hPTH(9–18) Seq. I.D. No. 7: Fmoc-Met-Wang resin, Fmoc-Ser(tBu)-OH, Fmoc-Asn(Trt)-OH, Fmoc-Leu-OH, Fmoc-His(Trt)-OH, Fmoc-Lys(Boc)-OH, Fmoc-Gly-OH, Fmoc-Leu-OH, Fmoc-Asn(Trt)-OH, Boc-His(Trt)-OH; c) hPTH(24–37) Seq. I.D. No. 18: Fmoc-Leu-Wang resin, Fmoc-Ala-OH, Fmoc-Val-OH, Fmoc-Phe-OH, Fmoc-Asn(Trt)-OH, Fmoc-His(Trt)-OH, Fmoc-Val-OH, Fmoc-Asp(OtBu)-OH, Fmoc-Gln(Trt)-OH, Fmoc-Leu-OH, Fmoc-Lys(Boc)-OH, Fmoc-Lys(Boc)-OH, Fmoc-Arg (Pmc)-OH, Fmoc-Leu-OH.

The synthesis may be carried out by in situ activation using 2-(1H-benzotriazol-1-yl)-1,1,3,3-tetramethyluronium tetrafluoroborate (TBTU) or derivatives thereof, or benzotriazol-1-yloxy-tris(dimethylamino)phosphonium hexafluorophosphate (BOP) or derivatives thereof in the presence of diisopropylethylamine or N-methylmorpholine and 1-hydroxybenzotriazole, using a four- to tenfold excess of Fmoc-L-amino acid during the coupling reactions in N,N-dimethylformamide, N,N-dimethylacetamide or N-methylpyrrolidone. Removal of the Fmoc groups is effected using 20% piperidine or 2% piperidine and 2% 1,8-diazabicyclo[5.4.0]undec-7-ene (DBU) in N,N-dimethylformamide, N,N-dimethylacetamide or N-methylpyrrolidone. Following synthesis, the resins are washed with 2-propanol and dichloromethane and dried to constant weight in a high vacuum.

Removal from the support and deprotection are carried out by reacting the peptidyl resin with trifluoroacetic acid containing 5% scavenger, water, ethanediol, phenol or thioanisole for 30–90 minutes at room temperature, filtrating, washing with trifluoroacetic acid, and subsequently precipitating with tert-butyl methyl ether. The precipitate is lyophilized from aqueous solution.

EXAMPLE 2

Purification and Analysis

The raw products are purified by chromatography on a C18 reversed phase column (10 μm, buffer A: 0.01 N HCl in water; buffer B: 20% isopropanol, 30% methanol, 50% water, 0.01 N HCl; gradient: 10–80% within 60 minutes; detection at 230 nm).

The purity of the products is determined using mass[1] spectrometry and C18 reversed phase chromatography.

EXAMPLE 3

Coupling to Carrier Protein

Used as carrier proteins are hemocyanin, thyroglobulin, bovine serum albumin, ovalbumin, or mouse serum albumin. Coupling is performed according to the carbodiimide method by way of the carboxyl groups of the peptides. The peptide is activated in aqueous solution by reaction with 1-ethyl-3-(3-methylaminopropyl)carbodiimide hydrochloride for 5 minutes. Coupling is effected by adding the activated peptide to an aqueous solution of the carrier. The molar ratio is 1 peptide 50 amino acids of the carrier protein. The reaction takes 4 hours.

SEQUENCE LISTING

(1) GENERAL INFORMATION:

    (iii) NUMBER OF SEQUENCES: 36

6,030,790

7                                                    8

-continued

(2) INFORMATION FOR SEQ ID NO: 1:

    (i) SEQUENCE CHARACTERISTICS:
        (A) LENGTH: 10 amino acids
        (B) TYPE: amino acid
        (C) STRANDEDNESS: unknown
        (D) TOPOLOGY: unknown

    (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

    (iv) ANTI-SENSE: no

    (xi) SEQUENCE DESCRIPTION: SEQ ID NO: 1:

Ser Val Ser Glu Ile Gln Leu Met His Asn
1               5                    10


(2) INFORMATION FOR SEQ ID NO: 2:

    (i) SEQUENCE CHARACTERISTICS:
        (A) LENGTH: 9 amino acids
        (B) TYPE: amino acid
        (C) STRANDEDNESS: unknown
        (D) TOPOLOGY: unknown

    (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

    (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 2:

Ser Val Ser Glu Ile Gln Leu Met His
1               5


(2) INFORMATION FOR SEQ ID NO: 3:

    (i) SEQUENCE CHARACTERISTICS:
        (A) LENGTH: 8 amino acids
        (B) TYPE: amino acid
        (C) STRANDEDNESS: unknown
        (D) TOPOLOGY: unknown

    (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

    (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 3:

Ser Val Ser Glu Ile Gln Leu Met
1               5


(2) INFORMATION FOR SEQ ID NO: 4:

    (i) SEQUENCE CHARACTERISTICS:
        (A) LENGTH: 7 amino acids
        (B) TYPE: amino acid
        (C) STRANDEDNESS: unknown
        (D) TOPOLOGY: unknown

    (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

    (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 4:

Ser Val Ser Glu Ile Gln Leu
1               5

6,030,790

9                                          10

-continued

(2) INFORMATION FOR SEQ ID NO: 5:

   (i) SEQUENCE CHARACTERISTICS:
      (A) LENGTH: 6 amino acids
      (B) TYPE: amino acid
      (C) STRANDEDNESS: unknown
      (D) TOPOLOGY: unknown

   (ii) MOLECULE TYPE: peptide

   (iii) HYPOTHETICAL: no

   (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 5:

Ser Val Ser Glu Ile Gln
1                    5


(2) INFORMATION FOR SEQ ID NO: 6:

   (i) SEQUENCE CHARACTERISTICS:
      (A) LENGTH: 5 amino acids
      (B) TYPE: amino acid
      (C) STRANDEDNESS: unknown
      (D) TOPOLOGY: unknown

   (ii) MOLECULE TYPE: peptide

   (iii) HYPOTHETICAL: no

   (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 6:

Ser Val Ser Glu Ile
1                    5


(2) INFORMATION FOR SEQ ID NO: 7:

   (i) SEQUENCE CHARACTERISTICS:
      (A) LENGTH: 10 amino acids
      (B) TYPE: amino acid
      (C) STRANDEDNESS: unknown
      (D) TOPOLOGY: unknown

   (ii) MOLECULE TYPE: peptide

   (iii) HYPOTHETICAL: no

   (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 7:

His Asn Leu Gly Lys His Leu Asn Ser Met
1                    5                    10


(2) INFORMATION FOR SEQ ID NO: 8:

   (i) SEQUENCE CHARACTERISTICS:
      (A) LENGTH: 9 amino acids
      (B) TYPE: amino acid
      (C) STRANDEDNESS: unknown
      (D) TOPOLOGY: unknown

   (ii) MOLECULE TYPE: peptide

   (iii) HYPOTHETICAL: no

   (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 8:

Asn Leu Gly Lys His Leu Asn Ser Met
1                    5

Exh. 1, Page 46

6,030,790

11             12

-continued

```
(2) INFORMATION FOR SEQ ID NO: 9:

      (i) SEQUENCE CHARACTERISTICS:
           (A) LENGTH: 8 amino acids
           (B) TYPE: amino acid
           (C) STRANDEDNESS: unknown
           (D) TOPOLOGY: unknown

     (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

     (iv) ANTI-SENSE: no

    (xi) SEQUENCE DESCRIPTION: SEQ ID NO: 9:

Leu Gly Lys His Leu Asn Ser Met
1               5


(2) INFORMATION FOR SEQ ID NO: 10:

      (i) SEQUENCE CHARACTERISTICS:
           (A) LENGTH: 7 amino acids
           (B) TYPE: amino acid
           (C) STRANDEDNESS: unknown
           (D) TOPOLOGY: unknown

     (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

     (iv) ANTI-SENSE: no

    (xi) SEQUENCE DESCRIPTION: SEQ ID NO: 10:

Gly Lys His Leu Asn Ser Met
1               5


(2) INFORMATION FOR SEQ ID NO: 11:

      (i) SEQUENCE CHARACTERISTICS:
           (A) LENGTH: 6 amino acids
           (B) TYPE: amino acid
           (C) STRANDEDNESS: unknown
           (D) TOPOLOGY: unknown

     (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

     (iv) ANTI-SENSE: no

    (xi) SEQUENCE DESCRIPTION: SEQ ID NO: 11:

Lys His Leu Asn Ser Met
1               5


(2) INFORMATION FOR SEQ ID NO: 12:

      (i) SEQUENCE CHARACTERISTICS:
           (A) LENGTH: 5 amino acids
           (B) TYPE: amino acid
           (C) STRANDEDNESS: unknown
           (D) TOPOLOGY: unknown

     (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

     (iv) ANTI-SENSE: no

    (xi) SEQUENCE DESCRIPTION: SEQ ID NO: 12:

His Leu Asn Ser Met
```

6,030,790

13                                                              14

-continued

```
:              5
```

```
(2) INFORMATION FOR SEQ ID NO: 13:

     (i) SEQUENCE CHARACTERISTICS:
         (A) LENGTH: 9 amino acids
         (B) TYPE: amino acid
         (C) STRANDEDNESS: unknown
         (D) TOPOLOGY: unknown

     (ii) MOLECULE TYPE: peptide

     (iii) HYPOTHETICAL: no

     (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 13:

His Asn Leu Gly Lys His Leu Asn Ser
1               5


(2) INFORMATION FOR SEQ ID NO: 14:

     (i) SEQUENCE CHARACTERISTICS:
         (A) LENGTH: 8 amino acids
         (B) TYPE: amino acid
         (C) STRANDEDNESS: unknown
         (D) TOPOLOGY: unknown

     (ii) MOLECULE TYPE: peptide

     (iii) HYPOTHETICAL: no

     (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 14:

His Asn Leu Gly Lys His Leu Asn
1               5


(2) INFORMATION FOR SEQ ID NO: 15:

     (i) SEQUENCE CHARACTERISTICS:
         (A) LENGTH: 7 amino acids
         (B) TYPE: amino acid
         (C) STRANDEDNESS: unknown
         (D) TOPOLOGY: unknown

     (ii) MOLECULE TYPE: peptide

     (iii) HYPOTHETICAL: no

     (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 15:

His Asn Leu Gly Lys His Leu
1               5


(2) INFORMATION FOR SEQ ID NO: 16:

     (i) SEQUENCE CHARACTERISTICS:
         (A) LENGTH: 6 amino acids
         (B) TYPE: amino acid
         (C) STRANDEDNESS: unknown
         (D) TOPOLOGY: unknown

     (ii) MOLECULE TYPE: peptide

     (iii) HYPOTHETICAL: no

     (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 16:
```

Exh. 1, Page 48

6,030,790

15                                                                      16

-continued

His Asn Leu Gly Lys His
1               5


(2) INFORMATION FOR SEQ ID NO: 17:

        (i) SEQUENCE CHARACTERISTICS:
            (A) LENGTH: 5 amino acids
            (B) TYPE: amino acid
            (C) STRANDEDNESS: unknown
            (D) TOPOLOGY: unknown

      (ii) MOLECULE TYPE: peptide

     (iii) HYPOTHETICAL: no

      (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 17:

His Asn Leu Gly Lys
1               5


(2) INFORMATION FOR SEQ ID NO: 18:

        (i) SEQUENCE CHARACTERISTICS:
            (A) LENGTH: 14 amino acids
            (B) TYPE: amino acid
            (C) STRANDEDNESS: unknown
            (D) TOPOLOGY: unknown

      (ii) MOLECULE TYPE: peptide

     (iii) HYPOTHETICAL: no

      (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 18:

Leu Arg Lys Lys Leu Gln Asp Val His Asn Phe Val Ala Leu
1               5                   10


(2) INFORMATION FOR SEQ ID NO: 19:

        (i) SEQUENCE CHARACTERISTICS:
            (A) LENGTH: 13 amino acids
            (B) TYPE: amino acid
            (C) STRANDEDNESS: unknown
            (D) TOPOLOGY: unknown

      (ii) MOLECULE TYPE: peptide

     (iii) HYPOTHETICAL: no

      (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 19:

Arg Lys Lys Leu Gln Asp Val His Asn Phe Val Ala Leu
1               5                   10


(2) INFORMATION FOR SEQ ID NO: 20:

        (i) SEQUENCE CHARACTERISTICS:
            (A) LENGTH: 12 amino acids
            (B) TYPE: amino acid
            (C) STRANDEDNESS: unknown
            (D) TOPOLOGY: unknown

      (ii) MOLECULE TYPE: peptide

     (iii) HYPOTHETICAL: no

      (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 20:


Exh. 1, Page 49

6,030,790

17                                                          18

-continued

```
Lys Lys Leu Gln Asp Val His Asn Phe Val Ala Leu
1                5                10
```

(2) INFORMATION FOR SEQ ID NO: 21:

        (i) SEQUENCE CHARACTERISTICS:
            (A) LENGTH: 11 amino acids
            (B) TYPE: amino acid
            (C) STRANDEDNESS: unknown
            (D) TOPOLOGY: unknown

        (ii) MOLECULE TYPE: peptide

        (iii) HYPOTHETICAL: no

        (iv) ANTI-SENSE: no

    (xi) SEQUENCE DESCRIPTION: SEQ ID NO: 21:

```
Lys Leu Gln Asp Val His Asn Phe Val Ala Leu
1                5                10
```

(2) INFORMATION FOR SEQ ID NO: 22:

        (i) SEQUENCE CHARACTERISTICS:
            (A) LENGTH: 10 amino acids
            (B) TYPE: amino acid
            (C) STRANDEDNESS: unknown
            (D) TOPOLOGY: unknown

        (ii) MOLECULE TYPE: peptide

        (iii) HYPOTHETICAL: no

        (iv) ANTI-SENSE: no

    (xi) SEQUENCE DESCRIPTION: SEQ ID NO: 22:

```
Leu Gln Asp Val His Asn Phe Val Ala Leu
1                5                10
```

(2) INFORMATION FOR SEQ ID NO: 23:

        (i) SEQUENCE CHARACTERISTICS:
            (A) LENGTH: 9 amino acids
            (B) TYPE: amino acid
            (C) STRANDEDNESS: unknown
            (D) TOPOLOGY: unknown

        (ii) MOLECULE TYPE: peptide

        (iii) HYPOTHETICAL: no

        (iv) ANTI-SENSE: no

    (xi) SEQUENCE DESCRIPTION: SEQ ID NO: 23:

```
Gln Asp Val His Asn Phe Val Ala Leu
1                5
```

(2) INFORMATION FOR SEQ ID NO: 24:

        (i) SEQUENCE CHARACTERISTICS:
            (A) LENGTH: 8 amino acids
            (B) TYPE: amino acid
            (C) STRANDEDNESS: unknown
            (D) TOPOLOGY: unknown

        (ii) MOLECULE TYPE: peptide

        (iii) HYPOTHETICAL: no

        (iv) ANTI-SENSE: no

6,030,790

19                                                    20

-continued

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 24:

Asp Val His Asn Phe Val Ala Leu
1               5

(2) INFORMATION FOR SEQ ID NO: 25:

        (i) SEQUENCE CHARACTERISTICS:
            (A) LENGTH: 7 amino acids
            (B) TYPE: amino acid
            (C) STRANDEDNESS: unknown
            (D) TOPOLOGY: unknown

    (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

    (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 25:

Val His Asn Phe Val Ala Leu
1               5

(2) INFORMATION FOR SEQ ID NO: 26:

        (i) SEQUENCE CHARACTERISTICS:
            (A) LENGTH: 6 amino acids
            (B) TYPE: amino acid
            (C) STRANDEDNESS: unknown
            (D) TOPOLOGY: unknown

    (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

    (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 26:

His Asn Phe Val Ala Leu
1               5

(2) INFORMATION FOR SEQ ID NO: 27:

        (i) SEQUENCE CHARACTERISTICS:
            (A) LENGTH: 5 amino acids
            (B) TYPE: amino acid
            (C) STRANDEDNESS: unknown
            (D) TOPOLOGY: unknown

    (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

    (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 27:

Asn Phe Val Ala Leu
1               5

(2) INFORMATION FOR SEQ ID NO: 28:

        (i) SEQUENCE CHARACTERISTICS:
            (A) LENGTH: 13 amino acids
            (B) TYPE: amino acid
            (C) STRANDEDNESS: unknown
            (D) TOPOLOGY: unknown

    (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

    (iv) ANTI-SENSE: no

Exh. 1, Page 51

6,030,790

21                                          22

-continued
---

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 28:

Leu Arg Lys Lys Leu Gln Asp Val His Asn Phe Val Ala
1               5                   10


(2) INFORMATION FOR SEQ ID NO: 29:

        (i) SEQUENCE CHARACTERISTICS:
            (A) LENGTH: 12 amino acids
            (B) TYPE: amino acid
            (C) STRANDEDNESS: unknown
            (D) TOPOLOGY: unknown

       (ii) MOLECULE TYPE: peptide

      (iii) HYPOTHETICAL: no

       (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 29:

Leu Arg Lys Lys Leu Gln Asp Val His Asn Phe Val
1               5                   10


(2) INFORMATION FOR SEQ ID NO: 30:

        (i) SEQUENCE CHARACTERISTICS:
            (A) LENGTH: 11 amino acids
            (B) TYPE: amino acid
            (C) STRANDEDNESS: unknown
            (D) TOPOLOGY: unknown

       (ii) MOLECULE TYPE: peptide

      (iii) HYPOTHETICAL: no

       (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 30:

Leu Arg Lys Lys Leu Gln Asp Val His Asn Phe
1               5                   10


(2) INFORMATION FOR SEQ ID NO: 31:

        (i) SEQUENCE CHARACTERISTICS:
            (A) LENGTH: 10 amino acids
            (B) TYPE: amino acid
            (C) STRANDEDNESS: unknown
            (D) TOPOLOGY: unknown

       (ii) MOLECULE TYPE: peptide

      (iii) HYPOTHETICAL: no

       (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 31:

Leu Arg Lys Lys Leu Gln Asp Val His Asn
1               5                   10


(2) INFORMATION FOR SEQ ID NO: 32:

        (i) SEQUENCE CHARACTERISTICS:
            (A) LENGTH: 9 amino acids
            (B) TYPE: amino acid
            (C) STRANDEDNESS: unknown
            (D) TOPOLOGY: unknown

       (ii) MOLECULE TYPE: peptide

      (iii) HYPOTHETICAL: no

6,030,790

23                                    24

-continued

---

(iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 32:

Leu Arg Lys Lys Leu Gln Asp Val His
1               5

(2) INFORMATION FOR SEQ ID NO: 33:

    (i) SEQUENCE CHARACTERISTICS:
        (A) LENGTH: 8 amino acids
        (B) TYPE: amino acid
        (C) STRANDEDNESS: unknown
        (D) TOPOLOGY: unknown

    (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

    (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 33:

Leu Arg Lys Lys Leu Gln Asp Val
1               5

(2) INFORMATION FOR SEQ ID NO: 34:

    (i) SEQUENCE CHARACTERISTICS:
        (A) LENGTH: 7 amino acids
        (B) TYPE: amino acid
        (C) STRANDEDNESS: unknown
        (D) TOPOLOGY: unknown

    (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

    (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 34:

Leu Arg Lys Lys Leu Gln Asp
1               5

(2) INFORMATION FOR SEQ ID NO: 35:

    (i) SEQUENCE CHARACTERISTICS:
        (A) LENGTH: 6 amino acids
        (B) TYPE: amino acid
        (C) STRANDEDNESS: unknown
        (D) TOPOLOGY: unknown

    (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

    (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 35:

Leu Arg Lys Lys Leu Gln
1               5

(2) INFORMATION FOR SEQ ID NO: 36:

    (i) SEQUENCE CHARACTERISTICS:
        (A) LENGTH: 5 amino acids
        (B) TYPE: amino acid
        (C) STRANDEDNESS: unknown
        (D) TOPOLOGY: unknown

    (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

6,030.790

25             26

-continued

```
(iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 36:

Leu Arg Lys Lys Leu
1               5
```

We claim:

1. A kit for detecting active human parathyroid hormone (hPTH) comprising a container and a first group of antibodies or antibody fragments and a second group of antibodies or antibody fragments, wherein the first group selectively binds a peptide of hPTH selected from the group consisting of peptides having SEQ. ID. Nos. 1–6 and the second group selectively binds hPTH at an epitope contained within amino acids 24 to 37.

2. The kit of claim 1, wherein the second group of antibodies or antibody fragments selectively binds a peptide of hPTH selected from the group consisting of peptides having SEQ. ID. Nos. 18–36.

3. The kit of claim 1, wherein the first group of antibodies or antibody fragments selectively bind peptides of hPTH having SEQ. ID. No. 1.

4. The kit of claim 1, wherein the first group of antibodies or antibody fragments selectively bind peptides of hPTH having SEQ. ID. No. 2.

5. The kit of claim 1, wherein the first group of antibodies or antibody fragments selectively bind peptides of hPTH having SEQ. ID. No. 3.

6. The kit of claim 1, wherein the first group of antibodies or antibody fragments selectively bind peptides of hPTH having SEQ. ID. No. 4.

7. The kit of claim 1, wherein the first group of antibodies or antibody fragments selectively bind peptides of hPTH having SEQ. ID. No. 5.

8. The kit of claim 1, wherein the first group of antibodies or antibody fragments selectively bind peptides of hPTH having SEQ. ID. No. 6.

9. An immunological method of detecting active human parathyroid hormone (hPTH) in a sample comprising:

contacting the sample with a first antibody or antibody fragment which selectively binds a peptide of hPTH selected from the group consisting of peptides having SEQ. ID. Nos. 1–6, wherein the first antibody or antibody fragment binds hPTH in the sample;

contacting the sample with a second antibody or antibody fragment which selectively binds hPTH at an epitope contained within amino acids 24 to 37; wherein the second antibody or antibody fragment binds to hPTH bound by the first antibody or antibody fragment; and

detecting the binding of the first and second antibodies or antibody fragments, wherein the binding of the first and second antibodies or antibody fragments indicates the presence of active hPTH in the sample.

10. The method of claim 9, wherein the second antibody or antibody fragment selectively binds a peptide of hPTH selected from the group consisting of peptides having SEQ. ID. Nos. 18–36.

11. The method of claim 9, wherein the first antibody or antibody fragment selectively binds peptides of hPTH having SEQ. ID. No. 1.

12. The method of claim 9, wherein the first antibody or antibody fragment selectively binds peptides of hPTH having SEQ. ID. No. 2.

13. The method of claim 9, wherein the first antibody or antibody fragment selectively binds peptides of hPTH having SEQ. ID. No. 3.

14. The method of claim 9, wherein the first antibody or antibody fragment selectively binds peptides of hPTH having SEQ. ID. No. 4.

15. The method of claim 9, wherein the first antibody or antibody fragment selectively binds peptides of hPTH having SEQ. ID. No. 5.

16. The method of claim 9, wherein the first antibody or antibody fragment selectively binds peptides of hPTH having SEQ. ID. No. 6.

17. A composition comprising an antibody or antibody fragment and a suitable carrier, wherein the antibody or antibody fragment selectively binds a peptide of human parathyroid hormone (hPTH) selected from the group consisting of peptides having SEQ. ID. Nos. 1–6.

18. The composition of claim 17, wherein the composition further comprises a second antibody or antibody fragment, wherein the second antibody or antibody fragment selectively binds hPTH at an epitope contained within amino acids 24 to 37.

19. The composition of claim 17, wherein the second antibody or antibody fragment selectively binds a peptide of hPTH selected from the group consisting of peptides having SEQ. ID. Nos. 18–36.

20. The composition of claim 17, wherein the antibody or antibody fragment selectively binds peptides of hPTH having SEQ. ID. No. 1.

21. The composition of claim 17, wherein the antibody or antibody fragment selectively binds peptides of hPTH having SEQ. ID. No. 2.

22. The composition of claim 17, wherein the antibody or antibody fragment selectively binds peptides of hPTH having SEQ. ID. No. 3.

23. The composition of claim 17, wherein the antibody or antibody fragment selectively binds peptides of hPTH having SEQ. ID. No. 4.

24. The composition of claim 17, wherein the antibody or antibody fragment selectively binds peptides pf hPTH having SEQ. ID. No. 5.

25. The composition of claim 17, wherein the antibody or antibody fragment selectivley binds peptides of hPTH having SEQ. ID. No. 6.

* * * * *

Exh. 1, Page 54

1  DAVID C. DOYLE (BAR NO. 70690)
   ERIC M. ACKER (BAR NO. 135805)
2  M. ANDREW WOODMANSEE (BAR NO. 201780)
   SHANNON M. DAILEY (BAR NO. 185634)
3  MORRISON & FOERSTER LLP
   3811 Valley Centre Drive
4  Suite 500
   San Diego, California  92130-2332
5  Telephone: (858) 720-5100

6  Attorneys for Defendants
   SCANTIBODIES CLINICAL LABORATORY,
7  INC. AND SCANTIBODIES LABORATORY,
   INC.

8

9                    UNITED STATES DISTRICT COURT

10                  SOUTHERN DISTRICT OF CALIFORNIA

11

12
   NICHOLS INSTITUTE DIAGNOSTICS, INC., a        No.      02 CV 0046 B (LAB)
13 California Corporation,

14                Plaintiff,                      ANSWER AND COUNTERCLAIMS OF
                                                 DEFENDANTS SCANTIBODIES
15      v.                                       CLINICAL LABORATORY, INC. AND
                                                 SCANTIBODIES LABORATORY, INC.
16 SCANTIBODIES CLINICAL LABORATORY,
   INC., a California Corporation; and
17 SCANTIBODIES LABORATORY, INC., a
   California Corporation; and DOES 1 through 10,
18 inclusive,

19                Defendants.

20

21      Defendants Scantibodies Clinical Laboratory, Inc. and Scantibodies Laboratory, Inc.

22 (collectively "Scantibodies") answer the Complaint for Patent Infringement of Nichols

23 Institute Diagnostics, Inc. ("Nichols") as follows:

24                    JURISDICTION AND VENUE

25      1.    Scantibodies admits that the district court has subject matter jurisdiction over

26 patent infringement actions, and that the Complaint attempts to set forth a claim for patent

27 infringement.

28
                                    1                    ANSWER AND COUNTER-
                                                         CLAIMS OF DEFENDANTS
sd-89161                   Exh. 1, Page 55

1    2.    Scantibodies admits that venue is proper in this jurisdiction for a properly

2    pleaded patent infringement action against Scantibodies in that Scantibodies' principal place

3    of business is located in this district and that Scantibodies conducts business in this district.

4    Scantibodies denies each and every remaining allegation of paragraph 2 and further denies

5    that it has committed any infringing acts within the district, or anywhere, as alleged in the

6    Complaint.

7                                    **PARTIES**

8    3.    On information and belief, Scantibodies admits the allegations of paragraph 3.

9    4.    Scantibodies admits the allegations of paragraph 4.

10   5.    Scantibodies admits the allegations of paragraph 5.

11                                  **FIRST CLAIM**

12   6.    In response to paragraph 6, Scantibodies incorporates and realleges the above

13   responses to paragraphs 1-5.

14   7.    Scantibodies lacks the knowledge or information sufficient to form a belief as

15   to the truth of the allegations of paragraph 7 and, therefore, denies each and every allegation

16   contained therein.  Scantibodies admits that Exhibit 1 purports to be a copy of U.S. Patent

17   No. 6, 030, 790.

18   8.    Scantibodies lacks the knowledge or information sufficient to form a belief as

19   to the truth of the allegations of paragraph 8 and, therefore, denies each and every allegation

20   contained therein.

21   9.    Scantibodies denies each and every allegation contained in paragraph 9.

22   10.   Scantibodies denies each and every allegation contained in paragraph 10.

23   11.   Scantibodies denies each and every allegation contained in paragraph 11.

24   12.   Scantibodies denies each and every allegation contained in paragraph 12.

25   13.   Scantibodies denies each and every allegation contained in paragraph 13.

26   ///

27   ///

28   ///

2 ·

ANSWER AND COUNTER-
CLAIMS OF DEFENDANTS

1  AFFIRMATIVE DEFENSES

2       Based on the facts presently available to it, Scantibodies alleges the following

3  affirmative defenses:

4                    FIRST AFFIRMATIVE DEFENSE

5                      (Failure to State a Claim)

6       14.    The Complaint fails to state a claim upon which relief may be granted.

7                   SECOND AFFIRMATIVE DEFENSE

8                     (Laches/Estoppel/Waiver)

9

10      15.    Nichols' Complaint, and any claims for damages alleged therein, are barred in

   whole or in part by the equitable doctrine of laches, estoppel and/or waiver.

11

                     THIRD AFFIRMATIVE DEFENSE

12

13             (Patent Invalidity:  Anticipation/Obviousness)

14      16.    Each of the claims of U.S. Patent No. 6, 030, 790  ("the '790 patent") is

15  invalid on the grounds that the purported inventions attempted to be patented are invalid as

16  anticipated under 35 U.S.C. § 102, or invalid as obvious under 35 U.S.C. § 103, or both.

17                   FOURTH AFFIRMATIVE DEFENSE

18                            (Estoppel)

19      17.    By reason of the proceedings in the United States Patent Office, including the

20  prosecution of the application which resulted in the '790 patent and related applications, and

21  by reason of the elections, positions, concessions, representations, and statements therein

22  taken or made by or on behalf of the applicant for such patents, Nichols is estopped from

23  construing the claims of the patents at issue, even if this were otherwise possible, to cover

24  and include any acts by Scantibodies.

25                    FIFTH AFFIRMATIVE DEFENSE

26                (Patent Invalidity:  Prior Invention)

27      18.    Each of the claims of the patent in suit is invalid under 35 U.S.C. §§ 102(f)

28  and 102(g).

                                  3 ·                    ANSWER AND COUNTER-
                                                         CLAIMS OF DEFENDANTS

1

## SIXTH AFFIRMATIVE DEFENSE

2

### (Patent Invalidity:  35 U.S.C. § 112)

3       19.   Each of the claims of the patent in suit is invalid because the specification of

4   the patent fails to comply with 35 U.S.C. § 112.  The claims of the '790 patent are indefinite,

5   and the patent is invalid for lack of enablement, failure to disclose the best mode, and

6   inadequate written description.

7

## SEVENTH AFFIRMATIVE DEFENSE

8

### (Unenforceability By Reason of Inequitable Conduct)

9       20.   The '790 patent is unenforceable because the inventors committed inequitable

10   conduct before the United States Patent and Trademark Office with respect to the '790 patent

11   application.

12       21.   At the time of the filing of the application that issued as the '790 patent, the

13   inventors were aware of information that was material to the patentability of the '790 patent

14   claims.  Material information which was known to at least some of the inventors, included at

15   least the following:  prior art references existed which disclosed elements or combinations of

16   elements that were material to the examination of the application underlying the '790 patent;

17   and what the inventors believed to be (1) the best mode for carrying out the claimed

18   inventions at the time the application for the '790 patent was filed and (2) information

19   relevant to enablement of the claimed inventions.

20       22.   Pursuant to 37 C.F.R. § 1.56 ("Rule 56"), the inventors, their attorneys, and

21   others substantially involved in the prosecution of a patent application are required to

22   disclose to the Patent and Trademark Office (the "PTO") information available to them

23   which is material to the patentability of the application.

24       23.   The inventors, their attorneys, and others substantially involved in the

25   prosecution of the '790 patent (1) failed to disclose the existence of prior art known to them

26   which was material to the examination of the patentability of the '790 patent; (2)

27   mischaracterized or misrepresented the content of material prior art references to the PTO;

28

4

ANSWER AND COUNTER-
CLAIMS OF DEFENDANTS

sd-89161

1   (3) withheld from the PTO the best mode for carrying out the invention known to the

2   inventors at the time the application for the '790 patent was filed; (4) withheld enabling

3   information known to the applicants at the time the application was filed; and (5) failed to

4   identify the correct inventors of the claimed inventions of the '790 patent to the PTO.

5         *Failure to Disclose the Tampe, et al. Reference*

6         24.    The application for the '790 patent is entitled to a priority date in the United

7   States of no earlier than September 22, 1995, the filing date of the PCT Application under 35

8   U.S.C. § 102(b). On information and belief, at the time they filed the application for the '790

9   patent, the inventors and their attorneys were aware of an article entitled "Characterization of

10   Antibodies Against Human N-Terminal Parathyroid Hormone by Epitope Mapping"

11   published in *Journal of Immunoassay* 13(1) 1-13 (1992), by Jens Tampe, *et al.* The article,

12   which was published in 1992, is § 102(b) prior art to the '790 patent.

13         25.    The inventors and their attorneys were aware of the Tampe article and its

14   materiality, as they included it in the background discussion of the '790 patent specification.

15   The article was clearly material to the patentability of the claimed inventions, as the PTO

16   Examiner cited it as the bases for rejecting all pending claims in an August 13, 1998 office

17   action.

18         26.    Neither the inventors nor their agents filed an Information Disclosure

19   Statement ("IDS"), or a PTO Form 1449, with the PTO at any time during the prosecution of

20   the application that issued as the '790 patent. As a result, the inventors and their attorneys

21   never disclosed the content of the Tampe article to the PTO in connection with the

22   examination of the application for the '790 patent.

23         27.    That failure constitutes a breach of the inventors' duty, pursuant to Rule 56, to

24   disclose to the PTO information available to them which is material to the patentability of the

25   application.

26   ///

27   ///

28   ///

ANSWER AND COUNTER-
CLAIMS OF DEFENDANTS

1    *Misrepresentations to the PTO About the Tampe Reference*

2       28.    During the prosecution of the '790 patent, the PTO Examiner issued an office

3    action on August 13, 1998, in which she rejected the pending claims of the application in

4    light of the Tampe *et al.* reference.

5       29.    Applicants, through their attorneys, responded to the office action on

6    December 14, 1998.  On pages 8-9 of their response, Applicants wrote: "Applicant

7    respectfully submit that Tampe *et al* fail to teach antibodies and antibody fragments which

8    selectively bind to active hPTH or antibodies and antibody fragments that are capable of

9    binding to the N-terminus of hPTH."  On that basis, Applicants misrepresented that Tampe *et*

10   *al* "fail to teach each element in the currently pending claims."

11      30.    Applicants further misrepresented the teachings in Tampe *et al* in the

12   background discussion of the '790 patent.  In Column 2, lines 21-24, of the patent,

13   Applicants, through their attorneys, included the following statement about the Tampe

14   reference in the original application to the PTO: "However, these antibodies are not capable

15   of discriminating between biologically active and biologically inactive PTH (1-84) or

16   fragments thereof lacking the first two amino acids serine and valine."

17      31.    Both the office action response and the discussion in the specification

18   constitute misrepresentations of the Tampe reference.  The Tampe *et al* reference clearly

19   teaches antibodies and antibody fragments capable of selectively binding to the N-terminus

20   of hPTH.

21      32.    On information and belief, the Applicants and their attorneys were aware of

22   this teaching in the Tampe reference.

23      33.    On information and belief, the misrepresentations contained in the office

24   action response dated December 14, 1998 were made with an intent to deceive the PTO.  The

25   misrepresentations were highly material, since they opposed an argument of unpatentability

26   from the PTO.

27   ///

28   ///

6 ·

ANSWER AND COUNTER-
CLAIMS OF DEFENDANTS

**Exh. 1, Page 60**

*Concealing Material Information Related to Enablement*

*and the Best Mode For Carrying Out the Claimed Invention*

34.     In their own 1998 article (prior to the issuance of the '790 patent) entitled "Production of Sequence Specific Polyclonal Antibodies to Human Parathyroid Hormone 1-37 by Immunization With Multiple Antigenic Peptides," Applicants discussed the generation of site-specific antibodies to the N-terminus of hPTH peptide, e.g., hPTH 1-10, by incorporating certain amino acid residues and using "multiple antigenic peptide systems (MAP) for immunization." The article discussed the failure of other techniques, such as those disclosed and claimed in the '790 patent, to generate site-specific antibodies to the N-terminus of hPTH.

35.     Neither the Applicants nor their attorneys ever disclosed Applicants' 1998 article to the PTO Examiner.

36.     In their 1998 article, Applicants referred to their own prior work using the MAP technique, as disclosed in their own 1994 article. The 1994 article, written by Applicants, pre-dates the September 22, 1995 filing date for the application underlying the '790 patent.

37.     Neither the Applicants nor their attorneys ever disclosed use of the MAP technique for generating site-specific antibodies to the N-terminus of hPTH, the purported invention claimed by the '790 patent to the PTO.

38.     Applicants knew of the MAP technique to generate site-specific antibodies to the N-terminus of hPTH at least as early as September 22, 1995, the filing date of the PCT Application (WO 96/10041). Applicants disclosed the MAP technique in the specification of the PCT Application, as well as in the European Patent Application (EP 0 783 522 B1) that was filed simultaneously with the application in the United States for the '790 patent. Both the '790 patent and the European patent application claimed priority from the PCT application. At the time they filed their application for the '790 patent in the United States, Applicants knew of the MAP technique and knew it was the best mode for carrying out their

7

1   claimed invention. However, Applicants failed to disclose the MAP technique to the PTO in

2   connection with the application for the '790 patent.

3   *Concealing Identity of the True Inventors from the PTO*

4          39.    On information and belief, applicants for the '790 patent concealed from the

5   PTO the true identity of all the correct inventors of the invention claimed in the patent.

6          40.    Scantibodies is informed and believes, and on that basis alleges, that Wolf-

7   Georg Forssmann and others made inventive contributions to the '790 patent.

8          41.    Forssmann was listed as an inventor on the PCT Application (WO 96/10041)

9   and the European Patent Application (EP 0 783 522 B1) that relate to the subject matter

10   disclosed and claimed in the '790 patent. Forssmann also was listed as an inventor on the

11   1994 German Patent Application (P 44 34 551). That application is the purported basis of

12   the foreign application priority date for the '790 patent. The PCT Application and the

13   European Patent Application also both claimed priority from German Application No. P 44

14   34 551.

15          42.    On information and belief, applicants, their attorneys, and others substantially

16   involved in the prosecution of the '790 patent, were aware of the identity of the correct

17   inventors.

18          43.    Applicants, their attorneys, and others substantially involved in the

19   prosecution of the '790 patent never disclosed to the PTO the identity of the correct

20   inventors.

21          44.    On information and belief, the failure to identify the correct inventors of the

22   '790 patent was done with an intent to deceive the PTO. The information related to the

23   identity of the correct inventors was highly material to the PTO.

24                        **EIGHTH AFFIRMATIVE DEFENSE**

25                              **(Inventorship)**

26          45.    Each of the claims of the '790 patent is invalid under 35 U.S.C. §§ 102(f), 111

27   and 116 for failure to name all of the correct inventors.

28   ///

ANSWER AND COUNTER-
CLAIMS OF DEFENDANTS

1 | COUNTERCLAIMS

2 | By way of counterclaims against Nichols, Scantibodies alleges as follows:

3 | JURISDICTION AND VENUE

4 | 46.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and

5 | 1338(a), because this is an action arising under the federal patent laws as to which the district

6 | courts have original jurisdiction.  Venue is proper in this district pursuant to 28 U.S.C. §

7 | 1391(b) because the defendant resides in this judicial district.

8 | 47.   This Court has original jurisdiction of the Second Counterclaim under 28

9 | U.S.C. § 1338(b) because the Second Counterclaim is an unfair competition claim joined

10 | with a substantial and related claim under the patent laws of the United States.  This Court

11 | has supplemental jurisdiction of the Second Counterclaim under 28 U.S.C. § 1367 because it

12 | is so related to Nichols' federal claim that it forms a part of the same case or controversy

13 | under Article III of the United States Constitution.

14 | 48.   The defendant-counterplaintiffs, Scantibodies Clinical Laboratory, Inc. and

15 | Scantibodies Laboratory, Inc. (collectively "SCL") are corporations organized and existing

16 | under California law, having principal place of business in Santee, California.

17 | 49.   On information and belief, the plaintiff-counterdefendant Nichols Institute

18 | Diagnostics, Inc. ("Nichols") is a corporation organized and existing under California law

19 | and has its principal place of business in San Juan Capistrano, California.

20 | STATEMENT OF THE CASE

21 | 50.   The counterclaims asserted herein are predicated on Nichols' anticompetitive,

22 | exclusionary and unfair conduct.  Nichols is engaging in unfair competition in violation of

23 | California Business and Professions Code Section 17200 *et seq.*

24 | PTH TEST KIT INDUSTRY AND MARKET

25 | 51.   Parathyroid hormone (PTH) is an 84 amino acid peptide.  It is a major factor

26 | in the calcium metabolism of the human body.  The measurement of PTH in plasma has been

27 | central to laboratory investigation of patients with calcium metabolism disorders.

28 |

9

ANSWER AND COUNTER-
CLAIMS OF DEFENDANTS

52.     Generation of site-specific antibodies to the N-terminal bioactive fragment of PTH is key to the development of assays for measurement of PTH.

53.     Due to the importance of detecting accurate levels of PTH in patients, such as kidney dialysis patients, a market has developed for these PTH assays and PTH test kits.

54.     A domestic market for these PTH test kits has developed in the United States. The market continues to grow every year. Worldwide sales of PTH test kits in 2000 totaled approximately $30 million. In 2001, that amount increased to approximately $33 million.

55.     Nichols is the largest producer of PTH test kits in the United States for the kidney dialysis patient testing market. In 2001, Nichols had approximately 75 % of the kidney dialysis patient testing market share in the United States. Behind Nichols, the next largest market shares for the PTH test kit market belonged to the following vendors: Diagnostic Products Corporation (DPC), DiaSorin, and Diagnostic Systems Laboratory (DSL). Scantibodies has been and continues to be a participant in the PTH test kit and lab services market in the United States.

56.     Nichols has monopoly and/or market power in the PTH test kit market in the United States for kidney dialysis patient testing. Scantibodies is informed and believes, and on that basis alleges, that Nichols controls approximately 75 % or more of the PTH test kit market in the United States for kidney dialysis patient testing.

## FDA REGULATIONS GOVERNING PTH TESTING

57.     The extensive regulation by the FDA of medical devices includes the regulation of "in vitro diagnostic products." *See* 21 CFR § 801.119. Test kits for PTH levels in serum and plasma (processed human blood) fall within the definition of "in vitro diagnostic products" subject to FDA regulation as set forth in 21 CFR § 809.3. The applicable federal regulations classify test kits for PTH levels in humans as class two clinical chemistry and clinical toxicology devices pursuant to 21 CFR § 862.1545.

58.     As class two in vitro diagnostic products, all test kits for PTH are subject to the FDA requirements for premarket notification in 21 CFR § 807.81, *et seq.*, and labeling in 21 CFR § 809.10. The premarket notification requirement mandates that all PTH test kit

10·

ANSWER AND COUNTER-
CLAIMS OF DEFENDANTS

1    manufactures provide premarket notification to FDA before introducing PTH test kits into

2    interstate commerce. The labeling requirement mandates that every PTH test contain a label

3    (or manufacturer's instructions or package insert) that includes, among other things,

4    "[r]ecommended storage, handling or shipping instructions for the protection and

5    maintenance of stability of the specimen" to be tested. 21 CFR § 809.10(b)(7)(iv). The

6    manufacturer's instructions or package insert is submitted to the FDA as part of the

7    premarket notification process.

8        59.     Laboratories that use the NICHOLS PTH test kits are required to ensure that

9    certain quality controls are maintained in the use of PTH test kits subject to FDA regulation

10    pursuant to 42 CFR § 493 et seq. These quality control requirements mandate that, prior to

11    reporting patient test results, the laboratories must either: (1) follow the PTH test kit

12    manufacturer's instructions or package insert under 42 CFR § 493.1202(c); or (2) for each

13    method that deviates from the manufacturer's instruction or package insert, comply with 42

14    CFR § § 493.1201 through 493.1221, including verifying and establishing the accuracy,

15    precision, analytical sensitivity, analytical specificity, reportable range of patient test results,

16    reference ranges and any other performance characteristics required for test performance

17    under 42 CFR § 493.1213; establishing calibration and calibration verification procedures for

18    patient testing under 42 CFR § 493.1217, establishing control procedures under 42 CFR

19    § 493.1218; and maintaining documentation of the verification or establishment of all

20    applicable test performance specifications and quality control activities under CFR §

21    493.1213(c) and 42 CFR § 493.1221. On information and belief, no laboratory that uses the

22    NICHOLS PTH test kit has complied with the requirements of 42 CFR § § 493.1201 through

23    493.1221 as required to entitle it to modify the NICHOLS' manufacturer's instructions when

24    using the NICHOLS PTH test kit.

25        60.     A manufacturer of a PTH test kit, such as NICHOLS, is required when it

26    knows, or has knowledge of facts that would give it notice, that its PTH test kit is to be used

27    for conditions, purposes, or uses other than the ones for which the test kit was offered when

28

ANSWER AND COUNTER-
CLAIMS OF DEFENDANTS

sd-89161

1  the manufacturer sold it, to re-label the test kit for the new intended use pursuant to 21 CFR §

2  801.4.

3  ## THE NICHOLS MANUFACTURER'S INSTRUCTIONS OR PACKAGE INSERT

4  61.    NICHOLS has submitted to the FDA, on at least three occasions (the most

5  recent in December 2001), a premarket notification for a PTH test kit pursuant to Section

6  510(k) of the Federal Food, Drug and Cosmetic Act.  For each of these premarket

7  notifications, NICHOLS submitted to the FDA its manufacturer's instructions or package

8  insert for its PTH test kit that is distributed to NICHOLS customers to comply with the

9  labeling requirements of 21 CFR § 809.10.

10  62.    The NICHOLS' manufacturer's instructions or package insert requires that

11  whole blood samples drawn from dialysis patients for PTH testing: (1) be processed to

12  remove cells by centrifugation (or "spinning") "as soon as possible" into serum or plasma;

13  (2) be stored after collection and centrifugation at room temperature for a maximum of 2

14  hours as serum or 48 hours as plasma; (3) be stored after collection and centrifugation at 4

15  degrees Celsius for a maximum of 6 or 8 hours as serum; or (4) be frozen either as serum or

16  plasma immediately following collection and centrifugation.  There is no allowance for

17  storing samples for PTH testing as unprocessed whole blood.

18  63.    Processing of the whole blood samples taken from dialysis patients for PTH

19  testing into serum or plasma requires that the whole blood be "spun" in a centrifuge to

20  separate the plasma from the red blood cells.  The processing or "spinning" of the whole

21  blood samples must occur before the sample is frozen.  The NICHOLS' manufacturer's

22  instructions or package insert for its PTH test kits requires that the whole blood samples be

23  immediately processed ("spun") and stored as plasma or serum according to the specific

24  temperature and time requirements outlined in paragraph 62 above.

25  ## NICHOLS' INDUCEMENT OF THE VIOLATION OF FDA REGULATIONS BY
    ## ITS LABORATORY CUSTOMERS

26

27  64.    Despite the instruction in its manufacturer's instructions or package insert that

28  whole blood be immediately processed ("spun") into plasma or serum, and frozen within 6 or

12 ·

ANSWER AND COUNTER-
CLAIMS OF DEFENDANTS

**Exh. 1, Page 66**

1   8 hours after collection (for serum) and stored at room temperature for a maximum of 48

2   hours after collection (for plasma), NICHOLS, in combination with a laboratory customer

3   (LifeChem Laboratory Services), published an abstract in the scientific journal *Clinical*

4   *Chemistry* in 1995 to induce its laboratory customers to wait up to 24 hours before

5   processing whole blood samples for PTH testing.  The abstract further advised that following

6   processing (centrifugation), plasma or serum samples could be stored at room temperature

7   for 24, 48 or even 72 hours before testing.

8        65.    In the *Clinical Chemistry* abstract, NICHOLS claimed to have conducted a

9   study in which blood samples (not centrifuged and separated) were held at room temperature

10  for "24 hours to simulate typical shipping conditions" from dialysis centers to laboratories.

11  These whole blood samples were "spun" or processed into plasma after 24 hours at room

12  temperature, and allowed to remain at room temperature an additional 24, 48 and 72 hours

13  before being tested for PTH.  The results from testing these samples were then compared

14  against the results from testing "frozen serum specimens" taken from the same patients.

15       66.    The result from this research advocated by Defendants NICHOLS was that

16  allowing whole blood samples to remain at room temperature for 24 hours before processing

17  into plasma or serum — that is, allowing unprocessed whole blood samples to remain at

18  room temperature "for shipment" from dialysis centers to its customers' laboratories —

19  produced results with a correlation of "less than one," but found that this lack of correlation

20  was not statistically significant, permitting the purported conclusion that whole blood could

21  be held at room temperature for 24 hours without centrifugation and separation, to allow for

22  shipping from dialysis centers to its laboratory customers, before being processed into

23  plasma or serum.

24       67.    One of the authors of this *Clinical Chemistry* abstract, who is currently

25  employed by NICHOLS, boasted in March 2002 that the alleged study in this abstract saved

26  Defendant NICHOLS' laboratory customers large amounts of money by eliminating the cost

27  and expense of processing or "spinning" the whole blood samples at their dialysis centers,

28

13

ANSWER AND COUNTER-
CLAIMS OF DEFENDANTS

sd-89161

**Exh. 1, Page 67**

1   and shipping frozen plasma or serum samples packed in dry ice from the dialysis centers to

2   the laboratory for PTH testing.

## NICHOLS' LABORATORY CUSTOMERS' VIOLATION OF THE NICHOLS' MANUFACTURER'S INSTRUCTIONS

5      68.   As a direct result of NICHOLS' inducement, several of its major laboratory

6   customers (representing PTH testing for over 50% of the approximately 330,000 dialysis

7   patients in the United States) who purchase and use the NICHOLS' PTH test kits, provide

8   written instructions to their own dialysis center employees that violate the NICHOLS PTH

9   test kit manufacturer's instructions or package insert regarding the processing and storage of

10  whole blood for PTH testing.  Specifically, these instructions direct employees at the dialysis

11  centers, that are either owned or controlled by the laboratories, not to process (spin) whole

12  blood samples immediately as required by the NICHOLS' manufacturer's instructions and

13  package insert NICHOLS submitted to the FDA.

14     69.   The written instructions NICHOLS' laboratory customers provide to dialysis

15  centers, while directly contrary to the NICHOLS' PTH test kit manufacturer's instructions

16  and package insert, are consistent with the inducement provided by NICHOLS in the 1995

17  *Clinical Chemistry* abstract that whole blood samples not be processed (centrifuged and

18  separated) for up to 24 hours or assayed for up to 72 hours after collection.  These

19  instructions allow NICHOLS' laboratory customers to avoid the expense and cost of

20  processing the whole blood at the dialysis centers and shipping the processed serum or

21  plasma in dry ice to their laboratories.  These instructions also unfairly impede laboratories,

22  such as Scantibodies, that require compliance with their manufacturer's instructions --

23  dictating that whole blood samples be processed into serum or plasma before shipment to a

24  laboratory for PTH testing -- from competing in the PTH testing and lab services market.

25     70.   Despite NICHOLS' laboratory customers' failure to comply with its

26  manufacturer's instructions or package insert for its PTH test kits, and NICHOLS' knowledge

27  of and inducement of this non-compliance by its laboratory customers, NICHOLS has not re-

28  labeled its PTH test kit, and continued to submit manufacturer's instructions or package

14

ANSWER AND COUNTER-
CLAIMS OF DEFENDANTS

**Exh. 1, Page 68**

1    inserts for its PTH test kits to the FDA in premarket notifications that violate the applicable

2    labeling and intended use regulations.

### FIRST COUNTERCLAIM

### (Declaratory Judgment of Invalidity and Non-Infringement)

5    71.    Scantibodies incorporates and realleges paragraphs 1-70 of its Answer,

6    Affirmative Defenses and Counterclaims as if fully set forth herein.

7    72.    This claim arises under the Federal Declaratory Judgment Act and the Patent

8    Laws of the United States, and more particularly, under 28 U.S.C. §§ 2201 and 2202, and 35

9    U.S.C. § 101 et seq.

10    73.    There exists a justiciable controversy between Scantibodies and Nichols

11    concerning whether the '790 patent is valid and enforceable, and if so, whether Scantibodies

12    is liable to Nichols for infringement of any of the claims of the patent at issue.

13    74.    Scantibodies seeks a declaration that the '790 patent is invalid and/or

14    unenforceable.

15    75.    In addition, or as further relief, Scantibodies seeks a declaration that Nichols

16    is estopped from enforcing the '790 patent based on its own wrongful conduct and/or is

17    barred from collecting damages under the patent due to laches, waiver, acquiescence or

18    and/or misuse.

19    76.    A judicial declaration is necessary and appropriate at this time in order that

20    Scantibodies may ascertain its rights and duties with respect to the patent in suit.

### SECOND COUNTERCLAIM

### (Violation of California Business & Professions Code Section 17200)

23    77.    Scantibodies incorporates and realleges paragraphs 1-76 of its Answer,

24    Affirmative Defenses and Counterclaims as if fully set forth herein.

25    78.    Scantibodies brings this claim in both its individual capacity and on behalf of the

26    general public pursuant to California Business & Professions Code Section 17204.

27    79.    Beginning in at least 1995 and continuing to the present, NICHOLS has

28    committed acts of unfair competition, as that term is defined in California Business &

1  Professions Code Section 17200, by engaging in the following unlawful, unfair and

2  fraudulent business acts: (1) failing to comply with the labeling requirements of 21 CFR §

3  809.10 for the "storage, handling or shipping instructions for the protection and maintenance

4  of stability" of blood samples collected from dialysis patients for PTH testing at its

5  customers' laboratories; (2) failing to re-label its PTH test kits when it knew, or had

6  knowledge of facts that gave it notice, that its PTH test kit was being used for conditions,

7  purposes, or uses other than the ones for which the test kit was offered as stated in

8  NICHOLS' manufacturer's instructions or package insert, in violation of 21 CFR § 801.4;

9  and (3) inducing its laboratory customers to violate 42 CFR § 493 *et seq.* by inducing them to

10  not follow the NICHOLS' manufacturer's instructions or package insert when storing and

11  shipping samples collected from dialysis patients for PTH testing.  These violations of the

12  federal regulations controlling the labeling of NICHOLS' PTH test kits constitute unlawful,

13  unfair and fraudulent business practices within the meaning of California Business &

14  Professions Code Section 17200.

15       80.     The harm to Scantibodies and to members of the general public outweighs the

16  utility of Nichols' practice of failing to properly relabel its package insert or manufacturer's

17  instructions to reflect the actual practice of its laboratory customers in processing and storing

18  samples taken from dialysis patients for PTH testing, and therefore constitutes an unfair

19  practice within the meaning of Business & Professions Code Section 17200.

20       81.     Nichols' unlawful, unfair and fraudulent business practices, as described

21  above, continue in that Nichols continues to sell its PTH test kits with the knowledge that its

22  laboratory customers are failing to comply with its package insert or manufacturer's

23  instructions for processing and storing patient samples.  Scantibodies and other members of

24  the public do have not an adequate remedy at law.

25       82.     As a direct result of the above-described unlawful, unfair and fraudulent acts,

26  NICHOLS has continued to dominate the sale of PTH test kits in California, and elsewhere, and

27  also hindered Scantibodies' competition in the market for PTH testing and lab services.  This has

28

16 ·

ANSWER AND COUNTER-
CLAIMS OF DEFENDANTS

resulted in NICHOLS obtaining and holding ill-gotten gains through the sale of PTH test kits to its laboratory customers.

WHEREFORE, Scantibodies prays for judgment that:

**On Nichols' Complaint:**

(a)     Nichols take nothing by way of its Complaint;

(b)     Scantibodies does not infringe the '790 patent;

(c)     the patents at issue are invalid and/or unenforceable against Scantibodies;

(d)     Nichols is estopped from asserting that the patents at issue are infringed by Scantibodies;

(e)     Nichols is barred from collecting damages under the '790 patent based on laches, waiver, acquiescence and/or misuse;

(f)     Scantibodies be awarded its costs and attorney's fees; and

(g)     Scantibodies be awarded such other and further relief as the Court may deem just and reasonable.

**On Scantibodies' Counterclaims:**

WHEREFORE, the defendant-counterplaintiff Scantibodies respectfully requests this court to find and rule:

(a)     That, with respect to the First Counterclaim, the Court enter a declaratory judgment that the Scantibodies products do not infringe any of the claims of the '790 patent, and that

(i)     the '790 patent is invalid;

(ii)    the '790 patent is unenforceable against Scantibodies;

(iii)   Nichols is estopped from asserting that the patent at issue is infringed by Scantibodies;

17 ·

ANSWER AND COUNTER-
CLAIMS OF DEFENDANTS

1

        (iv)    Nichols is barred from collecting damages under the '790 patent based on

2

laches, waiver, acquiescence and/or misuse;

3

        (v)    Scantibodies be awarded its costs and attorney's fees; and

4

        (vi)    such other relief that this Court deems just and reasonable.

5

6

    (b)    That, with respect to the Second Counterclaim, the following relief be granted:

7

        (i)    Nichols be enjoined from engaging in the unlawful, unfair and fraudulent

8

business practices stated in Paragraph 79, *supra*, pursuant to California Business & Professions

9

Code Sections 17203 and the equitable powers of this Court;

10

        (ii)    Nichols be ordered to pay restitution of monies obtained from its unlawful,

11

unfair and fraudulent business practices stated in Paragraph 79, *supra*, pursuant to California

12

Business & Professions Code Sections 17203 and the equitable powers of this Court; .

13

14

        (iii)    For attorneys fees pursuant to California Code of Civil Procedure Section

15

1021.5; and

16

        (iv)    For costs of suit, and for such further relief as the Court may order.

17

Scantibodies requests a jury trial as to its counterclaims.

18

19

Dated: May 9, 2002

20

                          DAVID C. DOYLE

21

                          ERIC M. ACKER
                          M. ANDREW WOODMANSEE

22

                          SHANNON M. DAILEY
                          MORRISON & FOERSTER LLP

23

24

By: _David C. Doyle_

              David C. Doyle

25

26

                          Attorneys for Defendants
                          SCANTIBODIES CLINICAL

27

                          LABORATORY, INC. AND
                          SCANTIBODIES LABORATORY, INC.

28

1 | DAVID C. DOYLE (BAR NO. 70690)
ERIC M. ACKER (BAR NO. 135805)
2 | M. ANDREW WOODMANSEE (BAR NO. 201780)
SHANNON M. DAILEY (BAR NO. 185634)
3 | MORRISON & FOERSTER LLP
3811 Valley Centre Drive
4 | Suite 500
San Diego, California 92130-2332
5 | Telephone: (858) 720-5100

6 | Attorneys for Defendants
SCANTIBODIES CLINICAL LABORATORY,
7 | INC. AND SCANTIBODIES LABORATORY,
INC.

8

9

10 | UNITED STATES DISTRICT COURT

11 | SOUTHERN DISTRICT OF CALIFORNIA

12

13 | NICHOLS INSTITUTE DIAGNOSTICS, INC., a    No.    02 CV 0046 B (LAB)
California Corporation,

14 |                    Plaintiff,

15 |          v.                               SUBSTITUTION OF COUNSEL BY
DEFENDANTS SCANTIBODIES
CLINICAL LABORATORY, INC. AND
16 | SCANTIBODIES CLINICAL LABORATORY,          SCANTIBODIES LABORATORY, INC.
INC., a California Corporation; and
17 | SCANTIBODIES LABORATORY, INC., a
California Corporation; and DOES 1 through 10,
18 | inclusive,

19 |                    Defendants.

20

21 |        Pursuant to Civ. L.R. 83.3, defendants Scantibodies Clinical Laboratory, Inc. and

22 | Scantibodies Laboratory, Inc. (collectively "Scantibodies"), hereby substitute David C.

23 | Doyle (Bar No. 70690), Morrison & Foerster LLP, 3811 Valley Centre Drive, Suite 500, San

24 | Diego, California 92130 as attorney of record in place of Luce, Forward, Hamilton & Scripps

25 | LLP.

26 |        Dated: May 9, 2002

27 |                               By:_____
                                       Thomas Cantor
28 |                               President & CEO, Scantibodies Clinical Laboratory,
                                  Inc. and Scantibodies Laboratory, Inc.

1   Dated:  May 9, 2002

2                                             By:_____
                                                    Thomas Cantor
3                                             President & CEO, Scantibodies Clinical Laboratory,
                                              Inc. and Scantibodies Laboratory, Inc.

4   I hereby consent to the above substitution of attorney.

5   Dated: May 9, 2002

6                                             By:_____
                                                       Edward Patrick Swan
7                                             LUCE, FORWARD, HAMILTON & SCRIPPS

8   I am duly admitted to practice in this District and consent to substitution as attorney

9   of record.

10  Dated:  May 9, 2002

11                                            MORRISON & FOERSTER LLP

12

13

14                                            By:_____
                                                     David C. Doyle

15

16  Substitution of attorney is hereby approved.

17  Dated: _____, 2002

18

19                                            _____
20                                            Honorable Rudi M. Brewster
                                              United States District Judge

21

22

23

24

25

26

27

28

sd-91558                                      2                   SUBSTITUTION OF COUNSEL

Exh. 1, Page 74

I hereby consent to the above substitution of attorney.

Dated: May 9, 2002

By: _Edward P. Swan Jr._
    Edward Patrick Swan, Jr.
    LUCE, FORWARD, HAMILTON & SCRIPPS

I am duly admitted to practice in this District and consent to substitution as attorney of record.

Dated: May 9, 2002

MORRISON & FOERSTER LLP

By:_____
    David C. Doyle

Substitution of attorney is hereby approved.

Dated: _____, 2002

_____
Honorable Rudi M. Brewster
United States District Judge

2                                    SUBSTITUTION OF COUNSEL

sd-91558

PAGE 03

1

2  I hereby consent to the above substitution of attorney.

3  Dated: May 9, 2002

4  By: _____

5  Edward Patrick Swan
   LUCE, FORWARD, HAMILTON & SCRIPPS

6  I am duly admitted to practice in this District and consent to substitution as attorney

7  of record.

8  Dated: May 9, 2002

9  MORRISON & FOERSTER LLP

10

11  By: _____

12  David C. Doyle

13  Substitution of attorney is hereby approved.

14  Dated: _____, 2002

15

16

17  _____
   Honorable Rudi M. Brewster

18  United States District Judge

19

20

21

22

23

24

25

26

27

28

Exh. 1, Page 76

SUBSTITUTION OF COUNSEL

1    Dated:  May 9, 2002

2                                    DAVID C. DOYLE
                                     ERIC M. ACKER
3                                    M. ANDREW WOODMANSEE
                                     SHANNON M. DAILEY
4                                    MORRISON & FOERSTER LLP

5

6                                    By: _David C. Doyle_____
                                          David C. Doyle
7
                                     Attorneys for Defendants
8                                    SCANTIBODIES CLINICAL
                                     LABORATORY, INC. AND
9                                    SCANTIBODIES LABORATORY, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exh. 1, Page 77**                        SUBSTITUTION OF COUNSEL

Case 3:02-cv-00046-B-JMA   Document 57   Filed 07/22/02   Page 96 of 237

033091.0002 QUEST/Scant:
DEO. V.Norton, J.Maki. A.Chang-
QC (Clerks File)

1   DAVID C. DOYLE (BAR NO. 70690)
    ERIC M. ACKER (BAR NO. 135805)
2   M. ANDREW WOODMANSEE (BAR NO. 201780)
    SHANNON M. DAILEY (BAR NO. 185634)
3   MORRISON & FOERSTER LLP
    3811 Valley Centre Drive
4   Suite 500
    San Diego, California 92130-2332
5   Telephone: (858) 720-5100

6   Attorneys for Defendants
    SCANTIBODIES CLINICAL LABORATORY,
7   INC. AND SCANTIBODIES LABORATORY,
    INC.

8

9

10                    UNITED STATES DISTRICT COURT

11                   SOUTHERN DISTRICT OF CALIFORNIA

12

13  NICHOLS INSTITUTE DIAGNOSTICS, INC., a      No.     02 CV 0046 B (LAB)
    California Corporation,

14                          Plaintiff,           PERSONAL PROOF OF SERVICE

15          v.

16  SCANTIBODIES CLINICAL LABORATORY,
    INC., a California Corporation; and
17  SCANTIBODIES LABORATORY, INC., a
    California Corporation; and DOES 1 through 10,
18  inclusive,

19                          Defendants.

20

21          I, the undersigned, declare as follows:

22  1.      At the time of service I was at least 18 years of age and not a party to this case, and I
    served copies of the following documents:
23

24  **ANSWER AND COUNTERCLAIMS OF DEFENDANTS SCANTIBODIES
    CLINICAL LABORATORY, INC. AND SCANTIBODIES LABORATORY,
    INC.**

25

26  **SUBSTITUTION OF COUNSEL BY DEFENDANTS SCANTIBODIES
    CLINICAL LABORATORY, INC. AND SCANTIBODIES LABORATORY,
    INC.**

27

28

PROOF OF SERVICE
CASE NO.: 02 CV 0046 B (LAB)                    Exh. 1, Page 78
sd-91624

a.  Party served:         **Nichols Institute Diagnostics, Inc.**
b.  Person served:        **Douglas E. Olson, Attorney for Plaintiff**

c.  Place of service (Business)

> **F.T. Alexandra Mahaney**
> **Moana L. McMullan**
> **BROBECK, PHLEGER & HARRISON, LLP**
> **12390 El Camino Real**
> **San Diego, CA  92130-2081**
> **Telephone: (858) 720-2500**
> **Facsimile:  (858) 720-3700**

3.  I served the party named in item 2

a.  ☒ by personally delivering the copies on May 9, 2002 at _2:24 p_.
 b.   ☐ by leaving the copies at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served,
         ☒ with a receptionist or, with a person having charge thereof.
         ☐ in a conspicuous place in the office between the hours of nine in the morning and five in the afternoon.

 c.   ☐ by leaving the copies at the individual's residence with some person of not less than 18 years of age.  (If service was to a party and not an attorney, delivery was made between the hours of 8:00 a.m. and 6:00 p.m.).

4.  Person serving (name, business address, and telephone no.:

**ASAP Legal Courier, Inc.**
**4250 Pacific Highway, Suite 120**
**San Diego, CA  92110**
**Tel:  (619) 221-0700**
**Fax: (619) 221-0760**

a. Fee for service:  $
b. ☐ Not a registered California process server.
c. ☐ Exempt from registration under B&P 22350(b).
d. ☒ Registered California process server.
     (1) ☒ Employee or independent contractor.
     (2) Registration No.:
     (3) County:

☒     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: _____O 5090 2_____              _____
                                        (Signature)

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO            2816
CONNECTION TEL      033091#0002#16109832138#
CONNECTION ID       QUEST DIAGNOSTIC
ST. TIME            05/10 15:57
USAGE T             06'22
PGS. SENT            26
RESULT             OK
```

# FACSIMILE TRANSMISSION

Transmission problems: (858) 720-2657

# Brobeck

ATTORNEYS AT LAW

**May 10, 2002**

Brobeck, Phleger & Harrison LLP
12750 High Bluff
Suite 300
San Diego, California 92130-2081
PHONE  858.720.2500
FAX  858.720.3700
www.brobeck.com

| PAGES TO FOLLOW COVER | 25 | USER ID | 6157 | CMID NUMBER | | 0033091.0002 |
|---|---|---|---|---|---|---|

## TO

| RECIPIENT | COMPANY | TELEPHONE | FAX |
|---|---|---|---|
| Wayne B. Brown, Esq. | Quest Diagnostics, Inc. | (949) 728-4747 | (949) 728-4930 |
| Melissa Margulies | Quest Diagnostics, Inc. | (610) 454-4148 | (610) 983-2138 |

## FROM

| SENDER | EMAIL | TELEPHONE | FAX |
|---|---|---|---|
| Douglas E. Olson | dolson@brobeck.com | (858) 720-2662 | (858) 720-3700 |

## MESSAGE

Please see attached:

Exh. 1, Page 80

# FACSIMILE TRANSMISSION
Transmission problems: (858) 720-2657

# Brobeck
ATTORNEYS AT LAW

## May 10, 2002

Brobeck, Phleger & Harrison LLP
12750 High Bluff
Suite 300
San Diego, California 92130-2081
PHONE  858.720.2500
FAX  858.720.3700
www.brobeck.com

| PAGES TO FOLLOW COVER | 25 | USER ID | 6157 | CMID NUMBER | 0033091.0002 |
|---|---|---|---|---|---|

## T O

| RECIPIENT | COMPANY | TELEPHONE | FAX |
|---|---|---|---|
| Wayne B. Brown, Esq. | Quest Diagnostics, Inc. | (949) 728-4747 | (949) 728-4930 |
| Melissa Margulies | Quest Diagnostics, Inc. | (610) 454-4148 | (610) 983-2138 |

## F R O M

| SENDER | EMAIL | TELEPHONE | FAX |
|---|---|---|---|
| Douglas E. Olson | dolson@brobeck.com | (858) 720-2662 | (858) 720-3700 |

## M E S S A G E

Please see attached:

P R I V I L E G E D   A N D   C O N F I D E N T I A L

All information transmitted hereby is intended only for the use of the addressee(s) named above. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient(s), please note that any distribution or copying of this communication is strictly prohibited. Anyone who receives this communication in error should notify us immediately by telephone and mail the original message to us at the above address.

SDILIB1\DEO\390901.01

Exh. 1, Page 81

```
*********************
***    TX REPORT    ***
*********************

TRANSMISSION OK

TX/RX NO              1714
CONNECTION TEL        033091#0002#19497284930#
CONNECTION ID
ST. TIME             05/10 15:41
USAGE T              09'44
PGS. SENT             26
RESULT               OK
```

# FACSIMILE TRANSMISSION

Transmission problems: (858) 720-2657

# Brobeck

ATTORNEYS AT LAW

**May 10, 2002**

Brobeck, Phleger & Harrison LLP
12750 High Bluff
Suite 300
San Diego, California 92130-2081
PHONE 858.720.2500
FAX 858.720.3700
www.brobeck.com

| PAGES TO FOLLOW COVER | 25 | USER ID | 6157 | CMID NUMBER | 0033091.0002 |
| --- | --- | --- | --- | --- | --- |

## T O

| RECIPIENT | COMPANY | TELEPHONE | FAX |
| --- | --- | --- | --- |
| Wayne B. Brown, Esq. | Quest Diagnostics, Inc. | (949) 728-4747 | (949) 728-4930 |
| Melissa Margulies | Quest Diagnostics, Inc. | (610) 454-4148 | (610) 983-2138 |

## F R O M

| SENDER: | EMAIL | TELEPHONE | FAX |
| --- | --- | --- | --- |
| Douglas E. Olson | dolson@brobeck.com | (858) 720-2662 | (858) 720-3700 |

## M E S S A G E

Please see attached:

**Exh. 1, Page 82**

1  DAVID C. DOYLE (BAR NO. 70690)
   ERIC M. ACKER (BAR NO. 135805)
2  M. ANDREW WOODMANSEE (BAR NO. 201780)
   SHANNON M. DAILEY (BAR NO. 185634)
3  MORRISON & FOERSTER LLP
   3811 Valley Centre Drive
4  Suite 500
   San Diego, California 92130-2332
5  Telephone: (858) 720-5100

6  Attorneys for Defendants
   SCANTIBODIES CLINICAL LABORATORY,
7  INC. and SCANTIBODIES LABORATORY, INC.

8

9              UNITED STATES DISTRICT COURT

10           SOUTHERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12  NICHOLS INSTITUTE DIAGNOSTICS, INC., a California corporation, | No.     02 CV 0046 B (LAB) |
| 13 | |
| Plaintiff, | **NOTICE OF MOTION AND MOTION** |
| 14 | **FOR SUMMARY JUDGMENT** |
| v. | **PURSUANT TO 35 U.S.C. § 102(f) FOR** |
| 15 | **NONJOINDER OF CO-INVENTOR** |
| 16  SCANTIBODIES CLINICAL LABORATORY, INC., a California corporation; and | **[FED. R. CIV. P. 56]** |
| 17  SCANTIBODIES LABORATORY, INC., a California corporation, | |
| 18       Defendants. | Date:    July 15, 2002 |
| | Time:    10:30 a.m. |
| | Courtroom 2 |
| 19 | |
| 20  SCANTIBODIES CLINICAL LABORATORY, INC., a California corporation; and | Hon. Rudi M. Brewster |
| 21  SCANTIBODIES LABORATORY, INC., a California corporation, | |
| 22       Counter-Claimants | |
| 23  v. | |
| 24  NICHOLS INSTITUTE DIAGNOSTICS, INC., a California corporation, | |
| 25 | |
| 26       Counter-Defendants. | |

27

28

1    TO PLAINTIFF NICHOLS INSTITUTE DIAGNOSTICS, INC., AND ITS

2    ATTORNEY OF RECORD:

3        PLEASE TAKE NOTICE THAT on July 15, 2002 at 10:30 a.m., or as soon thereafter

4    as the matter may be heard, in Courtroom 2 of the United States District Court for the

5    Southern District of California located at 940 Front Street, San Diego, California, 92101,

6    before the Honorable Rudi M. Brewster, Defendants Scantibodies Clinical Laboratory, Inc.

7    and Scantibodies Laboratory, Inc. ("Scantibodies") will move, and hereby do move, for

8    summary judgment against Plaintiffs.

9        The grounds for this motion are:

10       (1)    The applicants for U.S.Patent No. 6,030,790 failed to identify and join all the

11   inventors in their application to the United States Patent and Trademark Office;

12       (2)    The '790 patent lists only three co-inventors on its face: Knut Adermann

13   ("Adermann"), Dieter Hock ("Hock"), and Markus Mägerlein ("Mägerlein"). The '790 is the

14   "national stage" of an earlier international patent application filed under the Patent

15   Cooperation Treaty ("PCT"). As was appropriate under the PCT and the patent laws of the

16   United States, '790 claimed the filing date of the earlier PCT Application. The PCT

17   Application *is* the application for what ultimately issued as the '790 patent;

18       (3)    Although the '790 patent originated in the PTO as the PCT Application -- and

19   necessarily relied on the same disclosure -- the '790 patent does not name the same inventors.

20   The PCT Application identified Adermann, Hock, Mägerlein *and Wolf-Georg Forssmann* as

21   inventors. The '790, however, does not include Forssmann; and

22       (4)    The omission of Forssmann from the national stage application in the United

23   States renders the '790 patent invalid under 35 U.S.C. § 102(f) for nonjoinder of a co-

24   inventor.

25       This motion is made pursuant to Rule 56 of the Federal Rules of Civil Procedure and

26   is based upon this notice of motion and motion, the accompanying memorandum of points

27   and authorities, the declaration of M. Andrew Woodmansee, the other pleadings and papers

28
                                          1

                                                    CASE NO. 02 CV 0046 B (LAB)
                                                    NOTICE OF MOTION AND MOTION
                                                    FOR SUMMARY JUDGMENT
sd-92492

                        Exh. 1, Page 84

on file in this action, and such other evidence and argument as may subsequently be

presented to the Court.

Dated: May 15, 2002

DAVID C. DOYLE
ERIC M. ACKER
M. ANDREW WOODMANSEE
SHANNON M. DAILEY
MORRISON & FOERSTER LLP

By: _David C. Doyle_
David C. Doyle

Attorneys for Defendants
SCANTIBODIES CLINICAL
LABORATORY, INC. and
SCANTIBODIES LABORATORY, INC.

2

CASE NO. 02 CV 0046 B (LAB)
NOTICE OF MOTION AND MOTION
FOR SUMMARY JUDGMENT

sd-92492

Exh. 1, Page 85

1  DAVID C. DOYLE (BAR NO. 70690)
   ERIC M. ACKER (BAR NO. 135805)
2  M. ANDREW WOODMANSEE (BAR NO. 201780)
   SHANNON M. DAILEY (BAR NO. 185634)
3  MORRISON & FOERSTER LLP
   3811 Valley Centre Drive
4  Suite 500
   San Diego, California  92130-2332
5  Telephone: (858) 720-5100

6  Attorneys for Defendants
   SCANTIBODIES CLINICAL LABORATORY,
7  INC. and SCANTIBODIES LABORATORY, INC.

8

9                    UNITED STATES DISTRICT COURT

10                 SOUTHERN DISTRICT OF CALIFORNIA

11

12 | NICHOLS INSTITUTE DIAGNOSTICS, INC., a   | No.      02 CV 0046 B (LAB)
   | California corporation,
13 |                                          |
   |              Plaintiff,                  | **PROOF OF SERVICE**
14 |                                          |
   |         v.
15 |
   | SCANTIBODIES CLINICAL LABORATORY,
16 | INC., a California corporation; and
   | SCANTIBODIES LABORATORY, INC., a
17 | California corporation,
   |
18 |              Defendants.

19 |
   | SCANTIBODIES CLINICAL LABORATORY,
20 | INC., a California corporation; and
   | SCANTIBODIES LABORATORY, INC., a
21 | California corporation,
   |
22 |              Counter-Claimants
   |
23 |         v.
   |
24 | NICHOLS INSTITUTE DIAGNOSTICS, INC., a
   | California corporation,
25 |
   |              Counter-Defendants.
26

27

28

1        I, the undersigned, declare that I am employed with the law firm of Morrison & Foerster

2   LLP, whose business address is 3811 Valley Centre Drive, Suite 500, San Diego, California

3   92130-2332. I am over the age of eighteen years and not a party to the within action. On May

4   16, 2002, I served the documents named below on the parties in this action as follows:

5   **NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT PURSUANT TO
6   35 U.S.C. § 102(f) FOR NONJOINDER OF CO-INVENTOR**

7   **SCANTIBODIES CLINICAL LABORATORY, INC. AND SCANTIBODIES
   LABORATORY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
   SUPPORT OF MOTION FOR SUMMARY JUDGMENT PURSUANT TO 35 U.S.C. §
8   102(f) FOR NONJOINDER OF CO-INVENTOR**

9   **DECLARATION OF M. ANDREW WOODMANSEE IN SUPPORT OF SCANTIBODIES
   CLINICAL LABORATORY, INC. AND SCANTIBODIES LABORATORY, INC.'S
10  MOTION FOR SUMMARY JUDGMENT PURSUANT TO 35 U.S.C. § 102(f) FOR
   NONJOINDER OF CO-INVENTOR**

11

12  **[PROPOSED] ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
   PURSUANT TO 35 U.S.C. § 102(f) FOR NONJOINDER OF CO-INVENTOR**

13

14  **Douglas E. Olson**               Attorneys for Plaintiff
   **F.T. Alexandra Mahaney**       NICHOLS INSTITUTE DIAGNOSTICS, INC.
15  **Moana L. McMullan**
   **BROBECK, PHLEGER & HARRISON**
16  **12750 High Bluff Drive, Suite 300**
   **San Diego, CA  92130-2081**
17  **Telephone: (858) 720-2500**
   **Facsimile:  (858) 720-3700**

18  ☐    (BY MAIL) I caused each such envelope, with postage thereon fully prepaid, to be placed
   in the United States mail at San Diego, California. I am readily familiar with the practice of
19  Morrison & Foerster LLP for collection and processing of correspondence for mailing, said
   practice being that in the ordinary course of business, mail is deposited in the United States Postal
20  Service the same day as it is placed for collection.

21  ☒    (BY PERSONAL SERVICE) I delivered to an authorized courier or driver authorized by
   ASAP Courier, Inc., 4250 Pacific Highway, Suite 120, San Diego, California 92110, to receive
22  documents to be delivered on the same date. A proof of service signed by the authorized courier
   will be filed with the court upon request.

23

24  ☐    (BY FEDERAL EXPRESS) I am readily familiar with the practice of Morrison &
   Foerster LLP for collection and processing of correspondence for overnight delivery and know
25  that the document(s) described herein will be deposited in a box or other facility regularly
   maintained by Federal Express for overnight delivery.

26  ☐    (BY FACSIMILE) The above-referenced document was transmitted by facsimile
   transmission and the transmission was reported as complete and without error. The facsimile
27  machine I used complied with California Rules of Court, Rule 2003(3) and no error was reported

28

1

1   by the machine. Pursuant to California Rules of Court, Rule 2006(d), I caused the machine to
    print a transmission record of the transmission, a copy of which is attached to this declaration.

2          I declare under penalty of perjury under the laws of the United States of America that the

3   foregoing is true and correct, and that this declaration is executed on May 16, 2002 at San Diego,

4   California.

5

6   Kirsten Blue                                          _____
    (Printed)                                             (Signature)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          2

DEO. V.Norton. J.Maki. A.Chang.
PTurk.(Clients/File)

1  DAVID C. DOYLE (BAR NO. 70690)
   ERIC M. ACKER (BAR NO. 135805)
2  M. ANDREW WOODMANSEE (BAR NO. 201780)
   SHANNON M. DAILEY (BAR NO. 185634)
3  MORRISON & FOERSTER LLP
   3811 Valley Centre Drive
4  Suite 500
   San Diego, California 92130-2332
5  Telephone: (858) 720-5100

6  Attorneys for Defendants
   SCANTIBODIES CLINICAL LABORATORY,
7  INC. and SCANTIBODIES LABORATORY, INC.

8

9                    UNITED STATES DISTRICT COURT

10                  SOUTHERN DISTRICT OF CALIFORNIA

11

12  | NICHOLS INSTITUTE DIAGNOSTICS, INC., a | No.      02 CV 0046 B (LAB) |
    | California corporation, | |

13
    |   Plaintiff, | **SCANTIBODIES CLINICAL** |
14  | | **LABORATORY, INC. AND** |
    |   v. | **SCANTIBODIES LABORATORY,** |
15  | | **INC.'S MEMORANDUM OF POINTS** |
    | SCANTIBODIES CLINICAL LABORATORY, | **AND AUTHORITIES IN SUPPORT** |
16  | INC., a California corporation; and | **OF MOTION FOR SUMMARY** |
    | SCANTIBODIES LABORATORY, INC., a | **JUDGMENT PURSUANT TO** |
17  | California corporation, | **35 U.S.C. § 102(f) FOR NONJOINDER** |
    | | **OF CO-INVENTOR** |
18  |   Defendants. | |
    | | Date:     July 15, 2002 |
19  | | Time:     10:30 a.m. |
20  | SCANTIBODIES CLINICAL LABORATORY, | Courtroom 2 |
    | INC., a California corporation; and | |
    | SCANTIBODIES LABORATORY, INC., a | Hon. Rudi M. Brewster |
21  | California corporation, | |

22  |   Counter-Claimants | |

23  | v. | |

24  | NICHOLS INSTITUTE DIAGNOSTICS, INC., a | |
    | California corporation, | |
25
    |   Counter-Defendants. | |
26

27

28

CASE NO. 02 CV 0046 B (LAB)
SCANTIBODIES' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

sd-92257

Exh. 1, Page 89

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................................ 1

II. STATEMENT OF THE FACTS .......................................................................................... 2

III.   ARGUMENT ................................................................................................................... 4

    A. The Naming Of The Correct Inventors Is A Condition Of
    Patentability ........................................................................................................................ 4

    B. The Undisputed Evidence Establishes That The '790 Patent
    Suffers From Nonjoinder Of An Inventor:  Wolf-Georg
    Forssmann ........................................................................................................................... 5

    C. Nichols Must Either Immediately Move To Correct The
    Inventorship Error In Court Or Have The Patent Declared
    Invalid .................................................................................................................................. 6

    D. If Nichols Seeks Judicial Correction Of Inventorship, The
    Infringement Action Should Be Stayed Pending Hearing On
    Inventorship Issues ............................................................................................................ 8

IV.   CONCLUSION ................................................................................................................ 9

i

CASE NO. 02 CV 0046 B (LAB)
SCANTIBODIES' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

sd-92257

Exh. 1, Page 90

# TABLE OF AUTHORITIES

## CASES

*Burroughs Wellcome Co. v. Barr Laboratories, Inc.*
  40 F.3d 1223 (Fed. Cir. 1994)............................................................................... 8

*Chou v. University of Chicago*
  254 F.3d 1347 (Fed. Cir. 2001)........................................................................... 5, 6

*Mas-Hamilton Group v. LaGard, Inc.*
  21 F. Supp.2d 700 (E.D.Ky. 1997) ......................................................................... 7

*Merry Mfg. Co. v. Burns Tool Co.*
  335 F.2d 239 (5th Cir. 1964).................................................................................. 6

*Pannu v. Iolab Corp.*
  155 F.3d 1344 (Fed. Cir. 1998)................................................................... 4, 6, 7, 8

*Perseptive Biosystems v. Pharmacia Biotech*
  12 F. Supp.2d 69 (D.Mass. 1998) .......................................................................... 8

## STATUTES

35 U.S.C. § 102(f)............................................................................................ 1, 2, 4

35 U.S.C. § 363 .................................................................................................... 5

## MISCELLANEOUS

*Chisum on Patents*, § 14.02 [4] at n.1 ................................................................ 1, 5

ii

CASE NO. 02 CV 0046 B (LAB)
SCANTIBODIES' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

sd-92257

Exh. 1, Page 91

## I.  INTRODUCTION

1
2    Nichols Institute Diagnostics, Inc. ("Nichols") commenced this action for alleged

3   infringement of U.S. Patent No. 6,030,790 (the "'790 patent").  But this case should go no

4   further.  Nichols' patent suffers from a fundamental flaw and is invalid on its face.  The

5   applicants for the '790 patent failed to identify and join all the inventors in their application

6   to the United States Patent and Trademark Office ("PTO").  They failed to satisfy one of the

7   fundamental conditions for obtaining a valid patent -- naming all the correct inventors.  In

8   other words, the applicants never properly "got off the starting blocks" in their efforts to

9   obtain a valid patent from the PTO.

10    The issue presented in this motion is very straightforward.  The Court need look only

11   to the patent documents themselves to decide this discrete invalidity issue.

12    The '790 patent lists only three co-inventors on its face:  Knut Adermann

13   ("Adermann"), Dieter Hock ("Hock"), and Markus Mägerlein ("Mägerlein").  The '790 is the

14   "national stage" of an earlier international patent application filed under the Patent

15   Cooperation Treaty ("PCT").  The PCT provides a standard set of policies and procedures for

16   filing a single application in multiple jurisdictions based on the same invention.  4 Donald

17   Chisum, *Chisum on Patents,* § 14.02 [4] at n.1 (Cumm. Supp. Oct. 2001).  In order for the

18   '790 to claim the filing date of the PCT Application, it must have been the same application

19   and the same subject matter.  Indeed, as was appropriate under the PCT and the patent laws of

20   the United States, the '790 claimed the filing date of the earlier PCT Application.

21    Although the '790 patent originated in the PTO as the PCT Application -- and was for

22   the same invention -- the '790 patent does not name the same inventors.  The PCT

23   Application identified Adermann, Hock, Mägerlein *and Wolf-Georg Forssmann* as

24   inventors.  The '790, however, **does not include Forssmann.**

25    The omission of Forssmann from the U.S. application for the '790 patent renders it

26   invalid under 35 U.S.C. § 102(f) as a matter of law.  Having commenced an action based on

27   an invalid patent, Nichols now has only two options:  either promptly seek judicial correction

28
                                          1

CASE NO. 02 CV 0046 B (LAB)
SCANTIBODIES' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

sd-92257

**Exh. 1, Page 92**

of the inventorship error under the procedure set forth in 35 U.S.C. § 256 or have the '790

patent declared invalid for nonjoinder of inventors.  In either case, this costly lawsuit is

premature and should proceed no further.

## II. STATEMENT OF THE FACTS

On September 28, 1994, an application was filed with the German Patent Office,

Federal Republic of Germany.  *See* Ex. A attached to Declaration of M. Andrew

Woodmansee in Support of Scantibodies Clinical Laboratory, Inc. and Scantibodies

Laboratory, Inc.'s Motion for Summary Judgment Pursuant to 35 U.S.C. § 102(f)

("Woodmansee Decl.").  That patent, DE 44 34 551 A1, identified four inventors on its face:

Adermann, Hock, Mägerlein ***and Forssmann***.  *Id.*  According to the abstract:

> The invention relates to peptides from the human parathyroid
> (hPTH) sequence (1-37), containing α-helical amino acid sequence
> regions, where said peptides are capable of inducing antibodies
> when injected into animals.  The invention also relates to a
> diagnostic agent and antibodies obtainable by vaccination of
> animals with the peptides in question.

(Woodmansee Decl., Ex. A at p. 3)

The German patent (DE 44 34 555 A1) formed the basis for an application filed on

September 22, 1995 with the World Intellectual Property Organization and published

pursuant to the PCT.  The PCT Application (WO 96/10041) claimed priority on its face to

the 1994 German application.  (Woodmansee Decl., Ex. B at p. 12)  Like its German

counterpart, the PCT named the same four inventors:  Adermann, Hock, Mägerlein ***and***

***Forssmann***.  (*Id.*)  The abstract of the PCT Application described the same subject matter as

the German application:

> The invention concerns peptides from the human parathyroid
> (hPTH) sequence (1-37) and containing α-helical amino acid
> sequence regions and/or non-structured amino acid sequence
> regions.  The said peptides are capable of inducing antibodies when
> injected into animals.  The invention also concerns a diagnostic
> agent and antibodies obtainable by vaccination of animals with the
> peptides in question.

(Woodmansee Decl., Ex. B at p. 12)

2

CASE NO. 02 CV 0046 B (LAB)
SCANTIBODIES' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

sd-92257

Exh. 1, Page 93

1    Based on the disclosure and filing date of the PCT Application (September 22, 1995),

2  an application was filed with the United States Patent and Trademark Office.  That

3  application ultimately issued as the '790 patent.  The abstract of the '790 patent describes its

4  subject matter and claimed inventions as follows:

5          The present invention is directed to peptides from the sequence of
        hPTH (1-37), which contain α-helical amino acid sequence regions
6        and/or non-structured amino acid sequence regions, said peptides
        being capable of inducing antibodies when injected into animals.
7        Furthermore, the invention is directed to a diagnostic agent and
        antibodies obtainable by immunizing animals using the peptides
8        according to the invention.

9  (Woodmansee Decl., Ex. C at p. 30)

10    The application for the '790 patent was submitted to the PTO as the national stage of

11  the PCT Application.  The application claimed the benefit and filing date of the PCT

12  Application.  (*Id.*)  Indeed, the named inventors on the application -- Adermann, Hock and

13  Mägerlein -- submitted a declaration to the PTO claiming inventorship of the invention

14  sought in the application and confirming that the specification of the invention had first been

15  filed in the PCT Application.  The inventors' declaration states, under penalty of perjury, in

16  pertinent part:

17          As a below named inventor, I hereby declare that: . . . I believe I am
        an original, first and joint inventor (if plural names are listed below)
18        **of the subject matter which is claimed and for which a patent is
        sought on the invention** entitled: "PEPTIDES FROM THE hPTH
19        (1-37) SEQUENCE, **the specification of which . . . was filed on
        September 22, 1995 as PCT International Application No.
20        PCT/EP95/03757 . . . .**

21  (Woodmansee Decl., Ex. D at p.62) (emphasis added).

22    The '790 patent identifies only three inventors, not four.  (Woodmansee Decl., Ex. C

23  at p. 30)  The '790 patent identifies Adermann, Hock and Mägerlein as inventors.  (*Id.*)

24  Although he was named as an inventor in connection with the PCT Application (and the

25  underlying German patent), Wolf-George Forssmann was never named as an inventor in

26  connection with the application in the United States for the '790 patent.

27

28                                    3

CASE NO. 02 CV 0046 B (LAB)
SCANTIBODIES' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

sd-92257

Exh. 1, Page 94

## III. ARGUMENT

### A. The Naming Of The Correct Inventors Is A Condition Of Patentability

In *Pannu v. Iolab Corp.*, 155 F.3d 1344 (Fed. Cir. 1998), the Federal Circuit explained the statutory basis requiring a finding of invalidity where a patent fails to name the correct inventors. The Federal Circuit explained that Section 102 establishes the "conditions of patentability" that must be satisfied in order to obtain a valid patent. *Id.* at 1348-49. In particular, Section 102(f) provides that "[a] person shall be entitled to a patent unless -- he did not himself invent the subject matter sought to be patented." 35 U.S.C. § 102(f). "Since the word 'he' [in Section 102(f)] refers to the specific inventive entity named on the patent . . . this subsection **mandates that a patent accurately list the correct inventors of a claimed invention . . .**" *Pannu* at 1349 (emphasis added). "Accordingly, if nonjoinder of an actual inventor is proved by clear and convincing evidence, . . . **a patent is rendered invalid.** *Id.* (citations omitted) (emphasis added).

Although the failure to name the correct inventors renders a patent invalid, the Patent Act provides a procedure for correcting inventorship errors that have been established in ongoing litigation. In *Pannu*, the Federal Circuit held that the operation of section 102(f) in the context of ongoing litigation is "ameliorated" by the ability to correct inventorship errors through a judicial hearing pursuant to section 256 of the Patent Act. *Id* at 1350. "Upon such a finding of incorrect inventorship, a patentee may invoke section 256 to save the patent from invalidity." *Id.* Specifically, the Federal Circuit acknowledged: "Non-joinder may be corrected 'on notice and hearing of all the parties concerned' and upon a showing that the error occurred without any deceptive intent on the part of the unnamed inventor." 35 U.S.C. § 256. "If a patentee demonstrates that inventorship can be corrected as provided for in section 256, a district court must order correction of the patent, thus saving it from being rendered invalid." *Id.* at 1350.

4

CASE NO. 02 CV 0046 B (LAB)
SCANTIBODIES' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

sd-92257

Exh. 1, Page 95

**B. The Undisputed Evidence Establishes That The '790 Patent Suffers From Nonjoinder Of An Inventor: Wolf-Georg Forssmann**

When one compares the PCT Application with the initial application in the United States for the '790 patent, it is apparent that Wolf-Georg Forssmann should have been named as an inventor on the '790 patent. The application that issued as the '790 patent was the "national stage" in the United States of PCT Application WO 96/10041. (*See, e.g.*, Woodmansee Decl., Ex. C at p. 30; Ex. D at p. 62) The filing of the PCT Application in 1995 had the same effect as an application normally filed in the United States PTO. "An international application designating the United States shall have the effect, from its international filing date under article 11 of the treaty, of a national application for patent regularly filed in the Patent and Trademark Office except as otherwise provided in section 102(e) of this title." 35 U.S.C. § 363; *see also Chisum* § 14.02 [4] (noting that, to commence the "national phase" in the U.S. based on a prior PCT Application, the applicant must pay a filing fee, file a copy of the international application and an English translation).

"The general purpose of the PCT is to provide a single set of standards and procedures for the filing of patent applications on the same invention in any of the over ninety PCT member countries." *Chisum* § 14.02 [4]n.1 (quoting Department of Commerce, Patent and Trademark Office, Revision of Patent Cooperation Treaty Application Procedure, 63 Fed. Reg. 66040, 66041 (Dec. 1, 1998)) (emphasis added). Because the PCT process is intended to permit multi-jurisdictional patenting of the same invention, the inventorship of the national stage application should follow the inventorship designation in the originating country. *Chou v Univ.of Chicago*, 254 F.3d 1347, 1360 (Fed. Cir. 2001) (noting that inventorship on PCT and foreign national stage applications "normally follows the inventorship designation in the originating country").

Although '790 was the same application and the same invention as the PCT and the underlying German patent, Forrsmann was not named as an inventor on the '790 patent. (Woodmansee Decl., Ex. C at p. 30; Ex. D at pp. 62-63) Only Adermann, Hock and

5

CASE NO. 02 CV 0046 B (LAB)
SCANTIBODIES' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

sd-92257

**Exh. 1, Page 96**

1   Mägerlein were named as inventors on the U.S. application. (Woodmansee Decl., Ex. D at

2   pp. 62-63) Only Adermann, Hock and Mägerlein signed declarations with inventor's oaths

3   in connection with the U.S. application. (*Id.*) Although Forssmann was listed as an inventor

4   on the PCT Application (and on the underlying German patent), he was not named in

5   connection with the U.S. application and he did not sign a declaration and inventorship oath.

6   Given the legal relationship between the PCT Application and the application for the '790

7   patent -- the same application for the same invention -- Forssmann should have been an

8   inventor of the subject matter disclosed and claimed in the '790 patent. *See, e.g., Chou* at

9   1360.[1]

10          It is clear that Forssmann should have been named as an inventor on the application

11   that issued as the '790 patent. He was not. The application for the '790 patent therefore

12   failed to meet one of the most basic requirements for patentability -- naming all the correct

13   inventors. The '790 patent is invalid and unenforceable unless Nichols seeks to correct the

14   omission in this Court pursuant to section 256. *Pannu* at 1349.

15          **C. Nichols Must Either Immediately Move To Correct The**
16          **Inventorship Error In Court Or Have The Patent Declared**
               **Invalid**

17          Because correct inventorship is a condition of patentability, a patentee cannot enforce a

18   patent until it has taken the corrective steps required by statute. *Id.* at 1349 (holding that patentee

19   "must claim entitlement to relief under the statute" or have its patent declared invalid); *see also*
20
21   *Merry Mfg. Co. v. Burns Tool Co.*, 335 F. 2d 239, 242 (5th Cir. 1964) ("The patent is

22   unenforceable until corrective steps are taken" and if correction cannot be made "the

23
24          [1] Nichols may attempt some explanation for its failure to follow the normal rule that
     inventorship of national stage applications follows the inventorship designation in the originating
25   country. Scantibodies submits that there is no reasonable explanation for applicants' failure to
     name Forssmann as an inventor of the '790 patent in light of the identical subject matter
26
                                                        (Footnote continues on following page.)

27

28                                                      6

CASE NO. 02 CV 0046 B (LAB)
SCANTIBODIES' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

sd-92257

**Exh. 1, Page 97**

1   unenforceability ripens into invalidity"); *Mas-Hamilton Group v. LaGard, Inc.*, 21 F. Supp.2d

2   700, 711 (E.D.Ky. 1997) ("Such a patent with inventorship defects is unenforceable until

3   corrective steps are taken.").

4
5       Although section 256 provides an opportunity to correct inventorship errors, Nichols

6   cannot avoid summary judgment by asserting that the patent *might* still be corrected at the PTO.

7   In *Pannu*, the Federal Circuit held that the mere possibility of correction under section 256 does

8   not allow a patentee to escape invalidation of a patent due to misjoinder.  In order to avoid a

9   finding of invalidity by this Court, Nichols must immediately commence an action for judicial

10  correction upon notice and hearing of all concerned parties.

11
12              [A] patent with improper inventorship does not avoid invalidation simply
            because it might be corrected under section 256.  Rather, the patentee *must*
13          *claim entitlement to relief under the statute and the court must give the*
            *patentee an opportunity to correct the  inventorship.*  If the inventorship is
14          successfully corrected, section 102(f) will not render the patent invalid.
            On the other hand, if the patentee does not claim relief under the statute
15          and a party asserting invalidity proves incorrect inventorship, the court
            should hold the patent invalid for failure to comply with section 102(f).

16  *Pannu* at 1350-51 (emphasis added).  The Federal Circuit held in the context of ongoing litigation

17  "[n]onjoinder may be corrected 'on notice and hearing of all parties concerned.'"  *Id.* at 1350.

18  Now that incorrect inventorship has been raised in this action, that hearing can only take place in

19  this Court.

20      In short, Nichols is before this Court with a clearly invalid and/or unenforceable patent.

21  Nichols should not be allowed to proceed with an action for infringement of the '790 patent under

22  that circumstance.  Nichols has two choices:  either it must immediately commence an action for

23

24  _____

25  (Footnote continued from previous page)

26  described in the related applications, and looks forward to addressing whatever excuses Nichols
    may proffer.

27

28                              7

CASE NO. 02 CV 0046 B (LAB)
SCANTIBODIES' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

sd-92257

Exh. 1, Page 98

1   judicial correction of inventorship under section 256, or else face this Court's ruling that the '790

2   patent is invalid for incorrect inventorship. *See id.*

3       A similar situation was addressed by the Massachusetts district court in *PerSeptive*

4   *Biosystems v. Pharmacia Biotech*, 12 F. Supp.2d 69 (D.Mass. 1998). In *PerSeptive Biosystems*,

5   the district court granted defendant's cross-motion for summary judgment that plaintiff's patents

6   were invalid for nonjoinder of the true inventors. *Id.* at 75. The court ordered the plaintiff to

7

8   move to correct inventorship pursuant to section 256 within ten days of the summary judgment

9   order, or the action would be dismissed. *Id.* at 87. Plaintiff subsequently moved for judicial

10  correction in the district court.

11      Scantibodies respectfully requests that this Court follow a similar procedure in this case.

12

13  In light of the undisputed evidence and the Federal Circuit's ruling in *Pannu*, Scantibodies

14  requests that the Court require Nichols to commence within ten days an action for judicial

15  correction of inventorship pursuant to section 256 on notice and hearing of all interested parties.

16  If Nichols does not promptly do so, Scantibodies requests that the Court enter summary judgment

17  of the invalidity of the '790 patent under section 102(f). *Pannu* at 1350-51.

18

19      **D. If Nichols Seeks Judicial Correction Of Inventorship, The**
        **Infringement Action Should Be Stayed Pending Hearing On**
20      **Inventorship Issues**

21      Assuming Nichols does seek judicial correction pursuant to section 256, Scantibodies

22  requests that the action against it for allegedly infringing the '790 patent be stayed pending

23  full discovery and hearing of the inventorship issues. A costly action for infringement of a

24  patent that is invalid for nonjoinder of inventors is "premature" while the inventorship

25  remains uncorrected. *See Burroughs Wellcome Co. v. Barr Lab.*, 40 F.3d 1223, 1227 (Fed.

26  Cir. 1994) ("If Barr and Novopharm are correct, then [the omitted inventors] should have

27  been named as joint inventors and the resolution of Burroughs Wellcome's infringement suit

28                                      8

CASE NO. 02 CV 0046 B (LAB)
SCANTIBODIES' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

sd-92257

Exh. 1, Page 99

1   is premature."). Scantibodies should not be forced to spend any additional sums on a

2   premature infringement suit that should not even have been filed unless and until the

3   nonjoinder of true inventors had been corrected.

4   **IV. CONCLUSION**

5       This motion presents a simple issue as to which there can be no genuine disputes.

6   The '790 patent is invalid due to nonjoinder of Forssmann. Nichols must now seek judicial

7   correction of inventorship on notice and hearing of all concerned parties or have its patent

8   declared invalid pursuant to section 102(f). In either case, Nichols should not be permitted to

9   force Scantibodies to expend further resources on an infringement action that is, as a matter

10   of law, premature.

11       Dated: May 16, 2002

12                       DAVID C. DOYLE
                    ERIC M. ACKER

13                       M. ANDREW WOODMANSEE
                    SHANNON M. DAILEY

14                       MORRISON & FOERSTER LLP

15

16                     By: _____

17                         David C. Doyle

18                     Attorneys for Defendants
                  SCANTIBODIES CLINICAL

19                     LABORATORY, INC. and
                  SCANTIBODIES LABORATORY, INC.

20

21

22

23

24

25

26

27

28                       9

CASE NO. 02 CV 0046 B (LAB)
SCANTIBODIES' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

sd-92257

**Exh. 1, Page 100**

1  DAVID C. DOYLE (BAR NO. 70690)
   ERIC M. ACKER (BAR NO. 135805)
2  M. ANDREW WOODMANSEE (BAR NO. 201780)
   SHANNON M. DAILEY (BAR NO. 185634)
3  MORRISON & FOERSTER LLP
   3811 Valley Centre Drive
4  Suite 500
   San Diego, California 92130-2332
5  Telephone: (858) 720-5100

6  Attorneys for Defendants
   SCANTIBODIES CLINICAL LABORATORY,
7  INC. and SCANTIBODIES LABORATORY, INC.

8

9                  UNITED STATES DISTRICT COURT

10                SOUTHERN DISTRICT OF CALIFORNIA

11

12  NICHOLS INSTITUTE DIAGNOSTICS, INC., a      No.      02 CV 0046 B (LAB)
    California corporation,
13
                                                DECLARATION OF M. ANDREW
14          Plaintiff,                          WOODMANSEE IN SUPPORT OF
                                                SCANTIBODIES CLINICAL
15      v.                                      LABORATORY, INC. AND
                                                SCANTIBODIES LABORATORY,
16  SCANTIBODIES CLINICAL LABORATORY,           INC.'S MOTION FOR SUMMARY
    INC., a California corporation; and         JUDGMENT PURSUANT TO
17  SCANTIBODIES LABORATORY, INC., a            35 U.S.C. § 102(f) FOR NONJOINDER
    California corporation,                     OF CO-INVENTOR
18
            Defendants.                         Date:     July 15, 2002
19                                              Time:     10:30 a.m.
    SCANTIBODIES CLINICAL LABORATORY,           Courtroom 2
20  INC., a California corporation; and
    SCANTIBODIES LABORATORY, INC., a            Hon. Rudi M. Brewster
21  California corporation,

22          Counter-Claimants

23      v.

24  NICHOLS INSTITUTE DIAGNOSTICS, INC., a
    California corporation,
25
            Counter-Defendants.
26

27

28

1    I, M. Andrew Woodmansee, declare:

2        1.   I am a member of the bar of the State of California and am with the law firm of

3    Morrison & Foerster LLP, which represents Scantibodies Clinical Laboratory, Inc. and

4    Scantibodies Laboratory, Inc. ("Scantibodies") in this matter.  I have personal knowledge of the

5    facts stated herein and, if called as a witness, I could and would testify competently as to them.

6        2.   Attached as Exhibit A to this declaration is a true and correct copy of a certified

7    translation from German to English of German patent number DE 44 34 555 A1.

8        3.   Attached as Exhibit B to this declaration is a true and correct copy of a certified

9    translation from German to English of an international patent application (WO 96/10041) filed

10   with the World Intellectual Property Organization and published pursuant to the Patent

11   Cooperation Treaty ("PCT WO 96/10041").

12       4.   Attached as Exhibit C to this declaration is a true and correct copy of U.S. Patent No.

13   6,030,790.

14       5.   Attached as Exhibit D to this declaration is a copy of the initial U.S. Patent

15   Application Serial No. 08/817547 and declarations filed with the United States Patent and

16   Trademark Office, which issued as Patent No. 6,030,790.

17       6.   Attached as Exhibit E to this declaration is a true and correct copy of the

18   untranslated German patent number DE 44 34 555 A1.

19       7.   Attached as Exhibit F to this declaration is a true and correct copy of the untranslated

20   PCT Application WO 96/10041.

21       I declare under penalty of perjury under the laws of the United State that the

22   foregoing is true and correct.  Executed this _15_ day of May 2002, at San Diego, California.

23

24

25                                                    M. Andrew Woodmansee

26

27

28                                        1

A



**MERRILL/NTEXT**
T R A N S L A T I O N S

225 Varick Street
New York, NY 10014
www.merrillntext.com

toll-free tel 1.877.466.8398
main tel 212.367.5970
fax 212.367.5969

State of New York    )
                     )    ss:
County of New York   )

## Certificate of Accuracy

This is to certify that the attached document, Patent DE 44 34 551 A1, originally written in German is, to the best of our knowledge and belief, a true, accurate and complete translation into English.

Dated: May 13, 2002

Jeffrey Mamera
Director, Translations
Merrill Corporation

Sworn to and signed before
Me this _13 7h_ day of
_May_ , 2002

Notary Public

THOMAS C. ALWOOD
Notary Public, State of New York
No. 01AL6004438 Qualified in Kings County
Certificate Filed in New York County
Commission Expires: _3/26/2006_

Page 2
Exhibit A

**Exh. 1, Page 103**

19. Federal Republic of Germany
German Patent Office

51. Int. Cl.$^{6}$: C 07 K 14/635

12. Disclosure Document
11. DE 44 34 551 A 1

DE 44 34 551 A1

21. File No.: P 44 34 551.8
22. Date of Application: 9/28/94
43. Date of Disclosure: 4/4/96

---

73. Patent Holder:
Forssmann, Wolf-Georg, Prof., Dr.Dr.,
30175 Hannover, Germany

74. Agent:
Godemeyer, T., Dr.rer.nat.,
Patent Attorney 51491 Overath

72. Inventor:
Adermann, Knut, Dr., 30177
Hannover, Germany
Forssmann, Wolf-Georg,
Prof. Dr.Dr., 30175
Hannover, Germany
Hock, Dieter, Dr., 74924
Neckarsbischofsheim, Germany
Mägerlein, Markus, 63785
Obernburg, Germany

---

Examination application filed pursuant to § 44, PatG [Patent Law].

54. Peptides from the hPTH Sequence (1-37)

57. The invention relates to peptides from the human parathyroid (hPTH) sequence (1-37), containing α-helical amino acid sequence regions and/or unstructured amino acid sequence regions, where said peptides are capable of inducing antibodies when injected into animals. The invention also relates to a diagnostic agent and antibodies obtainable by vaccination of animals with the peptides in question.

DE 197 33 666 A 1

The following information is taken from documentation
filed by the Applicant.

## Peptides from the hPTH Sequence (1-37)

This invention relates to peptides from the hPTH sequence (1-37), a diagnostic agent obtainable by vaccination of animals with the peptides, antibodies or fragments thereof, that can be obtained by vaccination of animals with the peptides, as well as the use of peptides for production of an agent for diagnosis of biologically active h-PTH.

Human parathyroid hormone (hPTH), a linear polypeptide of 84 amino acids, plays an important role in regulating the calcium metabolism. The metabolism of this hormone leads to a large number of C-terminal fragments whose biological function has not been clarified yet. Human PTH 1-37 has been detected as a circulating N-terminal fragment (EP-A 0 349 545). This fragment possesses the full biological activity of the complete hormone. This decreases substantially, however, upon loss of the first amino acid, serine, and is completely lost upon removal of the first two amino acids, serine and valine.

For the intact hormone, hPTH 1-84, and for the N-terminal fragment, serum concentrations have been measured in the area of $10^{-12}$ mol/L. Immunological measurement techniques are used to detect such low concentrations. The most valid results are provided by the double-antibody or sandwich principle (e.g., two-site immunoradiometric assay (IRMA), or Sandwich Enzyme Linked Immunosorbent Assay (Sandwich ELISA)). These assays for hPTH 1-84 are available commercially. There is no assay for hPTH 1-34 using the double antibody principle.

Two antibodies are required for this. To avoid reciprocal steric hindrance, the method must recognize epitopes of the antigen located at a sufficient distance from each other. Vaccination with intact antigens results in a heterogeneous mixture of various antibodies that have to be purified before the sandwich assay. Of course, detecting a preferred immunoactive sequence in the region of amino acids 7-14 at the N terminus was possible previously based on theoretical calculations according to B.A. Jameson & H., Wolf, "The Antigenic Index: A Novel Algorithm for Predicting Antigenic Determinants", CABIOS 4, pp. 181-186, 1988. Vaccination with N-terminal fragments according to established methods leads, initially, to antibodies that bind in this amino acid region, as described for hPTH 1-34 (J. Tampe, P. Brozio, H.E. Manneck, A. Mißbichler, E. Blind, K.B. Müller, H. Schmidt-Gayk and F.P. Armbruster; "Characterization of Antibodies Against Human N-Terminal Parathyroid Hormone by Epitope Mapping"; J. Immunoassay 13, pp. 1-13, 1992). However, these antibodies cannot distinguish between biologically-active and biologically-inactive PTH 1-84 or fragments thereof missing the first two amino acids, serine and valine.

The problem to which the invention relates consists of specifying peptides that can help to eliminate the above disadvantages in diagnosing biologically-active h-PTH.

The technical problem discussed is solved surprisingly by peptides from the hPTH sequence (1-37) containing α-helical amino acid sequence regions and/or unstructured amino acid sequence regions, where vaccination of animals with the peptides can induce antibodies. The peptides here preferably contain the N terminal α helix in the region of amino acids 5-9, an unstructured section of amino acids 10-16 and/or a C terminal α helix in the region of amino acid sequence 17-34 of the hPTH (1-37). The following peptides according to the invention are preferably used for the vaccination:

hPTH 1-10 NH$_2$—Ser$^1$—Val$^2$—Ser$^3$—Glu$^4$—Ile$^5$—Gln$^6$—Leu$^7$—Met$^8$—His$^9$—Asn$^{10}$—OH   (1)

hPTH 1-9 NH$_2$—Ser$^1$—Val$^2$—Ser$^3$—Glu$^4$—Ile$^5$—Gln$^6$—Leu$^7$—Met$^8$—His$^9$—OH   (2)

hPTH 1-8 NH$_2$—Ser$^1$—Val$^2$—Ser$^3$—Glu$^4$—Ile$^5$—Gln$^6$—Leu$^7$—Met$^8$—OH   (3)

hPTH 1-7 NH$_2$—Ser$^1$—Val$^2$—Ser$^3$—Glu$^4$—Ile$^5$—Gln$^6$—Leu$^7$—OH   (4)

hPTH 1-6 NH$_2$—Ser$^1$—Val$^2$—Ser$^3$—Glu$^4$—Ile$^5$—Gln$^6$—OH   (5)

hPTH 1-5 NH$_2$—Ser$^1$—Val$^2$—Ser$^3$—Glu$^4$—Ile$^5$—OH   (6)

hPTH 9-18 NH$_2$—His$^9$—Asn$^{10}$—Leu$^{11}$—Gly$^{12}$—Lys$^{13}$—His$^{14}$—Leu$^{15}$—Asn$^{16}$—Ser$^{17}$—Met$^{18}$—OH   (7)

hPTH 10-18 NH$_2$—Asn$^{10}$—Leu$^{11}$—Gly$^{12}$—Lys$^{13}$—His$^{14}$—Leu$^{15}$—Asn$^{16}$—Ser$^{17}$—Met$^{18}$—OH   (8)

hPTH 11-18 NH$_2$—Leu$^{11}$—Gly$^{12}$—Lys$^{13}$—His$^{14}$—Leu$^{15}$—Asn$^{16}$—Ser$^{17}$—Met$^{18}$—OH   (9)

hPTH 12-18 NH$_2$—Gly$^{12}$—Lys$^{13}$—His$^{14}$—Leu$^{15}$—Asn$^{16}$—Ser$^{17}$—Met$^{18}$—OH   (10)

hPTH 13-18 NH$_2$—Lys$^{13}$—His$^{14}$—Leu$^{15}$—Asn$^{16}$—Ser$^{17}$—Met$^{18}$—OH   (11)

hPTH 14-18 NH$_2$—His$^{14}$—Leu$^{15}$—Asn$^{16}$—Ser$^{17}$—Met$^{18}$—OH   (12)

hPTH 9-17 NH$_2$—His$^9$—Asn$^{10}$—Leu$^{11}$—Gly$^{12}$—Lys$^{13}$—His$^{14}$—Leu$^{15}$—Asn$^{16}$—Ser$^{17}$—OH   (13)

hPTH 9-16 NH$_2$—His$^9$—Asn$^{10}$—Leu$^{11}$—Gly$^{12}$—Lys$^{13}$—His$^{14}$—Leu$^{15}$—Asn$^{16}$—OH   (14)

hPTH 9-15 NH$_2$—His$^9$—Asn$^{10}$—Leu$^{11}$—Gly$^{12}$—Lys$^{13}$—His$^{14}$—Leu$^{15}$—OH   (15)

hPTH 9-14 NH$_2$—His$^9$—Asn$^{10}$—Leu$^{11}$—Gly$^{12}$—Lys$^{13}$—His$^{14}$—OH   (16)

hPTH 9-13 NH$_2$—His$^9$—Asn$^{10}$—Leu$^{11}$—Gly$^{12}$—Lys$^{13}$—OH   (17)

hPTH 24-37
NH$_2$—Leu$^{24}$—Arg$^{25}$—Lys$^{26}$—Lys$^{27}$—Leu$^{28}$—Gln$^{29}$—Asp$^{30}$—Val$^{31}$—His$^{32}$—Asn$^{33}$—Phe$^{34}$—Val$^{35}$—Ala$^{36}$—Leu$^{37}$—OH   (18)

hPTH 25-37
NH$_2$—Arg$^{25}$—Lys$^{26}$—Lys$^{27}$—Leu$^{28}$—Gln$^{29}$—Asp$^{30}$—Val$^{31}$—His$^{32}$—Asn$^{33}$—Phe$^{34}$—Val$^{35}$—Ala$^{36}$—Leu$^{37}$—OH   (19)

hPTH 26-37
NH$_2$—Lys$^{26}$—Lys$^{27}$—Leu$^{28}$—Gln$^{29}$—Asp$^{30}$—Val$^{31}$—His$^{32}$—Asn$^{33}$—Phe$^{34}$—Val$^{35}$—Ala$^{36}$—Leu$^{37}$—OH   (20)

hPTH 27-37
NH$_2$—Lys$^{27}$—Leu$^{28}$—Gln$^{29}$—Asp$^{30}$—Val$^{31}$—His$^{32}$—Asn$^{33}$—Phe$^{34}$—Val$^{35}$—Ala$^{36}$—Leu$^{37}$—OH   (21)

hPTH 28-37 NH$_2$—Leu$^{28}$—Gln$^{29}$—Asp$^{30}$—Val$^{31}$—His$^{32}$—Asn$^{33}$—Phe$^{34}$—Val$^{35}$—Ala$^{36}$—Leu$^{37}$—OH   (22)

hPTH 29-37 NH$_2$—Gln$^{29}$—Asp$^{30}$—Val$^{31}$—His$^{32}$—Asn$^{33}$—Phe$^{34}$—Val$^{35}$—Ala$^{36}$—Leu$^{37}$—OH   (23)

hPTH 30-37 NH$_2$—Asp$^{30}$—Val$^{31}$—His$^{32}$—Asn$^{33}$—Phe$^{34}$—Val$^{35}$—Ala$^{36}$—Leu$^{37}$—OH   (24)

hPTH 31-37 NH$_2$—Val$^{31}$—His$^{32}$—Asn$^{33}$—Phe$^{34}$—Val$^{35}$—Ala$^{36}$—Leu$^{37}$—OH   (25)

hPTH 32-37 NH$_2$—His$^{32}$—Asn$^{33}$—Phe$^{34}$—Val$^{35}$—Ala$^{36}$—Leu$^{37}$—OH   (26)

hPTH 33-37 NH$_2$—Asn$^{33}$—Phe$^{34}$—Val$^{35}$—Ala$^{36}$—Leu$^{37}$—OH   (27)

hPTH 24-36
NH$_2$—Leu$^{24}$—Arg$^{25}$—Lys$^{26}$—Lys$^{27}$—Leu$^{28}$—Gln$^{29}$—Asp$^{30}$—Val$^{31}$—His$^{32}$—Asn$^{33}$—Phe$^{34}$—Val$^{35}$—Ala$^{36}$—OH   (28)

hPTH 24-35
NH$_2$—Leu$^{24}$—Arg$^{25}$—Lys$^{26}$—Lys$^{27}$—Leu$^{28}$—Gln$^{29}$—Asp$^{30}$—Val$^{31}$—His$^{32}$—Asn$^{33}$—Phe$^{34}$—Val$^{35}$—OH   (29)

hPTH 24-34
NH$_2$—Leu$^{24}$—Arg$^{25}$—Lys$^{26}$—Lys$^{27}$—Leu$^{28}$—Gln$^{29}$—Asp$^{30}$   Val$^{31}$—His$^{32}$—Asn$^{33}$—Phe$^{34}$—OH   (;30)

hPTH 24-33 NH$_2$—Leu$^{24}$—Arg$^{25}$—Lys$^{26}$—Lys$^{27}$—Leu$^{28}$—Gln$^{29}$—Asp$^{30}$—Val$^{31}$—His$^{32}$—Asn$^{33}$OH   (31)

hPTH 24-32 NH$_2$—Leu$^{24}$—Arg$^{25}$—Lys$^{26}$—Lys$^{27}$—Leu$^{28}$—Gln$^{29}$—Asp$^{30}$—Val$^{31}$—His$^{32}$—OH   (32)

hPTH 24-31 NH$_2$—Leu$^{24}$—Arg$^{25}$—Lys$^{26}$—Lys$^{27}$—Leu$^{28}$—Gln$^{29}$—Asp$^{30}$—Val$^{31}$—OH   (33)

hPTH 24-30 NH$_2$—Leu$^{24}$—Arg$^{25}$—Lys$^{26}$—Lys$^{27}$—Leu$^{28}$—Gln$^{29}$—Asp$^{30}$—OH   (34)

hPTH 24-29 NH$_2$—Leu$^{24}$—Arg$^{25}$—Lys$^{26}$—Lys$^{27}$—Leu$^{28}$—Gln$^{29}$—OH   (35)

hPTH 24-28 NH$_2$—Leu$^{24}$—Arg$^{25}$—Lys$^{26}$—Lys$^{27}$—Leu$^{28}$—   (36)

The primary structures of the above sequences represent essential characteristics of the secondary structure, as supported by the NMR data. A precondition for this was determining the secondary structure of PTH 1-37 in saline solution.

The structurally-remarkable regions cited have good immunogenic activity. Antibodies are formed that bind to the first amino acids of the N terminus. The lack of two amino acids already leads to a substantial loss of affinity. Since these amino acids are essential to biological activity, it is possible to obtain antibodies with the peptides according to the invention that recognize only hPTH and fragments thereof that are biologically active.

Furthermore, antibodies can be produced that detect the mid-region areas 9-15, and antibodies that bind the L terminal in the region of amino acids 30-37. According to the invention, therefore, antibodies can be produced against regions of hPTH 1-37 that do not have immunogenic effects based on theoretical calculations in the intact molecule. These regions are also located at such a distance from each other that there is no steric hindrance that would hinder the simultaneous binding of two antibodies.

In the preferred embodiment, the peptides can be modified at the N terminal end, the side chains and/or at the C terminal end, by acetylation, amidation, phosphorylation and/or glycosylation products.

Finally, peptides according to the invention can also be bound to carrier proteins such as hemocyanin, thyroglobulin, bovine serum albumin, ovalbumin or mouse serum albumin. They are preferably bound with the carrier protein through carbodiimide or formaldehyde.

The peptides according to the invention can be used to produce a diagnostic agent. The diagnostic agent according to the invention can be obtained by known vaccination of animals with at least one of the peptides according to the invention. After vaccination, an immunoglobulin fraction can be isolated from the vaccinated animals; the fraction contains antibody fractions that have an antibody titer against at least one of the peptides according to the invention. The antibodies thus obtained are also the subject of this invention. In an alternative embodiment, in addition to the complete antibodies consisting of $F_{ab}$ and $F_c$, fragments thereof, such as $F_{ab}$, or fragments of antibodies are used; they are the idiotypes for the epitopes of the peptides.

The peptides according to the invention are suitable for production of an agent for diagnosing biologically-active h-PTH (1-37).

The invention is described in greater detail based on the following examples:

Example 1

Solid Phase Peptide Synthesis

The process for synthesis of peptides according to the invention is based on peptide synthesis on solid carriers. The C terminal amino acids are bound to the carrier material in the presence of dicyclohexylcarbodiimide and dimethylaminopyridine. The carrier material used for the synthesis is Wang resin or similar resins.

The following L-amino acid derivatives are used for the synthesis of the sequence, starting with the specified peptidyl resin: a) hPTH 1-10: Fmoc-Asn(Trt)-Wang resin, Fmoc-His(Trt)-OH, Fmoc-Met-OH, Fmoc-Leu-OH, Fmoc-Gln(Trt)-OH, Fmoc-Ile-OH, Fmoc-Glu(OtBu)-OH, Fmoc-Ser(tBu)-OH, Fmoc-Val-OH, Bocer(tBu)-OH. b) hPTH 9-18: Fmoc-Met-Wang resin, Fmoc-Ser(tBu)-OH, Fmoc-Asn(Trt)-OH, Fmoc-Leu-OH, Fmoc-His(Trt)-OH, Fmoc-Lys(Boc)-OH, Fmoc-Gly-OH, Fmoc-Leu-OH, Fmoc-Asn(Trt)-OH, Boc-His(Trt)-OH. c) hPTH 24-37: Fmoc-Leu-Wang resin, Fmoc-Ala-OH, Fmoc-Val-OH, Fmoc-Phe-OH, Fmoc-Asn(Trt)-OH, Fmoc-His(Trt)-OH, Fmoc-Val-OH, Fmoc-Asp(OtBu)-OH, Fmoc-Gln(Trt)-OH, Fmoc-Leu-OH, Fmoc-Lys(Boc)-OH, Fmoc-Lys(Boc)-OH, Fmoc-Arg(Pmc)-OH, Fmoc-Leu-OH.

The synthesis can be carried out through in-situ activation with 2-(1H-benzotriazol-1-yl)-1,1,3,3-tetramethyluronium tetrafluoroborate (TBTU) or derivatives thereof, or with benzotriazol-1-yloxy-(trisdimethylamino)phosphonium hexafluorophosphate (BOP) or derivatives thereof, in the presence of diisopropyl ethylamine or N-methylmorpholine and 1-hydroxybenzotriazole, where a four- to ten-fold excess of Fmoc-L-amino acid is used during the couplings in N,N-dimethylformamide, N,N-dimethylacetamide or N-methylpyrrolidone. The Fmoc groups are dissociated with 20% piperidine or 2% piperidine and 2% 1,8-diazabicyclo[5.4.0]undec-7-ene (DBU) in N,N-dimethylformamide, N,N-dimethylacetamide or N-methylpyrrolidone. After synthesis, the resin is washed with 2-propanol and dichloromethane and dried to a constant weight under a high vacuum.

For dissociation from the carrier and unblocking, the peptidyl resin is treated for 30 – 90 minutes at ambient temperature with trifluoroacetic acid containing 5% scavenger, water, ethanediol, phenol or thioanisole, then filtered, washed with trifluoroacetic acid and finally precipitated with tert-butyl methyl ether. The precipitate is lyophilized out of an aqueous solution.

## Example 2

### Purification and Analysis

The raw product is purified by chromatography in a C-18 reverse phase column (10 $\mu$m, Buffer A: 0.01 N HCl in water; Buffer B: 20% isopropenol, 30% methanol, 50% water, 0.01 N HCl; gradient: 10 – 80% in 60 minutes; detection 230 nm).

The purity of the product is determined by mass spectrometry and C18 reverse phase chromatography.

## Example 3

### Coupling to Carrier Protein

Hemocyanin, thyroglobulin, bovine serum albumin, ovalbumin or mouse serum albumin is used as a carrier protein. The coupling takes place according to the carbodiimide method, via the carboxyl groups of the peptide. The peptide is activated by a 5-minute treatment in an aqueous solution with 1-ethyl-3-(3-dimethylaminopropyl) carbodiimide hydrochloride. Coupling occurs by the addition of the activated peptide to an aqueous solution of the carrier. The molar ratio is 1 peptide to 50 amino acids of the carrier protein. The treatment takes 4 hours.

The reaction is stopped by addition of sodium acetate in a final concentration of 100 mM. Incubate for 1 hour.

The protein-peptide conjugate is separated from the peptide by repeated dialysis over 100 mM of phosphate buffer, pH 7.2

## Example 4

### Synthesis of Multiple Antigenic Peptides (MAP)

The triple lysine branch is achieved by binding Fmoc-L-lysine(Fmoc)-OH to C terminal alanine, bound to Wang resin, in three coupling cycles. Eight free amino functions are obtained by dissociation with piperidine; the sequences of human parathyroid hormone are synthesized at those functions according to the description above.

## Example 5

### Vaccination

125 $\mu$g of the carrier-peptide conjugate or MAP, dissolved in 250 ml water and emulsified with 250 $\mu$l of complete Freund's adjuvant, is used per kg of body weight for the first vaccination. The emulsion is applied to the back in 10 separate SC injections.

DE 44 34 551 A1

Boosters are given similarly after 2-4 weeks. However, the complete Freund's adjuvant is replaced with incomplete Freund's adjuvant here.

Patent Claims

We claim:

1. A peptide from the hPTH sequence (1-37) containing $\alpha$-helical amino acid sequence regions and/or unstructured amino acid sequence regions, wherein the peptides can induce antibodies upon injection into animals.

2. Peptides according to Claim 1, from hPTH (1-37), with the sequence:

hPTH 1-10 $NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-Leu^7-Met^8-His^9-Asn^{10}-OH$   (1)

hPTH 1-9 $NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-Leu^7-Met^8-His^9-OH$   (2)

hPTH 1-8 $NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-Leu^7-Met^8-OH$   (3)

hPTH 1-7 $NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-Leu^7-OH$   (4)

hPTH 1-6 $NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-OH$   (5)

hPTH 1-5 $NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-OH$   (6)

hPTH 9-18 $NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$   (7)

hPTH 10-18 $NH_2-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$   (8)

hPTH 11-18 $NH_2-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$   (9)

hPTH 12-18 $NH_2-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$   (10)

hPTH 13-18 $NH_2-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$   (11)

hPTH 14-18 $NH_2-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$   (12)

hPTH 9-17 $NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-OH$   (13)

hPTH 9-16 $NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-OH$   (14)

hPTH 9-15 $NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-OH$   (15)

hPTH 9-14 $NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-OH$   (16)

hPTH 9-13 $TH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-OH$   (17)

hPTH 24-37 $NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$   (18)

hPTH 25-37 $NH_2-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$   (19)

hPTH 26-37 $NH_2-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$   (20)

hPTH 27-37 $NH_2-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$   (21)

hPTH 28-37 $NH_2-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$   (22)

hPTH 29-37 $NH_2-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$   (23)

hPTH 30-37 $NH_2-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$   (24)

hPTH 31-37 $NH_2-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$   (25)

hPTH 32-37 $NH_2-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$   (26)

hPTH 33-37 $NH_2-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$   (27)

hPTH 24-36 $NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-OH$   (28)

hPTH 24-35 $NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-OH$   (29)

hPTH 24-34 $NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-OH$   (30)

hPTH 24-33 $NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-OH$   (31)

hPTH 24-32 $NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-OH$   (32)

hPTH 24-31 $NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-OH$   (33)

hPTH 24-30 $NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-OH$   (34)

hPTH 24-29 $NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-OH$   (35)

hPTH 24-28 $NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-OH$   (36)

3.  Peptides according to Claim 1 and/or 2, modified at the N-terminal end, the side chains and/or the C-terminal end with acetylation, amidation, phosphorylation and/or glycosylation products, and/or bound to carrier proteins such as hemocyanin, thyroglobulin, bovine serum albumin, ovalbumin or mouse serum albumin.

4.  A diagnostic agent obtainable by vaccination, known *per se,* of animals with at least one of the peptides according to at least one of the Claims 1 through 3, by obtaining fractions containing immunoglobulins from the vaccinated animals and by isolating fractions with an antibody titer against at least one of the peptides according to at least one of Claims 1 through 3 and that contains, if necessary, other adjuvants and/or carriers.

5.  Antibody or fragments of antibodies obtained by vaccination of animals with at least one peptide according to at least one of Claims 1 through 3.

6.  Use of the peptides according to at least one of Claims 1 through 3 for production of an agent for diagnosis of biologically-active h-PTH (1-37).

- Blank Page -

**B**



**MERRILL/NTEXT**
T R A N S L A T I O N S

225 Varick Street
New York, NY 10014
www.merrillntext.com

toll-free tel   1.877.466.8398
main tel   212.367.5970
fax   212.367.5969

State of New York          )
                           )          ss:
County of New York         )

### Certificate of Accuracy

This is to certify that the attached document, Patent WO 96/10041A, originally written in German is, to the best of our knowledge and belief, a true, accurate and complete translation into English.

Dated: May 13, 2002

_____
Jeffrey Mamera
Director, Translations
Merrill Corporation

Sworn to and signed before
Me this ___13___ day of
___May___, 2002

_____
Notary Public

THOMAS C. ALWOOD
Notary Public, State of New York
No. 01AL6004438 Qualified in Kings County
Certificate Filed in New York County
Commission Expires: ___3 / 2 3 / 200 6___

**Exh. 1, Page 112**

Page 11
Exhibit B

PCT    WORLD INTELLECTUAL PROPERTY ORGANIZATION    [emblem]
International Office

INTERNATIONAL APPLICATION PUBLISHED BY REASON
OF THE PCT (PATENT COOPERATION TREATY)

| | | |
|---|---|---|
| (51) International Patent Classification⁶: <br> C07K 14/635, 16/24, G01N 33/78 | A1 | (11) International Publication Number: <br> WO 96/10041 <br><br> (43) International Publication Date: <br> April 4, 1996 (4/4/96) |
| (21) International Application Number: <br> PCT/EP95/03757 <br><br> (22) International Filing Date: September 22, 1995 <br> (9/22/95) <br><br> (30) Data on Priority: <br> P 44 34 551.8 September 28, 1994 <br> (9/28/94) DE <br><br><br> (71) Applicant and Inventor: FORSSMANN, Wolf-Georg <br> [DE/DE]; Niedersächsisches Institut für <br> Peptidforschung, Feodor-Lynen-Strasse 31, <br> D- 30625 Hannover (Germany). <br><br> (72) Inventors; and <br> (75) Inventors/Applicants (US only): ADERMANN, Knut <br> [DE/DE]; Schleidenstrasse 5, D-30177 Hannover <br> (Germany). HOCK, Dieter [DE/DE]; <br> Weinbergstrasse 14, D-74924 Neckarsbischofsheim <br> (Germany). MAGERLEIN, Markus [DE/DE]; <br> Blumenstrasse 5, D-63785 Obernburg (Germany). <br><br> (74) Attorney: GODEMEYER, Thomas; Hauptstrasse 58, D- <br> 51491 Overath (Germany). | | (81) States Designated: JP, US, European Patent (AT, BE, <br> CH, DE, DK, ES, FR, GB, GR, IE, IT, LU, MC, NL, PT, SE). <br><br> Published <br> *With international search report.* <br> *Prior to expiration of the period set for amendment* <br> *of the Claims, it will be republished if such* <br> *amendments are received.* |

(54) Title: PEPTIDES FROM THE hPTH SEQUENCE (1-37)

(57) Abstract

   The invention concerns peptides from the human parathyroid (hPTH) sequence (1-37) and containing α-helical amino acid sequence regions and/or non-structured amino acid sequence regions. The said peptides are capable of inducing antibodies when injected into animals. The invention also concerns a diagnostic agent and antibodies obtainable by vaccination of animals with the peptides in question.

*SOLELY FOR INFORMATION*

Codes used to identify PCT member States on cover pages of documents publishing international applications under PCT.

| | | | | | |
|---|---|---|---|---|---|
| AT | Austria | GA | Gabon | MR | Mauritania |
| AU | Australia | GB | United Kingdom | MW | Malawi |
| BB | Barbados | GE | Georgia | NE | Niger |
| BE | Belgium | GN | Guinea | NL | Netherlands |
| BF | Burkina Faso | GR | Greece | NO | Norway |
| BG | Bulgaria | HU | Hungary | NZ | New Zealand |
| BJ | Benin | IE | Ireland | PL | Poland |
| BR | Brazil | IT | Italy | PT | Portugal |
| BY | Byelorussia | JP | Japan | RO | Romania |
| CA | Canada | KE | Kenya | RU | Russian Federation |
| CF | Central African Republic | KG | Kyrgyzstan | SD | Sudan |
| CG | Congo | KP | People's Democratic Republic | SE | Sweden |
| CH | Switzerland | | of Korea | SI | Slovenia |
| CI | Côte d'Ivoire | KR | Republic of Korea | SK | Slovakia |
| CM | Cameroon | KZ | Kazakhstan | SN | Senegal |
| CN | China | LI | Liechtenstein | TD | Chad |
| CS | Czechoslovakia | LK | Sri Lanka | TG | Togo |
| CZ | Czech Republic | LU | Luxembourg | TJ | Tajikistan |
| DE | Germany | LV | Latvia | TT | Trinidad and Tobago |
| DK | Denmark | MC | Monaco | UA | Ukraine |
| ES | Spain | MD | Republic of Moldavia | US | United States of America |
| FI | Finland | MG | Madagascar | UZ | Uzbekistan |
| FR | France | ML | Mali | VN | Vietnam |
| | | MN | Mongolia | | |

Exh. 1, Page 114

WO 96/10041

PCT/EP95/03757

- 2 -

### Peptides from the hPTH Sequence (1-37)

This invention relates to peptides from the hPTH sequence (1-37), a diagnostic agent obtainable by vaccination of animals with the peptides, antibodies or fragments thereof, that can be obtained by vaccination of animals with the peptides, as well as the use of peptides for production of an agent for diagnosis of biologically active h-PTH.

Human parathyroid hormone (hPTH), a linear polypeptide of 84 amino acids, plays an important role in regulating the calcium metabolism. The metabolism of this hormone leads to a large number of C-terminal fragments whose biological function has not been clarified yet. Human PTH 1-37 has been detected as a circulating N-terminal fragment (EP-A 0 349 545). This fragment possesses the full biological activity of the complete hormone. This decreases substantially, however, upon loss of the first amino acid, serine, and is completely lost upon removal of the first two amino acids, serine and valine.

For the intact hormone, hPTH 1-84, and for the N-terminal fragment, serum concentrations have been measured in the area of $10^{-12}$ mol/L. Immunological measurement techniques are used to detect such low concentrations. The most valid results are provided by the double-antibody or sandwich principle (e.g., two-site immunoradiometric assay (IRMA), or Sandwich Enzyme Linked Immunosorbent Assay (Sandwich ELISA)). These assays for hPTH 1-84 are available commercially. There is no assay for hPTH 1034 using the double antibody principle.

Two antibodies are required for this. To avoid reciprocal steric hindrance, the method must recognize epitopes of the antigen located at a sufficient distance from each other. Vaccination with intact antigens results in a heterogeneous mixture of

WO 96/10041

PCT/EP95/03757

various antibodies that have to be purified before the sandwich
assay. Of course, detecting a preferred immunoactive sequence in
the region of amino acids 7-14 at the N terminus was possible
previously based on theoretical calculations according to B.A.
Jameson & H., Wolf, "The Antigenic Index: A Novel Algorithm for
Predicting Antigenic Determinants", CABIOS 4, pp. 181-186, 1988.
Vaccination with N-terminal fragments according to established
methods leads, initially, to antibodies that bind in this amino
acid region, as described for hPTH 1-34 (J. Tampe, P. Brozio,
H.E. Manneck, A. Mißbichler, E. Blind, K.B. Müller, H. Schmidt-
Gayk and F.P. Armbruster; "Characterization of Antibodies Against
Human N-Terminal Parathyroid Hormone by Epitope Mapping";
J. Immunoassay 13, pp. 1-13, 1992). However, these antibodies
cannot distinguish between biologically-active and biologically-
inactive PTH 1-84 or fragments thereof missing the first two
amino acids, serine and valine.

The problem to which the invention relates consists of specifying
peptides that can help to eliminate the above disadvantages in
diagnosing biologically-active h-PTH.

The technical problem discussed is solved surprisingly by
peptides from the hPTH sequence (1-37) containing α-helical amino
acid sequence regions and/or unstructured amino acid sequence
regions, where vaccination of animals with the peptides can
induce antibodies. The peptides here preferably contain the
N terminal α helix in the region of amino acids 5-9, an
unstructured section of amino acids 10-16 and/or a C terminal
α helix in the region of amino acid sequence 17-34 of the hPTH
(1-37). The following peptides according to the invention are
preferably used for the vaccination:

WO 96/10041

- 4 -

PCT/EP95/03757

hPTH 1-10
$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-Leu^7-Met^8-His^9-Asn^{10}-OH$ (1)

hPTH 1-9
$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-Leu^7-Met^8-His^9-OH$ (2)

hPTH 1-8
$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-Leu^7-Met^8-OH$ (3)

hPTH 1-7
$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-Leu^7-OH$ (4)

hPTH 1-6
$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-OH$ (5)

hPTH 1-5
$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-OH$ (6)

hPTH 9-18
$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$ (7)

hPTH 10-18
$NH_2-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$ (8)

hPTH 11-18
$NH_2-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$ (9)

hPTH 12-18
$NH_2-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$ (10)

hPTH 13-18
$NH_2-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$ (11)

hPTH 14-18
$NH_2-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$ (12)

Page 16
Exhibit B

WO 96/10041

- 5 -

PCT/EP95/03757

hPTH 9-17

$NH_2$-His$^9$-Asn$^{10}$-Leu$^{11}$-Gly$^{12}$-Lys$^{13}$-His$^{14}$-Leu$^{15}$-Asn$^{16}$-Ser$^{17}$-OH (13)

hPTH 9-16

$NH_2$-His$^9$-Asn$^{10}$-Leu$^{11}$-Gly$^{12}$-Lys$^{13}$-His$^{14}$-Leu$^{15}$-Asn$^{16}$-OH (14)

hPTH 9-15

$NH_2$-His$^9$-Asn$^{10}$-Leu$^{11}$-Gly$^{12}$-Lys$^{13}$-His$^{14}$-Leu$^{15}$-OH (15)

hPTH 9-14

$NH_2$-His$^9$-Asn$^{10}$-Leu$^{11}$-Gly$^{12}$-Lys$^{13}$-His$^{14}$-OH (16)

hPTH 9-13

$NH_2$-His$^9$-Asn$^{10}$-Leu$^{11}$-Gly$^{12}$-Lys$^{13}$-OH (17)

hPTH 24-37

$NH_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH (18)

hPTH 25-37

$NH_2$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH (19)

hPTH 26-37

$NH_2$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH (20)

hPTH 27-37

$NH_2$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH (21)

hPTH 28-37

$NH_2$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH (22)

hPTH 29-37

$NH_2$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH (23)

Page 17
Exhibit B

Exh. 1, Page 118

- 6 -

hPTH 30-37

$NH_2$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH                    (24)


hPTH 31-37

$NH_2$-Val$^{31}$-His$^{32}$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH                    (25)


hPTH 32-37

$NH_2$-His$^{32}$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH                    (26)


hPTH 33-37

$NH_2$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH                    (27)


hPTH 24-36

$NH_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-Ala$^{36}$-OH                    (28)


hPTH 24-35

$NH_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-OH                    (29)


hPTH 24-34

$NH_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-Phe$^{34}$-OH                    (30)


hPTH 24-33

$NH_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-OH   (31)


hPTH 24-32

$NH_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-OH                    (32)


hPTH 24-31

$NH_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-OH                    (33)


hPTH 24-30

$NH_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-OH                    (34)

WO 96/10041
- 7 -
PCT/EP95/03757

hPTH 24-29

$NH_2$-$Leu^{24}$-$Arg^{25}$-$Lys^{26}$-$Lys^{27}$-$Leu^{28}$-$Gln^{29}$-OH　　　　　(35)

hPTH 24-28

$NH_2$-$Leu^{24}$-$Arg^{25}$-$Lys^{26}$-$Lys^{27}$-$Leu^{28}$-OH　　　　　(36)


The primary structures of the above sequences represent essential
characteristics of the secondary structure, as supported by the
NMR data. A precondition for this was determining the secondary
structure of PTH 1-37 in saline solution.

The structurally-remarkable regions cited have good immunogenic
activity. Antibodies are formed that bind to the first amino
acids of the N terminus. The lack of two amino acids already
leads to a substantial loss of affinity. Since these amino acids
are essential to biological activity, it is possible to obtain
antibodies with the peptides according to the invention that
recognize only hPTH and fragments thereof that are biologically
active.

Furthermore, antibodies can be produced that detect the mid-
region areas 9-15, and antibodies that bind in the region of
amino acids 30-37. According to the invention, therefore,
antibodies can be produced against regions of hPTH 1-37 that do
not have immunogenic effects based on theoretical calculations in
the intact molecule. These regions are also located at such a
distance from each other that there is no steric hindrance that
would hinder the simultaneous binding of two antibodies.

In the preferred embodiment, the peptides can be modified at the
N terminal end, the side chains and/or at the C terminal end, by
acetylation, amidation, phosphorylation and/or glycosylation
products.

- 8 -

Finally, peptides according to the invention can also be bound to carrier proteins such as hemocyanin, thyroglobulin, bovine serum albumin, ovalbumin or mouse serum albumin. They are preferably bound with the carrier protein through carbodiimide or formaldehyde.

The peptides according to the invention can be used to produce a diagnostic agent. The diagnostic agent according to the invention can be obtained by known vaccination of animals with at least one of the peptides according to the invention. After vaccination, an immunoglobulin fraction can be isolated from the vaccinated animals; the fraction contains antibody fractions that have an antibody titer against at least one of the peptides according to the invention. The antibodies thus obtained are also the subject of this invention. In an alternative embodiment, in addition to the complete antibodies consisting of $F_{ab}$ and $F_c$, fragments thereof, such as $F_{ab}$, or fragments of antibodies are used; they are the idiotypes for the epitopes of the peptides.

The peptides according to the invention are suitable for production of an agent for diagnosing biologically-active h-PTH (1-37).

The invention is described in greater detail based on the following examples:

**Example 1**

Solid Phase Peptide Synthesis

The process for synthesis of peptides according to the invention is based on peptide synthesis on solid carriers. The C terminal amino acids are bound to the carrier material in the presence of

- 9 -

dicyclohexylcarbodiimide and dimethylaminopyridine. The carrier material used for the synthesis is Wang resin or similar resins.

The following L-amino acid derivatives are used for the synthesis of the sequence, starting with the specified peptidyl resin:
a) hPTH 1-10: Fmoc-Asn(Trt)-Wang resin, Fmoc-His(Trt)-OH, Fmoc-Met-OH, Fmoc-Leu-OH, Fmoc-Gln(Trt)-OH, Fmoc-Ile-OH, Fmoc-Glu(OtBu)-OH, Fmoc-Ser(tBu)-OH, Fmoc-Val-OH, Boc-Ser(tBu)-OH.
b) hPTH 9-18: Fmoc-Met-Wang resin, Fmoc-Ser(tBu)-OH, Fmoc-Asn(Trt)-OH, Fmoc-Leu-OH, Fmoc-His(Trt)-OH, Fmoc-Lys(Boc)-OH, Fmoc-Gly-OH, Fmoc-Leu-OH, Fmoc-Asn(Trt)-OH, Boc-His(Trt)-OH.
c) hPTH 24-37: Fmoc-Leu-Wang resin, Fmoc-Ala-OH, Fmoc-Val-OH, Fmoc-Phe-OH, Fmoc-Asn(Trt)-OH, Fmoc-His(Trt)-OH, Fmoc-Val-OH, Fmoc-Asp(OtBu)-OH, Fmoc-Gln(Trt)-OH, Fmoc-Leu-OH, Fmoc-Lys(Boc)-OH, Fmoc-Lys(Boc)-OH, Fmoc-Arg(Pmc)-OH, Fmoc-Leu-OH.

The synthesis can be carried out through in-situ activation with 2-(1H-benzotriazol-1-yl)-1,1,3,3-tetramethyluronium tetrafluoroborate (TBTU) or derivatives thereof, or with benzotriazol-1-yloxy-trisdimethylamino phosphonium hexafluorophosphate (BOP) or derivatives thereof in the presence of diisopropyl ethylamine or N-methylmorpholine and 1-hydroxybenzotriazole, where a four- to ten-fold excess of Fmoc-L-amino acid is used during the couplings in N,N-dimethylformamide, N,N-dimethylacetamide or N-methylpyrrolidone. The Fmoc groups are dissociated with 20% piperidine or 2% piperidine and 2% 1,8-diazabicyclo[5.4.0]undec-7-ene (DBU) in N,N-dimethylformamide, N,N-dimethylacetamide or N-methylpyrrolidone. After synthesis, the resin is washed with 2-propanol and dichloromethane and dried to a constant weight under a high vacuum.

For dissociation from the carrier and unblocking, the peptidyl resin is treated for 30 - 90 minutes at ambient temperature with trifluoroacetic acid containing 5% scavenger, water, ethanediol,

WO 96/10041
- 10 -
PCT/EP95/03757

phenol or thioanisole, then filtered, washed with trifluoroacetic
acid and finally precipitated with tert-butyl methyl ether. The
precipitate is lyophilized out of an aqueous solution.

## Example 2

### Purification and Analysis

The raw product is purified by chromatography in a C-18 reverse
phase column (10 $\mu$m, Buffer A: 0.01 N HCl in water; Buffer B: 20%
isopropenol, 30% methanol, 50% water, 0.01 N HCl; gradient: 10 -
80% in 60 minutes; detection 230 nm).

The purity of the product is determined by mass spectrometry and
C18 reverse phase chromatography.

## Example 3

### Coupling to Carrier Protein

Hemocyanin, thyroglobulin, bovine serum albumin, ovalbumin or
mouse serum albumin is used as a carrier protein. The coupling
takes place according to the carbodiimide method, via the
carboxyl groups of the peptide. The peptide is activated by a 5-
minute treatment in an aqueous solution with 1-ethyl-3-(3-
dimethylaminopropyl) carbodiimide hydrochloride. Coupling occurs
by the addition of the activated peptide to an aqueous solution
of the carrier. The molar ratio is 1 peptide to 50 amino acids of
the carrier protein. The treatment takes 4 hours.

The reaction is stopped by addition of sodium acetate in a final
concentration of 100 mM. Incubate for 1 hour.

Case 3:02-cv-00046-B-JMA   Document 57   Filed 07/22/02   Page 147 of 237

The protein-peptide conjugate is separated from the peptide by
repeated dialysis over 100 mM of phosphate buffer, pH 7.2

**Example 4**

<u>Synthesis of Multiple Antigenic Peptides (MAP)</u>

The triple lysine branch is achieved by binding Fmoc-L-
lysine(Fmoc)-OH to C terminal alanine, bound to Wang resin, in
three coupling cycles. Eight free amino functions are obtained by
dissociation with piperidine; the sequences of human parathyroid
hormone are synthesized at those functions according to the
description above.

**Example 5**

<u>Vaccination</u>

125 μg of the carrier-peptide conjugate or MAP, dissolved in
250 ml water and emulsified with 250 μl of complete Freund's
adjuvant, is used per kg of body weight for the first
vaccination. The emulsion is applied to the back in 10 separate
SC injections.

Boosters are given similarly after 2-4 weeks. However, the
complete Freund's adjuvant is replaced with incomplete Freund's
adjuvant here.

WO 96/10041

PCT/EP95/03757

- 12 -

## Patent Claims

We claim:

1.  A peptide from the hPTH sequence (1-37) containing α-helical
    amino acid sequence regions and/or unstructured amino acid
    sequence regions, wherein the peptides can induce antibodies
    upon injection into animals.

2.  Peptides according to Claim 1, from hPTH (1-37), with the
    sequence:

hPTH 1-10
$NH_2$-$Ser^1$-$Val^2$-$Ser^3$-$Glu^4$-$Ile^5$-$Gln^6$-$Leu^7$-$Met^8$-$His^9$-$Asn^{10}$-OH    (1)

hPTH 1-9
$NH_2$-$Ser^1$-$Val^2$-$Ser^3$-$Glu^4$-$Ile^5$-$Gln^6$-$Leu^7$-$Met^8$-$His^9$-OH    (2)

hPTH 1-8
$NH_2$-$Ser^1$-$Val^2$-$Ser^3$-$Glu^4$-$Ile^5$-$Gln^6$-$Leu^7$-$Met^8$-OH    (3)

hPTH 1-7
$NH_2$-$Ser^1$-$Val^2$-$Ser^3$-$Glu^4$-$Ile^5$-$Gln^6$-$Leu^7$-OH    (4)

hPTH 1-6
$NH_2$-$Ser^1$-$Val^2$-$Ser^3$-$Glu^4$-$Ile^5$-$Gln^6$-OH    (5)

hPTH 1-5
$NH_2$-$Ser^1$-$Val^2$-$Ser^3$-$Glu^4$-$Ile^5$-OH    (6)

hPTH 9-18
$NH_2$-$His^9$-$Asn^{10}$-$Leu^{11}$-$Gly^{12}$-$Lys^{13}$-$His^{14}$-$Leu^{15}$-$Asn^{16}$-$Ser^{17}$-$Met^{18}$-
OH    (7)

WO 96/10041 PCT/EP95/03757

hPTH 10-18

$NH_2-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$ (8)

hPTH 11-18

$NH_2-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$ (9)

hPTH 12-18

$NH_2-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$ (10)

hPTH 13-18

$NH_2-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$ (11)

hPTH 14-18

$NH_2-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$ (12)

hPTH 9-17

$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-OH$ (13)

hPTH 9-16

$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-OH$ (14)

hPTH 9-15

$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-OH$ (15)

hPTH 9-14

$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-OH$ (16)

hPTH 9-13

$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-OH$ (17)

hPTH 24-37

$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-$
$Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (18)

Page 25
Exhibit B

WO 96/10041

- 14 -

PCT/EP95/03757

hPTH 25-37

$NH_2$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH  (19)

hPTH 26-37

$NH_2$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH  (20)

hPTH 27-37

$NH_2$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH  (21)

hPTH 28-37

$NH_2$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH  (22)

hPTH 29-37

$NH_2$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH  (23)

hPTH 30-37

$NH_2$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH  (24)

hPTH 31-37

$NH_2$-Val$^{31}$-His$^{32}$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH  (25)

hPTH 32-37

$NH_2$-His$^{32}$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH  (26)

hPTH 33-37

$NH_2$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH  (27)

hPTH 24-36

$NH_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-Ala$^{36}$-OH  (28)

WO 96/10041                                    PCT/EP95/03757

- 15 -

hPTH 24-35

$NH_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-OH                                      (29)


hPTH 24-34

$NH_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-Phe$^{34}$-OH                                               (30)


hPTH 24-33

$NH_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-OH                                                          (31)


hPTH 24-32

$NH_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-OH  (32)


hPTH 24-31

$NH_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-OH            (33)


hPTH 24-30

$NH_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-OH                      (34)


hPTH 24-29

$NH_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-OH                                 (35)


hPTH 24-28

$NH_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-OH                                            (36)

- 16 -

3.  Peptides according to Claim 1 and/or 2, modified at the N-
    terminal end, the side chains and/or the C-terminal end with
    acetylation, amidation, phosphorylation and/or glycosylation
    products, and/or bound to carrier proteins such as
    hemocyanin, thyroglobulin, bovine serum albumin, ovalbumin
    or mouse serum albumin.

4.  A diagnostic agent obtainable by vaccination, known *per se,*
    of animals with at least one of the peptides according to at
    least one of the Claims 1 through 3, by obtaining fractions
    containing immunoglobulins from the vaccinated animals and
    by isolating fractions with an antibody titer against at
    least one of the peptides according to at least one of
    Claims 1 through 3 and that contains, if necessary, other
    adjuvants and/or carriers.

5.  Antibody or fragments of antibodies obtained by vaccination
    of animals with at least one peptide according to at least
    one of Claims 1 through 3.

6.  Use of the peptides according to at least one of Claims 1
    through 3 for production of an agent for diagnosis of
    biologically-active h-PTH (1-37).

[International Search Report in English]

[International Search Report in German identical to English-language Search Report]

C

US006030790A

# United States Patent [19]

## Adermann et al.

[11] Patent Number: 6,030,790

[45] Date of Patent: Feb. 29, 2000

[54] **ANTIBODIES THAT BIND PEPTIDES FROM THE HPTH SEQUENCE (1-37)**

[75] Inventors: **Knut Adermann**, Hannover; **Dieter Hock**, Neckarbischofsheim; **Markus Mägerlein**, Obernburg, all of Germany

[73] Assignee: **Haemopep Pharma GmbH**, Germany

[21] Appl. No.: **08/817,547**

[22] PCT Filed: **Sep. 22, 1995**

[86] PCT No.: **PCT/EP95/03757**

§ 371 Date: **Mar. 27, 1997**

§ 102(e) Date: **Mar. 27, 1997**

[87] PCT Pub. No.: **WO96/10041**

PCT Pub. Date: **Apr. 4, 1996**

[30] Foreign Application Priority Data

Sep. 28, 1994 [DE] Germany .......................... P 44 34 551

[51] Int. Cl.[7] .......................... G01N 33/43; C07K 16/26

[52] U.S. Cl. ...................... 435/7.1; 436/512; 530/387.1; 530/387.2; 530/387.9; 530/388.24

[58] Field of Search ............................ 435/7.1; 436/512; 530/387.1, 387.2, 387.9, 388.24

[56] **References Cited**

U.S. PATENT DOCUMENTS

4,508,828 4/1985 Lindall et al. ........................... 436/500

OTHER PUBLICATIONS

Nussbaum et al. Chemical Abstracts 96(5), Abstract No. 29060, 1982.

Tampe et al. J. Immunoassay 13(1):1-13, 1992.

Daniel et al. Virology 202: 540-549, 1994.

Bowie et al. Science 247:1306-1310, 1990.

Ngo et al. The Protein Folding Problem and Tertiary Structure Prediction, Merz et al., eds., Birkhauser, Boston, pp. 492-495, 1994.

*Primary Examiner*—Elizabeth Kemmerer

*Attorney, Agent, or Firm*—Jones & Askew, LLP

## [57]  ABSTRACT

The present invention is directed to peptides from the sequence of hPTH(1-37), which contain α-helical amino acid sequence regions and/or non-structured amino acid sequence regions, said peptides being capable of inducing antibodies when injected into animals. Furthermore, the invention is directed to a diagnostic agent and antibodies obtainable by immunizing animals using the peptides according to the invention.

**25 Claims, No Drawings**

1

# ANTIBODIES THAT BIND PEPTIDES FROM THE HPTH SEQUENCE (1-37)

This application was filed under 35 U.S.C. § 371 and claims priority from PCT/EP95/03757, filed Sep. 22, 1995.

The present invention relates to peptides from the sequence of hPTH(1–37), and the use of said peptides in the preparation of an agent for diagnosing biologically active hPTH.

Human parathyroid hormone (hPTH), a linear polypeptide having 84 amino acids, plays an important role in the regulation of the calcium metabolism. The metabolism of this hormone gives rise to a large number of C-terminal fragments, the biological functions of which have not yet been elucidated. The hPTH(1–37) has been established as a circulating N-terminal fragment (EP-A 0 349 545). This fragment has the full biological activity of the entire hormone. However, upon loss of the first amino acid, serine, the activity significantly decreases and is lost completely without the first two amino acids, serine and valine.

Serum levels in the range of $10^{-12}$ mol/l are measured for the intact hormone hPTH(1–84) and for the N-terminal fragment. Immunological measuring procedures are employed to determine such low concentrations. Here, the most valid results are provided by measuring procedures according to the double antibody or sandwich principle (e.g., the two-site radioimmunometric assay, IRMA, or the sandwich enzyme-linked immuno sorbent assay, Sandwich ELISA). For hPTH(1–84), such assays are commercially available. For the measurement of hPTH(1–34), an assay according to the double antibody principle is not known.

2

Here, two antibodies are required. In order to avoid mutual steric hindrance, they must be capable of recognizing antigen epitopes located at a sufficient distance from each other. When immunizing using the intact antigen, a heterogeneous mixture of various antibodies is obtained, which first must be subjected to an expensive purification in order to conduct a sandwich assay. According to theoretical calculations by B. A. Jameson and H. Wolf, The Antigenic Index: A Novel Algorithm for Predicting Antigenic Determinants, CABIOS 4, p. 181–186, 1988; it has been possible so far to detect a preferred sequence having immunogenic activity in the region of the amino acids 7–14 at the N-terminus. Immunization with N-terminal fragments according to established methods predominantly results in antibodies which, as has been described for hPTH(1–34) (J. Tampe, P. Brozio, H. E. Manneck, A. Mißbichler, E. Blind, K. B. Millers, H. SchmidtGayk, and F. P. Armbruster, Characterisation of Antibodies Against Human N-Terminal Parathyroid Hormone by Epitope Mapping; J. Immunoassay 13, p. 1–13, 1992), bind in the region of these amino acids. However, these antibodies are not capable of discriminating between biologically active and biologically inactive PTH (1–84) or fragments thereof lacking the first two amino acids serine and valine.

The technical problem which this invention is based upon is to provide peptides by means of which it is possible to eliminate the above-mentioned drawbacks in the diagnosis of biologically active hPTH.

Surprisingly, the technical problem described above is solved by means of the following peptides from the sequence of hPTH(1–37):

hPTH 1-10 SEQ I.D. NO.1
$NH_2$-$Ser^1$-$Val^2$-$Ser^3$-$Glu^4$-$Ile^5$-$Gln^6$-$Leu^7$-$Met^8$-$His^9$-$Asn^{10}$-OH   (1)

hPTH 1-9 SEQ I.D. NO.2
$NH_2$-$Ser^1$-$Val^2$-$Ser^3$-$Glu^4$-$Ile^5$-$Gln^6$-$Leu^7$-$Met^8$-$His^9$-OH   (2)

hPTH 1-8 SEQ I.D. NO.3
$NH_2$-$Ser^1$-$Val^2$-$Ser^3$-$Glu^4$-$Ile^5$-$Gln^6$-$Leu^7$-$Met^8$-OH   (3)

hPTH 1-7 SEQ I.D. NO.4
$NH_2$-$Ser^1$-$Val^2$-$Ser^3$-$Glu^4$-$Ile^5$-$Gln^6$-$Leu^7$-OH   (4)

hPTH 1-6 SEQ I.D. NO.5
$NH_2$-$Ser^1$-$Val^2$-$Ser^3$-$Glu^4$-$Ile^5$-$Gln^6$-OH   (5)

hPTH 1-5 SEQ I.D. NO.6
$NH_2$-$Ser^1$-$Val^2$-$Ser^3$-$Glu^4$-$Ile^5$-OH   (6)

hPTH 9-18 SEQ I.D. NO.7
$NH_2$-$His^9$-$Asn^{10}$-$Leu^{11}$-$Gly^{12}$-$Lys^{13}$-$His^{14}$-$Leu^{15}$-$Asn^{16}$-$Ser^{17}$-$Met^{18}$-OH   (7)

hPTH 10-18 SEQ I.D. NO.8
$NH_2$-$Asn^{10}$-$Leu^{11}$-$Gly^{12}$-$Lys^{13}$-$His^{14}$-$Leu^{15}$-$Asn^{16}$-$Ser^{17}$-$Met^{18}$-OH   (8)

hPTH 11-18 SEQ I.D. NO.9
$NH_2$-$Leu^{11}$-$Gly^{12}$-$Lys^{13}$-$His^{14}$-$Leu^{15}$-$Asn^{16}$-$Ser^{17}$-$Met^{18}$-OH   (9)

hPTH 12-18 SEQ I.D. NO.10
$NH_2$-$Gly^{12}$-$Lys^{13}$-$His^{14}$-$Leu^{15}$-$Asn^{16}$-$Ser^{17}$-$Met^{18}$-OH   (10)

hPTH 13-18 SEQ I.D. NO.11
$NH_2$-$Lys^{13}$-$His^{14}$-$Leu^{15}$-$Asn^{16}$-$Ser^{17}$-$Met^{18}$-OH   (11)

hPTH 14-18 SEQ I.D. NO.12
$NH_2$-$His^{14}$-$Leu^{15}$-$Asn^{16}$-$Ser^{17}$-$Met^{18}$-OH   (12)

hPTH 9-17 SEQ I.D. NO.13
$NH_2$-$His^9$-$Asn^{10}$-$Leu^{11}$-$Gly^{12}$-$Lys^{13}$-$His^{14}$-$Leu^{15}$-$Asn^{16}$-$Ser^{17}$-OH   (13)

hPTH 9-16 SEQ I.D. NO.14

6,030,790

3
4

-continued

$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-OH$ (14)

hPTH 9-15 SEQ I.D. NO.15
$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-OH$ (15)

hPTH 9-14 SEQ I.D. NO.16
$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-OH$ (16)

hPTH 9-13 SEQ I.D. NO.17
$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-OH$ (17)

hPTH 24-37 SEQ I.D. NO.18
$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-$
$Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (18)

hPTH 25-37 SEQ I.D. NO.19
$NH_2-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-$
$Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (19)

hPTH 26-37 SEQ I.D. NO.20
$NH_2-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-$
$Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (20)

hPTH 27-37 SEQ I.D. NO.21
$NH_2-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-$
$Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (21)

hPTH 28-37 SEQ I.D. NO.22
$NH_2-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (22)

hPTH 29-37 SEQ I.D. NO.23
$NH_2-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (23)

hPTH 30-37 SEQ I.D. NO.24
$NH_2-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (24)

hPTH 31-37 SEQ I.D. NO.25
$NH_2-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (25)

hPTH 32-37 SEQ I.D. NO.26
$NH_2-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (26)

hPTH 33-37 SEQ I.D. NO.27
$NH_2-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (27)

hPTH 24-36 SEQ I.D. NO.28
$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-$
$Phe^{34}-Val^{35}-Ala^{36}-OH$ (28)

hPTH 24-35 SEQ I.D. NO.29
$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-$
$Phe^{34}-Val^{35}-OH$ (29)

hPTH 24-34 SEQ I.D. NO.30
$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-$
$Phe^{34}-OH$ (30)

hPTH 24-33 SEQ I.D. NO.31
$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-OH$ (31)

hPTH 24-32 SEQ I.D. NO.32
$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-OH$ (32)

hPTH 24-31 SEQ I.D. NO.33
$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-OH$ (33)

hPTH 24-29 SEQ I.D. NO.34
$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-OH$ (34)

hPTH 24-38 SEQ I.D. NO.35
$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-OH$ (35)

The indicated sequences represent essential features of the secondary structure in their primary structure, as can be demonstrated by supporting NMR data. One precondition to this end was a determination of the PTH(1–37) secondary structure in physiological solution.

The above-mentioned regions of conspicuous structure have good immunogenic activity. Antibodies are formed, binding to the first amino acids of the N-terminus. Deficiency of only two amino acids gives rise to a substantial loss in affinity. Because these amino acids are indispensable

6,030,790

| 5 | 6 |

for the biological activity to arise, it is possible by using the peptides of the invention to obtain antibodies recognizing only bPTH and fragments thereof which are biologically active.

Furthermore, antibodies can be produced which detect the mid-region 9–15, as well as antibodies giving C-terminal binding in the region of the amino acids 30–37. According to the invention, it is therefore possible to produce antibodies against hPTH(1–37) regions which, according to theoretical calculations, do not exhibit immunogenic activity within the entire molecule. In addition, these regions are separated from each other by such a far distance that no steric hindrance is present which would prevent simultaneous binding of two antibodies.

In preferred embodiments, the peptides may be modified at the N-terminal end, in the side-chain and/or at the C-terminal end, namely, taking the form of acetylation, amidation, phosphorylation and/or glycosylation products.

Eventually, the peptides of the invention may also be bound to carrier proteins such as hemocyanin, thyroglobulin, bovine serum albumin, ovalbumin, or mouse serum albumin etc. Binding to the carrier proteins is preferably effected using carbodiimide or formaldehyde.

The peptides of the invention may be used in the preparation of a diagnostic agent. The diagnostic agent of the invention can be obtained using the per se known immunization of animals with at least one of the peptides according to the invention. Following immunization, an immunoglobulin fraction can be isolated from the immunized animals, which contains antibody fractions having an antibody titer against at least one of the peptides of the invention. The invention is also directed to the antibodies thus obtained. In addition to the complete antibodies consisting of $F_{ab}$ and $F_c$, fragments thereof such as $F_{ab}$ or fragments of the antibodies being idiotypes of peptide epitopes may also be used in an alternative embodiment.

The peptides according to the invention are suitable for preparing an agent for the diagnosis of biologically active bPTH(1–37).

Referring to the following examples, the invention will be described in more detail.

EXAMPLE 1

Solid-Phase Synthesis of Peptides

The method of the invention for synthesizing the peptides is based on the peptide synthesis using a solid support. Each of the C-terminal amino acids is bound to the support material in the presence of dicyclohexylcarbodiimide and dimethylaminopyridine. Wang resin or similar resins are used as support material for the syntheses.

The following derivatives of L-amino acids are used in the synthesis of the sequence, starting from the peptidyl resin as specified: a) hPTH(1–10) Seq. I.D. No. 1: Fmoc-Asn(Trt)-Wang resin, Fmoc-His(Trt)-OH, Fmoc-Met-OH, Fmoc-Leu-OH, Fmoc-Gln(Trt)-OH, Fmoc-Ile-OH, Fmoc-Glu(OtBu)-OH, Fmoc-Ser(tBu)-OH, Fmoc-Val-OH, Boc-

Ser(tBu)-OH; b) hPTH(9–18) Seq. I.D. No. 7): Fmoc-Met-Wang resin, Fmoc-Ser(tBu)-OH, Fmoc-Asn(Trt)-OH, Fmoc-Leu-OH, Fmoc-His(Trt)-OH, Fmoc-Lys(Boc)-OH, Fmoc-Gly-OH, Fmoc-Leu-OH, Fmoc-Asn(Trt)-OH, Boc-His(Trt)-OH; c) hPTH(24–37) Seq. I.D. No. 18: Fmoc-Leu-Wang resin, Fmoc-Ala-OH, Fmoc-Val-OH, Fmoc-Phe-OH, Fmoc-Asn(Trt)-OH, Fmoc-His(Trt)-OH, Fmoc-Val-OH, Fmoc-Asp(OtBu)-OH, Fmoc-Gln(Trt)-OH, Fmoc-Leu-OH, Fmoc-Lys(Boc)-OH, Fmoc-Lys(Boc)-OH, Fmoc-Arg (Pmc)-OH, Fmoc-Leu-OH.

The synthesis may be carried out by in situ activation using 2-(1H-benzotriazol-1-yl)-1,1,3,3-tetramethyluronium tetrafluoroborate (TBTU) or derivatives thereof, or benzotriazol-1-yloxy-tris(dimethylamino)phosphonium hexafluorophosphate (BOP) or derivatives thereof in the presence of diisopropylethylamine or N-methylmorpholine and 1-hydroxybenzotriazole, using a four- to tenfold excess of Fmoc-L-amino acid during the coupling reactions in N,N-dimethylformamide, N,N-dimethylacetamide or N-methylpyrrolidone. Removal of the Fmoc groups is effected using 20% piperidine or 2% piperidine and 2% 1,8-diazabicyclo[5.4.0]undec-7-ene (DBU) in N,N-dimethylformamide, N,N-dimethylacetamide or N-methylpyrrolidone. Following synthesis, the resins are washed with 2-propanol and dichloromethane and dried to constant weight in a high vacuum.

Removal from the support and deprotection are carried out by reacting the peptidyl resin with trifluoroacetic acid containing 5% scavenger, water, ethanediol, phenol or thioanisole for 30–90 minutes at room temperature, filtrating, washing with trifluoroacetic acid, and subsequently precipitating with tert-butyl methyl ether. The precipitate is lyophilized from aqueous solution.

EXAMPLE 2

Purification and Analysis

The raw products are purified by chromatography on a C18 reversed phase column (10 μm, buffer A: 0.01 N HCl in water; buffer B: 20% isopropanol, 30% methanol, 50% water, 0.01 N HCl; gradient: 10–80% within 60 minutes; detection at 230 nm).

The purity of the products is determined using mass spectrometry and C18 reversed phase chromatography.

EXAMPLE 3

Coupling to Carrier Protein

Used as carrier proteins are hemocyanin, thyroglobulin, bovine serum albumin, ovalbumin, or mouse serum albumin. Coupling is performed according to the carbodiimide method by way of the carboxyl groups of the peptides. The peptide is activated in aqueous solution by reaction with 1-ethyl-3-(3-methylaminopropyl)carbodiimide hydrochloride for 5 minutes. Coupling is effected by adding the activated peptide to an aqueous solution of the carrier. The molar ratio is 1 peptide 50 amino acids of the carrier protein. The reaction takes 4 hours.

SEQUENCE LISTING

(1) GENERAL INFORMATION:

    (iii) NUMBER OF SEQUENCES: 36

6,030,790

7                                                                            8

---

−continued

(2) INFORMATION FOR SEQ ID NO: 1:

    (i) SEQUENCE CHARACTERISTICS:
        (A) LENGTH: 10 amino acids
        (B) TYPE: amino acid
        (C) STRANDEDNESS: unknown
        (D) TOPOLOGY: unknown

    (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

    (iv) ANTI-SENSE: no

    (xi) SEQUENCE DESCRIPTION: SEQ ID NO: 1:

Ser Val Ser Glu Ile Gln Leu Met His Asn
1               5                       10

(2) INFORMATION FOR SEQ ID NO: 2:

    (i) SEQUENCE CHARACTERISTICS:
        (A) LENGTH: 9 amino acids
        (B) TYPE: amino acid
        (C) STRANDEDNESS: unknown
        (D) TOPOLOGY: unknown

    (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

    (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 2:

Ser Val Ser Glu Ile Gln Leu Met His
1               5

(2) INFORMATION FOR SEQ ID NO: 3:

    (i) SEQUENCE CHARACTERISTICS:
        (A) LENGTH: 8 amino acids
        (B) TYPE: amino acid
        (C) STRANDEDNESS: unknown
        (D) TOPOLOGY: unknown

    (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

    (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 3:

Ser Val Ser Glu Ile Gln Leu Met
1               5

(2) INFORMATION FOR SEQ ID NO: 4:

    (i) SEQUENCE CHARACTERISTICS:
        (A) LENGTH: 7 amino acids
        (B) TYPE: amino acid
        (C) STRANDEDNESS: unknown
        (D) TOPOLOGY: unknown

    (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

    (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 4:

Ser Val Ser Glu Ile Gln Leu
1               5

6,030,790

9                                              10

-continued

(2) INFORMATION FOR SEQ ID NO: 5:

     (i) SEQUENCE CHARACTERISTICS:
          (A) LENGTH: 6 amino acids
          (B) TYPE: amino acid
          (C) STRANDEDNESS: unknown
          (D) TOPOLOGY: unknown

     (ii) MOLECULE TYPE: peptide

     (iii) HYPOTHETICAL: no

     (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 5:

Ser Val Ser Glu Ile Gln
1               5


(2) INFORMATION FOR SEQ ID NO: 6:

     (i) SEQUENCE CHARACTERISTICS:
          (A) LENGTH: 5 amino acids
          (B) TYPE: amino acid
          (C) STRANDEDNESS: unknown
          (D) TOPOLOGY: unknown

     (ii) MOLECULE TYPE: peptide

     (iii) HYPOTHETICAL: no

     (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 6:

Ser Val Ser Glu Ile
1               5


(2) INFORMATION FOR SEQ ID NO: 7:

     (i) SEQUENCE CHARACTERISTICS:
          (A) LENGTH: 10 amino acids
          (B) TYPE: amino acid
          (C) STRANDEDNESS: unknown
          (D) TOPOLOGY: unknown

     (ii) MOLECULE TYPE: peptide

     (iii) HYPOTHETICAL: no

     (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 7:

His Asn Leu Gly Lys His Leu Asn Ser Met
1               5                   10


(2) INFORMATION FOR SEQ ID NO: 8:

     (i) SEQUENCE CHARACTERISTICS:
          (A) LENGTH: 9 amino acids
          (B) TYPE: amino acid
          (C) STRANDEDNESS: unknown
          (D) TOPOLOGY: unknown

     (ii) MOLECULE TYPE: peptide

     (iii) HYPOTHETICAL: no

     (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 8:

Asn Leu Gly Lys His Leu Asn Ser Met
1               5

6,030,790

11                                    12

-continued

(2) INFORMATION FOR SEQ ID NO: 9:

    (i) SEQUENCE CHARACTERISTICS:
        (A) LENGTH: 8 amino acids
        (B) TYPE: amino acid
        (C) STRANDEDNESS: unknown
        (D) TOPOLOGY: unknown

    (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

    (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 9:

Leu Gly Lys His Leu Asn Ser Met
1                 5

(2) INFORMATION FOR SEQ ID NO: 10:

    (i) SEQUENCE CHARACTERISTICS:
        (A) LENGTH: 7 amino acids
        (B) TYPE: amino acid
        (C) STRANDEDNESS: unknown
        (D) TOPOLOGY: unknown

    (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

    (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 10:

Gly Lys His Leu Asn Ser Met
1             5

(2) INFORMATION FOR SEQ ID NO: 11:

    (i) SEQUENCE CHARACTERISTICS:
        (A) LENGTH: 6 amino acids
        (B) TYPE: amino acid
        (C) STRANDEDNESS: unknown
        (D) TOPOLOGY: unknown

    (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

    (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 11:

Lys His Leu Asn Ser Met
1             5

(2) INFORMATION FOR SEQ ID NO: 12:

    (i) SEQUENCE CHARACTERISTICS:
        (A) LENGTH: 5 amino acids
        (B) TYPE: amino acid
        (C) STRANDEDNESS: unknown
        (D) TOPOLOGY: unknown

    (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

    (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 12:

His Leu Asn Ser Met

6,030,790

13          14

-continued

```
1          5
```

(2) INFORMATION FOR SEQ ID NO: 13:

   (i) SEQUENCE CHARACTERISTICS:
      (A) LENGTH: 9 amino acids
      (B) TYPE: amino acid
      (C) STRANDEDNESS: unknown
      (D) TOPOLOGY: unknown

   (ii) MOLECULE TYPE: peptide

   (iii) HYPOTHETICAL: no

   (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 13:

```
His Asn Leu Gly Lys His Leu Asn Ser
1               5
```

(2) INFORMATION FOR SEQ ID NO: 14:

   (i) SEQUENCE CHARACTERISTICS:
      (A) LENGTH: 8 amino acids
      (B) TYPE: amino acid
      (C) STRANDEDNESS: unknown
      (D) TOPOLOGY: unknown

   (ii) MOLECULE TYPE: peptide

   (iii) HYPOTHETICAL: no

   (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 14:

```
His Asn Leu Gly Lys His Leu Asn
1               5
```

(2) INFORMATION FOR SEQ ID NO: 15:

   (i) SEQUENCE CHARACTERISTICS:
      (A) LENGTH: 7 amino acids
      (B) TYPE: amino acid
      (C) STRANDEDNESS: unknown
      (D) TOPOLOGY: unknown

   (ii) MOLECULE TYPE: peptide

   (iii) HYPOTHETICAL: no

   (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 15:

```
His Asn Leu Gly Lys His Leu
1               5
```

(2) INFORMATION FOR SEQ ID NO: 16:

   (i) SEQUENCE CHARACTERISTICS:
      (A) LENGTH: 6 amino acids
      (B) TYPE: amino acid
      (C) STRANDEDNESS: unknown
      (D) TOPOLOGY: unknown

   (ii) MOLECULE TYPE: peptide

   (iii) HYPOTHETICAL: no

   (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 16:

Exh. 1, Page 138

6,030,790

15                                           16

---

-continued

```
His Asn Leu Gly Lys His
1                 5


(2) INFORMATION FOR SEQ ID NO: 17:

        (i) SEQUENCE CHARACTERISTICS:
            (A) LENGTH: 5 amino acids
            (B) TYPE: amino acid
            (C) STRANDEDNESS: unknown
            (D) TOPOLOGY: unknown

    (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

    (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 17:

His Asn Leu Gly Lys
1                 5


(2) INFORMATION FOR SEQ ID NO: 18:

        (i) SEQUENCE CHARACTERISTICS:
            (A) LENGTH: 14 amino acids
            (B) TYPE: amino acid
            (C) STRANDEDNESS: unknown
            (D) TOPOLOGY: unknown

    (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

    (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 18:

Leu Arg Lys Lys Leu Gln Asp Val His Asn Phe Val Ala Leu
1                 5                     10


(2) INFORMATION FOR SEQ ID NO: 19:

        (i) SEQUENCE CHARACTERISTICS:
            (A) LENGTH: 13 amino acids
            (B) TYPE: amino acid
            (C) STRANDEDNESS: unknown
            (D) TOPOLOGY: unknown

    (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

    (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 19:

Arg Lys Lys Leu Gln Asp Val His Asn Phe Val Ala Leu
1                 5                         10


(2) INFORMATION FOR SEQ ID NO: 20:

        (i) SEQUENCE CHARACTERISTICS:
            (A) LENGTH: 12 amino acids
            (B) TYPE: amino acid
            (C) STRANDEDNESS: unknown
            (D) TOPOLOGY: unknown

    (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

    (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 20:
```

Page 38
Exhibit C

6,030,790

17                                    18

-continued

```
Lys Lys Leu Gln Asp Val His Asn Phe Val Ala Leu
1             5                   10


(2) INFORMATION FOR SEQ ID NO: 21:

      (i) SEQUENCE CHARACTERISTICS:
          (A) LENGTH: 11 amino acids
          (B) TYPE: amino acid
          (C) STRANDEDNESS: unknown
          (D) TOPOLOGY: unknown

     (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

     (iv) ANTI-SENSE: no

     (xi) SEQUENCE DESCRIPTION: SEQ ID NO: 21:

Lys Leu Gln Asp Val His Asn Phe Val Ala Leu
1             5                   10


(2) INFORMATION FOR SEQ ID NO: 22:

      (i) SEQUENCE CHARACTERISTICS:
          (A) LENGTH: 10 amino acids
          (B) TYPE: amino acid
          (C) STRANDEDNESS: unknown
          (D) TOPOLOGY: unknown

     (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

     (iv) ANTI-SENSE: no

     (xi) SEQUENCE DESCRIPTION: SEQ ID NO: 22:

Leu Gln Asp Val His Asn Phe Val Ala Leu
1             5                   10


(2) INFORMATION FOR SEQ ID NO: 23:

      (i) SEQUENCE CHARACTERISTICS:
          (A) LENGTH: 9 amino acids
          (B) TYPE: amino acid
          (C) STRANDEDNESS: unknown
          (D) TOPOLOGY: unknown

     (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

     (iv) ANTI-SENSE: no

     (xi) SEQUENCE DESCRIPTION: SEQ ID NO: 23:

Gln Asp Val His Asn Phe Val Ala Leu
1             5


(2) INFORMATION FOR SEQ ID NO: 24:

      (i) SEQUENCE CHARACTERISTICS:
          (A) LENGTH: 8 amino acids
          (B) TYPE: amino acid
          (C) STRANDEDNESS: unknown
          (D) TOPOLOGY: unknown

     (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

     (iv) ANTI-SENSE: no
```

6,030,790

19                                          20

-continued

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 24:

Asp Val His Asn Phe Val Ala Leu
1               5


(2) INFORMATION FOR SEQ ID NO: 25:

        (i) SEQUENCE CHARACTERISTICS:
            (A) LENGTH: 7 amino acids
            (B) TYPE: amino acid
            (C) STRANDEDNESS: unknown
            (D) TOPOLOGY: unknown

    (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

    (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 25:

Val His Asn Phe Val Ala Leu
1               5


(2) INFORMATION FOR SEQ ID NO: 26:

        (i) SEQUENCE CHARACTERISTICS:
            (A) LENGTH: 6 amino acids
            (B) TYPE: amino acid
            (C) STRANDEDNESS: unknown
            (D) TOPOLOGY: unknown

    (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

    (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 26:

His Asn Phe Val Ala Leu
1               5


(2) INFORMATION FOR SEQ ID NO: 27:

        (i) SEQUENCE CHARACTERISTICS:
            (A) LENGTH: 5 amino acids
            (B) TYPE: amino acid
            (C) STRANDEDNESS: unknown
            (D) TOPOLOGY: unknown

    (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

    (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 27:

Asn Phe Val Ala Leu
1               5


(2) INFORMATION FOR SEQ ID NO: 28:

        (i) SEQUENCE CHARACTERISTICS:
            (A) LENGTH: 13 amino acids
            (B) TYPE: amino acid
            (C) STRANDEDNESS: unknown
            (D) TOPOLOGY: unknown

    (ii) MOLECULE TYPE: peptide

    (iii) HYPOTHETICAL: no

    (iv) ANTI-SENSE: no

6,030,790

21                                                22

-continued

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 28:

Leu Arg Lys Lys Leu Gln Asp Val His Asn Phe Val Ala
1               5               10


(2) INFORMATION FOR SEQ ID NO: 29:

        (i) SEQUENCE CHARACTERISTICS:
             (A) LENGTH: 12 amino acids
             (B) TYPE: amino acid
             (C) STRANDEDNESS: unknown
             (D) TOPOLOGY: unknown

        (ii) MOLECULE TYPE: peptide

        (iii) HYPOTHETICAL: no

        (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 29:

Leu Arg Lys Lys Leu Gln Asp Val His Asn Phe Val
1               5               10


(2) INFORMATION FOR SEQ ID NO: 30:

        (i) SEQUENCE CHARACTERISTICS:
             (A) LENGTH: 11 amino acids
             (B) TYPE: amino acid
             (C) STRANDEDNESS: unknown
             (D) TOPOLOGY: unknown

        (ii) MOLECULE TYPE: peptide

        (iii) HYPOTHETICAL: no

        (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 30:

Leu Arg Lys Lys Leu Gln Asp Val His Asn Phe
1               5               10


(2) INFORMATION FOR SEQ ID NO: 31:

        (i) SEQUENCE CHARACTERISTICS:
             (A) LENGTH: 10 amino acids
             (B) TYPE: amino acid
             (C) STRANDEDNESS: unknown
             (D) TOPOLOGY: unknown

        (ii) MOLECULE TYPE: peptide

        (iii) HYPOTHETICAL: no

        (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 31:

Leu Arg Lys Lys Leu Gln Asp Val His Asn
1               5               10


(2) INFORMATION FOR SEQ ID NO: 32:

        (i) SEQUENCE CHARACTERISTICS:
             (A) LENGTH: 9 amino acids
             (B) TYPE: amino acid
             (C) STRANDEDNESS: unknown
             (D) TOPOLOGY: unknown

        (ii) MOLECULE TYPE: peptide

        (iii) HYPOTHETICAL: no

6,030,790

23             24

-continued

```
    (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 32:

Leu Arg Lys Lys Leu Gln Asp Val His
1               5


(2) INFORMATION FOR SEQ ID NO: 33:

        (i) SEQUENCE CHARACTERISTICS:
            (A) LENGTH: 8 amino acids
            (B) TYPE: amino acid
            (C) STRANDEDNESS: unknown
            (D) TOPOLOGY: unknown

        (ii) MOLECULE TYPE: peptide

        (iii) HYPOTHETICAL: no

        (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 33:

Leu Arg Lys Lys Leu Gln Asp Val
1               5


(2) INFORMATION FOR SEQ ID NO: 34:

        (i) SEQUENCE CHARACTERISTICS:
            (A) LENGTH: 7 amino acids
            (B) TYPE: amino acid
            (C) STRANDEDNESS: unknown
            (D) TOPOLOGY: unknown

        (ii) MOLECULE TYPE: peptide

        (iii) HYPOTHETICAL: no

        (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 34:

Leu Arg Lys Lys Leu Gln Asp
1               5


(2) INFORMATION FOR SEQ ID NO: 35:

        (i) SEQUENCE CHARACTERISTICS:
            (A) LENGTH: 6 amino acids
            (B) TYPE: amino acid
            (C) STRANDEDNESS: unknown
            (D) TOPOLOGY: unknown

        (ii) MOLECULE TYPE: peptide

        (iii) HYPOTHETICAL: no

        (iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 35:

Leu Arg Lys Lys Leu Gln
1               5


(2) INFORMATION FOR SEQ ID NO: 36:

        (i) SEQUENCE CHARACTERISTICS:
            (A) LENGTH: 5 amino acids
            (B) TYPE: amino acid
            (C) STRANDEDNESS: unknown
            (D) TOPOLOGY: unknown

        (ii) MOLECULE TYPE: peptide

        (iii) HYPOTHETICAL: no
```

6,030,790

25         26

-continued

```
(iv) ANTI-SENSE: no

(xi) SEQUENCE DESCRIPTION: SEQ ID NO: 36:

Leu Arg Lys Lys Leu
1               5
```

We claim:

1. A kit for detecting active human parathyroid hormone (hPTH) comprising a container and a first group of antibodies or antibody fragments and a second group of antibodies or antibody fragments, wherein the first group selectively binds a peptide of hPTH selected from the group consisting of peptides having SEQ. ID. Nos. 1–6 and the second group selectively binds hPTH at an epitope contained within amino acids 24 to 37.

2. The kit of claim 1, wherein the second group of antibodies or antibody fragments selectively binds a peptide of hPTH selected from the group consisting of peptides having SEQ. ID. Nos. 18–36.

3. The kit of claim 1, wherein the first group of antibodies or antibody fragments selectively bind peptides of hPTH having SEQ. ID. No. 1.

4. The kit of claim 1, wherein the first group of antibodies or antibody fragments selectively bind peptides of hPTH having SEQ. ID. No. 2.

5. The kit of claim 1, wherein the first group of antibodies or antibody fragments selectively bind peptides of hPTH having SEQ. ID. No. 3.

6. The kit of claim 1, wherein the first group of antibodies or antibody fragments selectively bind peptides of hPTH having SEQ. ID. No. 4.

7. The kit of claim 1, wherein the first group of antibodies or antibody fragments selectively bind peptides of hPTH having SEQ. ID. No. 5.

8. The kit of claim 1, wherein the first group of antibodies or antibody fragments selectively bind peptides of hPTH having SEQ. ID. No. 6.

9. An immunological method of detecting active human parathyroid hormone (hPTH) in a sample comprising:

contacting the sample with a first antibody or antibody fragment which selectively binds a peptide of hPTH selected from the group consisting of peptides having SEQ. ID. Nos. 1–6, wherein the first antibody or antibody fragment binds bPTH in the sample;

contacting the sample with a second antibody or antibody fragment which selectively binds hPTH at an epitope contained within amino acids 24 to 37; wherein the second antibody or antibody fragment binds to hPTH bound by the first antibody or antibody fragment; and

detecting the binding of the first and second antibodies or antibody fragments, wherein the binding of the first and second antibodies or antibody fragments indicates the presence of active hPTH in the sample.

10. The method of claim 9, wherein the second antibody or antibody fragment selectively binds a peptide of hPTH selected from the group consisting of peptides having SEQ. ID. Nos. 18–36.

11. The method of claim 9, wherein the first antibody or antibody fragment selectively binds peptides of hPTH having SEQ. ID. No. 1.

12. The method of claim 9, wherein the first antibody or antibody fragment selectively binds peptides of hPTH having SEQ. ID. No. 2.

13. The method of claim 9, wherein the first antibody or antibody fragment selectively binds peptides of hPTH having SEQ. ID. No. 3.

14. The method of claim 9, wherein the first antibody or antibody fragment selectively binds peptides of hPTH having SEQ. ID. No. 4.

15. The method of claim 9, wherein the first antibody or antibody fragment selectively binds peptides of hPTH having SEQ. ID. No. 5.

16. The method of claim 9, wherein the first antibody or antibody fragment selectively binds peptides of hPTH having SEQ. ID. No. 6.

17. A composition comprising an antibody or antibody fragment and a suitable carrier, wherein the antibody or antibody fragment selectively binds a peptide of human parathyroid hormone (hPTH) selected from the group consisting of peptides having SEQ. ID. Nos. 1–6.

18. The composition of claim 17, wherein the composition further comprises a second antibody or antibody fragment, wherein the second antibody or antibody fragment selectively binds hPTH at an epitope contained within amino acids 24 to 37.

19. The composition of claim 17, wherein the second antibody or antibody fragment selectively binds a peptide of hPTH selected from the group consisting of peptides having SEQ. ID. Nos. 18–36.

20. The composition of claim 17, wherein the antibody or antibody fragment selectively binds peptides of hPTH having SEQ. ID. No. 1.

21. The composition of claim 17, wherein the antibody or antibody fragment selectively binds peptides of hPTH having SEQ. ID. No. 2.

22. The composition of claim 17, wherein the antibody or antibody fragment selectively binds peptides of hPTH having SEQ. ID. No. 3.

23. The composition of claim 17, wherein the antibody or antibody fragment selectively binds peptides of hPTH having SEQ. ID. No. 4.

24. The composition of claim 17, wherein the antibody or antibody fragment selectively binds peptides pf hPTH having SEQ. ID. No. 5.

25. The composition of claim 17, wherein the antibody or antibody fragment selectivley binds peptides of hPTH having SEQ. ID. No. 6.

* * * * *

PATENT APPLICATION SERIAL NO. **08/817547**

U.S. DEPARTMENT OF COMMERCE.
PATENT AND TRADEMARK OFFICE
FEE RECORD SHEET

Page 44
Exhibit D

PTO-1556
(5/87)

'd PCT/PTO 27 MAR 1997    08/817547    07426-◦◦◦7
( Annex TO IPER )
PCT/EP95/02757
Apt.13

Peptides from the hPTH(1-37) Sequence

The present invention relates to peptides from the sequence of hPTH(1-37), and the use of said peptides in the preparation of an agent for diagnosing biologically active hPTH.

Human parathyroid hormone (hPTH), a linear polypeptide having 84 amino acids, plays an important role in the regulation of the calcium metabolism. The metabolism of this hormone gives rise to a large number of C-terminal fragments, the biological functions of which have not yet been elucidated. The hPTH(1-37) has been established as a circulating N-terminal fragment (EP-A 0 349 545). This fragment has the full biological activity of the entire hormone. However, upon loss of the first amino acid, serine, the activity significantly decreases and is lost completely without the first two amino acids, serine and valine.

Serum levels in the range of $10^{-12}$ mol/l are measured for the intact hormone hPTH(1-84) and for the N-terminal fragment. Immunological measuring procedures are employed to determine such low concentrations. Here, the most valid results are provided by measuring procedures according to the double antibody or sandwich principle (e.g., the two-site radioimmunometric assay, IRMA, or the sandwich enzyme-linked immuno sorbent assay, Sandwich ELISA). For hPTH(1-84), such assays are commercially available. For the measurement of hPTH(1-34), an assay according to the double antibody principle is not known.

Here, two antibodies are required. In order to avoid mutual steric hindrance, they must be capable of recognizing antigen epitopes located at a sufficient distance from each other. When immunizing using the intact antigen, a heteroge-

Art. 34

- 2 -

neous mixture of various antibodies is obtained, which first must be subjected to an expensive purification in order to conduct a sandwich assay. According to theoretical calcula- tions by B.A. Jameson and H. Wolf, The Antigenic Index: A Novel Algorithm for Predicting Antigenic Determinants, CABIOS 4, p. 181-186, 1988; it has been possible so far to detect a preferred sequence having immunogenic activity in the region of the amino acids 7-14 at the N-terminus. Immuni- zation with N-terminal fragments according to established methods predominantly results in antibodies which, as has been described for hPTH(1-34) (J. Tampe, P. Brozio, K.E. Manneck, A. Mißbichler, E. Blind, K.B. Millers, H. Schmidt- Gayk, and F.P. Armbruster, Characterisation of Antibodies Against Human N-Terminal Parathyroid Hormone by Epitope Map- ping; J. Immunoassay 13, p. 1-13, 1992), bind in the region of these amino acids. However, these antibodies are not capa- ble of discriminating between biologically active and biolog- ically inactive PTH(1-84) or fragments thereof lacking the first two amino acids serine and valine.

The technical problem which this invention is based upon is to provide peptides by means of which it is possible to eliminate the above-mentioned drawbacks in the diagnosis of biologically active hPTH.

Surprisingly, the technical problem described above is solved by means of the following peptides from the sequence of hPTH(1-37):

– 3 –

hPTH 1-10 (SEQ. ID. NO. 1)
$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-Leu^7-Met^8-His^9-Asn^{10}-OH$

(1)

hPTH 1-9 SEQ. ID. No. 2
$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-Leu^7-Met^8-His^9-OH$

(2)

hPTH 1-8 SEQ ID. No. 3
$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-Leu^7-Met^8-OH$

(3)

hPTH 1-7 SEQ. I.D. No. 4
$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-Leu^7-OH$

(4)

hPTH 1-6 SEQ I.D. No. 5
$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-OH$

(5)

hPTH 1-5 SEQ. ID. No. 6
$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-OH$

(6)

hPTH 9-18 SEQ. I.D. ND. 7
$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$

(7)

hPTH 10-18 SEQ. ID. No. 8
$NH_2-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$

(8)

hPTH 11-18 SEQ ID. No. 9
$NH_2-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$

(9)

hPTH 12-18 SEQ. I.D. No. 10
$NH_2-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$

(10)

hPTH 13-18 SEQ. ID. NO. 11
$NH_2-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$

(11)

hPTH 14-18 SEQ. I.D. No. 12
$NH_2-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$

(12)

– 3 –

hPTH 1-10 (SEQ. ID. NO. 1)
$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-Leu^7-Met^8-His^9-Asn^{10}-OH$ (1)

hPTH 1-9 SEQ. ID. No. 2
$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-Leu^7-Met^8-His^9-OH$ (2)

hPTH 1-8 SEQ. ID. No. 3
$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-Leu^7-Met^8-OH$ (3)

hPTH 1-7 SEQ. I.D. No. 4
$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-Leu^7-OH$ (4)

hPTH 1-6 SEQ I.D. No. 5
$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-OH$ (5)

hPTH 1-5 SEQ. ID. No. 6
$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-OH$ (6)

hPTH 9-18 SEQ. I.D. NO. 7
$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$ (7)

hPTH 10-18 SEQ. ID. No. 8
$NH_2-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$ (8)

hPTH 11-18 SEQ ID. No. 9
$NH_2-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$ (9)

hPTH 12-18 SEQ. I.D. No. 10
$NH_2-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$ (10)

hPTH 13-18 SEQ. ID. No. 11
$NH_2-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$ (11)

hPTH 14-18 SEQ. I.D. No. 12
$NH_2-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$ (12)

- 4 -

D hPTH 9-17 SEQ. ID. No. 13

$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-OH$ (13)

D hPTH 9-16 SEQ I.D. No 14

$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-OH$ (14)

D hPTH 9-15 SEQ. I.D. No. 15

$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-OH$ (15)

D hPTH 9-14 SEQ. I.D. No. 16

$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-OH$ (16)

D hPTH 9-13 SEQ. I.D. No. 17

$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-OH$ (17)

D hPTH 24-37 SEQ. I.D. No. 18

$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-$
$Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (18)

D hPTH 25-37 SEQ. I.D. No. 19

$NH_2-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-$
$Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (19)

D hPTH 26-37 SEQ. I.D. No. 20

$NH_2-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-$
$Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (20)

D hPTH 27-37 SEQ. I. D. No. 21

$NH_2-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-$
$Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (21)

D hPTH 28-37 SEQ. I. D. No. 22

$NH_2-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (22)

D hPTH 29-37 SEQ. I. D. No. 23

$NH_2-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (23)

Art.34

- 5 -

1) hPTH 30-37  SEQ. I.D. NO.24
NH$_2$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH                    (24)

1) hPTH 31-37  SEQ. I.D. NO.25
NH$_2$-Val$^{31}$-His$^{32}$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH                    (25)

1) hPTH 32-37  SEQ. ID. NO.26
NH$_2$-His$^{32}$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH                    (26)

1) hPTH 33-37  SEQ. I.D. NO.27
NH$_2$-Asn$^{33}$-Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH                    (27)

1) hPTH 24-36  SEQ. I.D. NO.28
NH$_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-
Phe$^{34}$-Val$^{35}$-Ala$^{36}$-OH                    (28)

1) hPTH 24-35  SEQ. I.D. NO.29
NH$_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-
Phe$^{34}$-Val$^{35}$-OH                    (29)

1) hPTH 24-34  SEQ. I.P. NO.30
NH$_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-
Phe$^{34}$-OH                    (30)

1) hPTH 24-33  SEQ. I.D. NO.31
NH$_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-OH                    (31)

1) hPTH 24-32  SEQ. I.D. NO.32
NH$_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-OH                    (32)

1) hPTH 24-31  SEQ. I.D. NO.33
NH$_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-OH                    (33)

1) hPTH 24-29  SEQ. I.D NO.34
NH$_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-OH                    (34)

1) hPTH 24-28  SEQ. I.D. NO.35
NH$_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-OH                    (35)

Page 50
Exhibit D

- 6 -

The indicated sequences represent essential features of the secondary structure in their primary structure, as can be demonstrated by supporting NMR data. One precondition to this end was a determination of the PTH(1-37) secondary structure in physiological solution.

The above-mentioned regions of conspicuous structure have good immunogenic activity. Antibodies are formed, binding to the first amino acids of the N-terminus. Deficiency of only two amino acids gives rise to a substantial loss in affinity. Because these amino acids are indispensable for the biological activity to arise, it is possible by using the peptides of the invention to obtain antibodies recognizing only hPTH and fragments thereof which are biologically active.

Furthermore, antibodies can be produced which detect the mid-region 9-15, as well as antibodies giving C-terminal binding in the region of the amino acids 30-37. According to the invention, it is therefore possible to produce antibodies against hPTH(1-37) regions which, according to theoretical calculations, do not exhibit immunogenic activity within the entire molecule. In addition, these regions are separated from each other by such a far distance that no steric hindrance is present which would prevent simultaneous binding of two antibodies.

In preferred embodiments, the peptides may be modified at the N-terminal end, in the side-chain and/or at the C-terminal end, namely, taking the form of acetylation, amidation, phosphorylation and/or glycosylation products.

*Cd,34*

- 7 -

Eventually, the peptides of the invention may also be bound to carrier proteins such as hemocyanin, thyroglobulin, bovine serum albumin, ovalbumin, or mouse serum albumin etc.. Binding to the carrier proteins is preferably effected using carbodiimide or formaldehyde.

The peptides of the invention may be used in the preparation of a diagnostic agent. The diagnostic agent of the invention can be obtained using the per se known immunization of animals with at least one of the peptides according to the invention. Following immunization, an immunoglobulin fraction can be isolated from the immunized animals, which contains antibody fractions having an antibody titer against at least one of the peptides of the invention. The invention is also directed to the antibodies thus obtained. In addition to the complete antibodies consisting of $F_{ab}$ and $F_c$, fragments thereof such as $F_{ab}$ or fragments of the antibodies being idiotypes of peptide epitopes may also be used in an alternative embodiment.

The peptides according to the invention are suitable for preparing an agent for the diagnosis of biologically active hPTH(1-37).

Referring to the following examples, the invention will be described in more detail.

Art, 34

- 8 -

Example 1

Solid-Phase Synthesis of Peptides

The method of the invention for synthesizing the peptides is based on the peptide synthesis using a solid support. Each of the C-terminal amino acids is bound to the support material in the presence of dicyclohexylcarbodiimide and dimethylaminopyridine. Wang resin or similar resins are used as support material for the syntheses.

The following derivatives of L-amino acids are used in the synthesis of the sequence, starting from the peptidyl resin as specified: a) hPTH(1-10): Fmoc-Asn(Trt)-Wang resin, Fmoc-His(Trt)-OH, Fmoc-Met-OH, Fmoc-Leu-OH, Fmoc-Gln(Trt)-OH, Fmoc-Ile-OH, Fmoc-Glu(OtBu)-OH, Fmoc-Ser(tBu)-OH, Fmoc-Val-OH, Boc-Ser(tBu)-OH; b) hPTH(9-18): Fmoc-Met-Wang resin, Fmoc-Ser(tBu)-OH, Fmoc-Asn(Trt)-OH, Fmoc-Leu-OH, Fmoc-His(Trt)-OH, Fmoc-Lys(Boc)-OH, Fmoc-Gly-OH, Fmoc-Leu-OH, Fmoc-Asn(Trt)-OH, Boc-His(Trt)-OH; c) hPTH(24-37): Fmoc-Leu-Wang resin, Fmoc-Ala-OH, Fmoc-Val-OH, Fmoc-Phe-OH, Fmoc-Asn(Trt)-OH, Fmoc-His(Trt)-OH, Fmoc-Val-OH, Fmoc-Asp(OtBu)-OH, Fmoc-Gln(Trt)-OH, Fmoc-Leu-OH, Fmoc-Lys(Boc)-OH, Fmoc-Lys(Boc)-OH, Fmoc-Arg(Pmc)-OH, Fmoc-Leu-OH.

The synthesis may be carried out by in situ activation using 2-(1H-benzotriazol-1-yl)-1,1,3,3-tetramethyluronium tetrafluoroborate (TBTU) or derivatives thereof, or benzotriazol-1-yloxy-tris(dimethylamino)phosphonium hexafluorophosphate (BOP) or derivatives thereof in the presence of diisopropylethylamine or N-methylmorpholine and 1-hydroxybenzotriazole, using a four- to tenfold excess of Fmoc-L-amino acid during the coupling reactions in N,N-dimethylformamide, N,N-dimethylacetamide or N-methylpyrrolidone. Removal of the Fmoc groups is effected using 20% piperidine

Page 53
Exhibit D

Ch/34

- 9 -

or 2% piperidine and 2% 1,8-diazabicyclo[5.4.0]undec-7-ene (DBU) in N,N-dimethylformamide, N,N-dimethylacetamide or N-methylpyrrolidone. Following synthesis, the resins are washed with 2-propanol and dichloromethane and dried to constant weight in a high vacuum.

Removal from the support and deprotection are carried out by reacting the peptidyl resin with trifluoroacetic acid containing 5% scavenger, water, ethanediol, phenol or thioanisole for 30-90 minutes at room temperature, filtrating, washing with trifluoroacetic acid, and subsequently precipitating with tert-butyl methyl ether. The precipitate is lyophilized from aqueous solution.

Example 2

Purification and Analysis

The raw products are purified by chromatography on a C18 reversed phase column (10 μm, buffer A: 0.01 N HCl in water; buffer B: 20% isopropanol, 30% methanol, 50% water, 0.01 N HCl; gradient: 10-80% within 60 minutes; detection at 230 nm).

The purity of the products is determined using mass spectrometry and C18 reversed phase chromatography.

Example 3

Coupling to Carrier Protein

Used as carrier proteins are hemocyanin, thyroglobulin, bovine serum albumin, ovalbumin, or mouse serum albumin. Coupling is performed according to the carbodiimide method by way of the carboxyl groups of the peptides. The peptide is

Page 54
Exhibit D

App.3

- 10 -

activated in aqueous solution by reaction with 1-ethyl-3-(3-dimethylaminopropyl)carbodiimide hydrochloride for 5 minutes.
Coupling is effected by adding the activated peptide to an
aqueous solution of the carrier. The molar ratio is 1 peptide
on 50 amino acids of the carrier protein. The reaction takes
4 hours.

Page 11 is missing

CLAIMS

1.          The peptides from hPTH(1-37) having the sequence

hPTH 1-10
$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-Leu^7-Met^8-His^9-Asn^{10}-OH$          (1)

hPTH 1-9
$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-Leu^7-Met^8-His^9-OH$          (2)

hPTH 1-8
$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-Leu^7-Met^8-OH$          (3)

hPTH 1-7
$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-Leu^7-OH$          (4)

hPTH 1-6
$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-OH$          (5)

hPTH 1-5
$NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-OH$          (6)

hPTH 9-18
$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$          (7)

hPTH 10-18
$NH_2-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$          (8)

hPTH 11-18
$NH_2-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$          (9)

hPTH 12-18
$NH_2-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$          (10)

hPTH 13-18
$NH_2-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$          (11)

hPTH 14-18
$NH_2-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$          (12)

Page 57
Exhibit D

Exh. 1, Page 158

- 25 - 12   86

Aedi?

hPTH 9-17
$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-OH$ (13)

hPTH 9-16
$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-OH$ (14)

hPTH 9-15
$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-OH$ (15)

hPTH 9-14
$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-OH$ (16)

hPTH 9-13
$NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-OH$ (17)

hPTH 24-37
$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-$
$Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (18)

hPTH 25-37
$NH_2-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-$
$Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (19)

hPTH 26-37
$NH_2-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-$
$Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (20)

hPTH 27-37
$NH_2-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-$
$Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (21)

hPTH 28-37
$NH_2-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-$
$Leu^{37}-OH$ (22)

hPTH 29-37
$NH_2-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (23)

hPTH 30-37
$NH_2-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (24)

*Act 34*

-*AB 27*

hPTH 31-37

$NH_2-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (25)

hPTH 32-37

$NH_2-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (26)

hPTH 33-37

$NH_2-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (27)

hPTH 24-36

$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-$
$Phe^{34}-Val^{35}-Ala^{36}-OH$ (28)

hPTH 24-35

$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-$
$Phe^{34}-Val^{35}-OH$ (29)

hPTH 24-34

$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-$
$Phe^{34}-OH$ (30)

hPTH 24-33

$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-$
$Asn^{33}-OH$ (31)

hPTH 24-32

$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-OH$ (32)

hPTH 24-31

$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-OH$ (33)

hPTH 24-29

$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-OH$ (34)

hPTH 24-28

$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-OH$ (35)

Aeh34

2.     The peptides according to claim 1, which are
modified at the N-terminal end, in the side-chain and/or
at the C-terminal end, taking the form of acetylation,
amidation, phosphorylation and/or glycosylation products
and/or are bound to carrier proteins such as hemocyanin,
thyroglobulin, bovine serum albumin, ovalbumin, or mouse
serum albumin.

3.     A diagnostic agent which can be obtained using
the per se known immunization of animals with at least
one of the peptides according to claim 1, recovering
fractions containing immunoglobulins from the immunized
animals, and isolating fractions having an antibody titer
against at least one of the peptides according to claim
1, and which optionally contains additional adjuvants
and/or vehicles.

4.     Antibodies or fragments of antibodies, which can
be obtained by immunizing animals with at least one of
the peptides according to claim 1.

5.     Use of the peptides according to claim 1 for
producing an agent for the diagnosis of biologically
active hPTH(1-37).

add $D^2$

29 改

## Abstract

The present invention is directed to peptides from the sequence of hPTH(1-37), which contain α-helical amino acid sequence regions and/or non-structured amino acid sequence regions, said peptides being capable of inducing antibodies when injected into animals. Furthermore, the invention is directed to a diagnostic agent and antibodies obtainable by immunizing animals using the peptides according to the invention.

Faxabsender:   +49 2286 83749        PA DR.GODEMEYER        A4->A4   22/83/97   18:21   S.: 1

970208 us

## DECLARATION AND POWER OF ATTORNEY

Attorney's Docket No. 07826-0007

As a below named inventor, I hereby declare that:

My residence, post office address, and citizenship are as stated below next to my name. I believe I am an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled: "PEPTIDES FROM THE bFTH (J-37) SEQUENCE", the specification of which

☐ is attached hereto,

☒ was filed on September 22, 1995 as PCT International Application No. PCT/EP95/03757 and was amended (if applicable) on _____

I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above. I do not know and do not believe that the same was ever known or used by others in the United States of America before my or our invention thereof, or patented or described in any printed publication in any country before my or our invention thereof or more than one year prior to the date of this application. I further state that the invention was not in public use or on sale in the United States of America more than one year prior to the date of this application. I understand that I have a duty of candor and good faith toward the Patent and Trademark Office, and I acknowledge the duty to disclose information which is material to patentability as defined in Title 37, Code of Federal Regulations, §1.56.

I hereby claim foreign priority benefits under Title 35, United States Code §119(a)-(d) or §365(b) of any foreign application(s) for patent or inventor's certificate, or §365(a) of any PCT International application which designated at least one country other than the United States of America, listed below and have also identified below any foreign application for patent or inventor's certificate disclosing subject matter in common with the above-identified specification and having a filing date before that of the application on which priority is claimed:

| Country | App. No. | Date of Filing | | Priority Claimed Under 35 USC §119 |
|---------|----------|----------------|--|------------------------------------|
| German | 101 44 34 551.8 | September 28, 1994 | | Yes __x__   No ___ |

I hereby claim the benefit under Title 35, United States Code, § 120 of any prior United States application(s), or §365(c) of any PCT International application designating the United States of America, listed below and, insofar as the subject matter of each claim of the present application is not disclosed in the prior United States or PCT International application in the manner provided by the first paragraph of Title 35, United States Code §112, I acknowledge the duty to disclose information which is material to patentability as defined in Title 37, Code of Federal Regulations §1.56, which became available between the filing date of the prior application and the national or PCT International filing date of this application:

| Application No. | Filing Date | Status: patented, pending, abandoned |
|-----------------|-------------|--------------------------------------|

I further declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statement were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application or any patents issuing thereon.

I hereby authorize the U.S. attorneys named herein to accept and follow instructions from Dr. Thomas Godemeyer, as to any action to be taken in the Patent and Trademark Office regarding this application, without direct communication between the U.S. attorney and the undersigned. In the event of a change in the persons from whom instructions may be taken, the U.S. attorney named herein will be notified by the undersigned.

3/

POWER OF ATTORNEY: The following attorneys are hereby appointed to prosecute this application and transact all business in the Patent and Trademark Office connected therewith: Anthony R. Askew - 24,134; Roger T. Frost - 72,176; Jeffrey R. Young - 34,490; Robert H. Richards - 29,105; John R. Harris - 39,288; Stephen M. Schaetzel -31,418; Larry A. Roberts - 31,477; Thomas A. Hodge - 32,682; Charles I. Warner II - 32,500; Gregory T. Gronholm - 30,415; Dale Lischer - 18,498; Peter G. Pappas - 30,200; James Dean Johnston - 31,277; Tom M. Tkacyn - 23,417; M. Scott Petty - 39,645; David L. Newman - 34,371; Larry W. Snider - 34,025; Robert L. Bernhardt II - 36,229; Virginia L. Carron - 37,110; Leona G. Young - 39,765; Joel L. Coorsey 24,467; William A. Hartselle - 36,283; Hughes J. Hawkins III - 38,933; Mary Anthony Merchant - 36,771; Michael J. McLachlan - 40,086; William L. Warren - 36,214; Joao J. Parity - 38,645; P. Leslie Dessenger III - 39,100; James A. Williamson - 36,724; Brenda M. Dzaki - 40,139; James D. Withers - 46,376.

Correspondence to:   JONES & ASKEW, LLP        Direct telephone calls (404) 818-3700 to:
                     191 Peachtree Street, N.E., 37th Floor
                     Atlanta, GA 30303-1769                 Roger T. Frost

| Full name of first inventor: KNUT ADERMANN | |
|---|---|
| Citizenship: German | |
| Residence: Schleidenstr. 5, 30177 Hannover, Germany | DZX |
| Post Office Address: Schleidenstr. 5, 30177 Hannover, Germany | |
| Inventor's signature | Date: 12.03.1997 |

Additional inventors are being named on separately numbered sheets attached hereto.

Page 62
Exhibit D

Exh. 1, Page 163

Faxabsender:   +49 2286 83749       PA DR.GODEMEYER     A4->A4  22/03/97   18:21   S.:  2

Attorney Docket No.: 07826-0007
Title: PEPTIDES FROM THE hPTH (1-37) SEQUENCE
Page 2

| | | |
|---|---|---|
| Full name of second inventor:  DIETER HOCK | | |
| Citizenship:    Germany | | |
| Residence:     Weinbergstr. 14, 74924 Neckarbischofsheim, Germany | DEX | |
| Post Office Address: Weinbergstr. 14, 74924 Neckarbischofsheim, Germany | | |
| Inventor's signature | Date: | 19. 03. 97 |
| Full name of third inventor:  MARKUS MÄGERLEIN | | |
| Citizenship:    Germany | | |
| Residence:     Blumenstr. 5, 63785 Obernburg, Germany | DEX | |
| Post Office Address: Blumenstr. 5, 63785 Obernburg, Germany | | |
| Inventor's signature | Date: | 19.03. 97 |

Page 63
Exhibit D

E

⑲ BUNDESREPUBLIK DEUTSCHLAND

⑫ **Offenlegungsschrift**

⑩ **DE 44 34 551 A 1**

㉛ Int. Cl.⁶:
C 07 K 14/635



**DEUTSCHES PATENTAMT**

㉑ Aktenzeichen: P 44 34 551.8
㉒ Anmeldetag: 28. 9. 94
㊸ Offenlegungstag: 4. 4. 96

DE 44 34 551 A 1

⑺ Anmelder:
Forssmann, Wolf-Georg, Prof. Dr.Dr., 30175 Hannover, DE

⑺ Vertreter:
Godemeyer, T., Dr.rer.nat., Pat.-Anw., 51491 Overath

⑺ Erfinder:
Adermann, Knut, Dr., 30177 Hannover, DE; Forssmann, Wolf-Georg, Prof. Dr.Dr., 30175 Hannover, DE; Hock, Dieter, Dr., 74924 Neckarbischofsheim, DE; Mägerlein, Markus, 63785 Obernburg, DE

Prüfungsantrag gem. § 44 PatG ist gestellt

㉾ Peptide aus der Sequenz des hPTH (1-37)

㉘    Gegenstand der vorliegenden Erfindung sind Peptide aus der Sequenz des hPTH (1-37), enthaltend α-helicale Aminosäuresequenzbereiche und/oder nicht strukturierte Aminosäuresequenzbereiche, wobei die Peptide bei Injektion in Tiere Antikörper zu induzieren vermögen. Ein weiterer Gegenstand der Erfindung sind ein Diagnostikum und Antikörper erhältlich durch Immunisierung von Tieren mit den erfindungsgemäßen Peptiden.

DE 44 34 551 A 1

Page 64
Exhibit E

Beschreibung

Die vorliegende Erfindung betrifft Peptide aus der Sequenz des hPTH (1-37), ein Diagnostikum erhältlich durch Immunisierung von Tieren mit den Peptiden, Antikörper oder deren Fragmente erhältlich durch Immunisierung von Tieren mit den Peptiden sowie die Verwendung der Peptide zur Herstellung eines Mittels zur Diagnose von biologisch aktiven h-PTH.

Humanes Parathormon (hPTH), ein lineares Polypeptid aus 84 Aminosäuren, spielt eine wichtige Rolle in der Regulation des Calciumstoffwechsels. Der Metabolismus dieses Hormons führt zu einer großen Zahl C-terminaler Fragmente, deren biologische Funktion noch nicht geklärt ist. Als zirkulierendes N-terminales Fragment ist das hPTH 1-37 festgelegt (EP-A 0 349 545). Dieses Fragment besitzt die volle biologische Aktivität des Gesamthormons. Diese nimmt allerdings bei Verlust der ersten Aminosäure, Serin, deutlich ab und geht ohne die ersten beiden Aminosäuren, Serin und Valin, völlig verloren.

Für das intakte Hormon hPTH 1-84 und für N-terminales Fragment werden Serumkonzentrationen im Bereich von 10-12 mol/L gemessen. Zur Bestimmung solch niedriger Konzentrationen bedient man sich immunologischer Meßverfahren. Die validesten Ergebnisse liefern hierbei Meßverfahren nach dem Doppelantikörper oder Sandwich Prinzip (z. B. Two-site Radioimmunometric Assay, IRMA oder Sandwich Enzym Linked Immuno Sorbent Assay, Sandwich ELISA). Solche Assays sind für hPTH 1-84 kommerziell erhältlich. Zur Messung von hPTH 1-34 ist ein Assay nach dem Doppelantikörper-Prinzip nicht bekannt.

Hierfür sind zwei Antikörper notwendig. Diese müssen, um eine gegenseitige sterische Hinderung zu vermeiden, Epitope des Antigens erkennen, die in ausreichender Entfernung voneinander liegen. Bei Immunisierung mit dem intakten Antigen erhält man ein heterogenes Gemisch unterschiedlicher Antikörper, die für einen Sandwich-Assay erst aufwendig gereinigt werden müssen. Zwar war es bisher möglich aufgrund theoretischer Berechnungen nach B.A. Jameson & H. Wolf, The antigenic index: a novel algorithm for predicting antigenic determinants, CABIOS 4, p 181–186, 1988 am N-Terminus eine bevorzugte immunogen wirkende Sequenz im Bereich der Aminosäuren 7–14 festzustellen. Eine Immunisierung mit N-terminalen Fragmenten nach etablierten Methoden führt in erster Linie zu Antikörpern, die, wie für hPTH 1-34 beschrieben (J. Tampe, P. Brozio, H.E. Manneck, A. Mißbichler, E. Blind, K.B. Müller, H. Schmidt-Gayk und F.P. Armbruster; Characterisation of antibodies against human N-terminal parathyroid hormon by epitope mapping; J. Immunoassay 13 S. 1–13, 1992), in dem Bereich dieser Aminosäuren binden. Diese Antikörper können aber nicht zwischen biologisch aktiven und biologisch inaktiven PTH 1-84 oder Fragmenten davon, denen die ersten beiden Aminosäuren Serin und Valin fehlen, unterscheiden.

Das der Erfindung zugrunde liegende technische Problem besteht darin, Peptide anzugeben, mit deren Hilfe die oben genannten Nachteile der Diagnose von biologisch aktivem h-PTH beseitigt werden können.

Das angesprochene technische Problem wird überraschenderweise gelöst durch Peptide aus der Sequenz des hPTH (1-37) enthaltend α-helicale Aminosäuresequenzbereiche und/oder nicht strukturierte Aminosäuresequenzbereiche, wobei die Peptide bei Injektion in Tiere Antikörper zu induzieren vermögen. Dabei enthalten die Peptide vorzugsweise die N-terminale α-Helix im Bereich der Aminosäuren 5–9, einen unstrukturierten Abschnitt der Aminosäuren 10–16 und/oder eine C-terminale α-Helix im Bereich der Aminosäuresequenz 17–34 des hPTH (1-37). Vorzugsweise werden die folgenden erfindungsgemäßen Peptide zur Immunisierung verwendet:

hPTH 1-10 NH$_2$—Ser$^1$—Val$^2$—Ser$^3$—Glu$^4$—Ile$^5$—Gln$^6$—Leu$^7$—Met$^8$—His$^9$—Asn$^{10}$—OH    (1)
hPTH 1-9 NH$_2$—Ser$^1$—Val$^2$—Ser$^3$—Glu$^4$—Ile$^5$—Gln$^6$—Leu$^7$—Met$^8$—His$^9$—OH    (2)
hPTH 1-8 NH$_2$—Ser$^1$—Val$^2$—Ser$^3$—Glu$^4$—Ile$^5$—Gln$^6$—Leu$^7$—Met$^8$—OH    (3)
hPTH 1-7 NH$_2$—Ser$^1$—Val$^2$—Ser$^3$—Glu$^4$—Ile$^5$—Gln$^6$—Leu$^7$—OH    (4)
hPTH 1-6 NH$_2$—Ser$^1$—Val$^2$—Ser$^3$—Glu$^4$—Ile$^5$—Gln$^6$—OH    (5)
hPTH 1-5 NH$_2$—Ser$^1$—Val$^2$—Ser$^3$—Glu$^4$—Ile$^5$—OH    (6)
hPTH 9-18 NH$_2$—His$^9$—Asn$^{10}$—Leu$^{11}$—Gly$^{12}$—Lys$^{13}$—His$^{14}$—Leu$^{15}$—Asn$^{16}$—Ser$^{17}$—Met$^{18}$—OH    (7)
hPTH 10-18 NH$_2$—Asn$^{10}$—Leu$^{11}$—Gly$^{12}$—Lys$^{13}$—His$^{14}$—Leu$^{15}$—Asn$^{16}$—Ser$^{17}$—Met$^{18}$—OH    (8)
hPTH 11-18 NH$_2$—Leu$^{11}$—Gly$^{12}$—Lys$^{13}$—His$^{14}$—Leu$^{15}$—Asn$^{16}$—Ser$^{17}$—Met$^{18}$—OH    (9)
hPTH 12-18 NH$_2$—Gly$^{12}$—Lys$^{13}$—His$^{14}$—Leu$^{15}$—Asn$^{16}$—Ser$^{17}$—Met$^{18}$—OH    (10)
hPTH 13-18 NH$_2$—Lys$^{13}$—His$^{14}$—Leu$^{15}$—Asn$^{16}$—Ser$^{17}$—Met$^{18}$—OH    (11)
hPTH 14-18 NH$_2$—His$^{14}$—Leu$^{15}$—Asn$^{16}$—Ser$^{17}$—Met$^{18}$—OH    (12)
hPTH 9-17 NH$_2$—His$^9$—Asn$^{10}$—Leu$^{11}$—Gly$^{12}$—Lys$^{13}$—His$^{14}$—Leu$^{15}$—Asn$^{16}$—Ser$^{17}$—OH    (13)
hPTH 9-16 NH$_2$—His$^9$—Asn$^{10}$—Leu$^{11}$—Gly$^{12}$—Lys$^{13}$—His$^{14}$—Leu$^{15}$—Asn$^{16}$—OH    (14)
hPTH 9-15 NH$_2$—His$^9$—Asn$^{10}$—Leu$^{11}$—Gly$^{12}$—Lys$^{13}$—His$^{14}$—Leu$^{15}$—OH    (15)
hPTH 9-14 NH$_2$—His$^9$—Asn$^{10}$—Leu$^{11}$—Gly$^{12}$—Lys$^{13}$—His$^{14}$—OH    (16)
hPTH 9-13 NH$_2$—His$^9$—Asn$^{10}$—Leu$^{11}$—Gly$^{12}$—Lys$^{13}$—OH    (17)
hPTH                                                                                                                        24-37
NH$_2$—Leu$^{24}$—Arg$^{25}$—Lys$^{26}$—Lys$^{27}$—Leu$^{28}$—Gln$^{29}$—Asp$^{30}$—Val$^{31}$—His$^{32}$—Asn$^{33}$—Phe$^{34}$—Val$^{35}$—Ala$^{36}$—Leu$^{37}$—OH    (18)
hPTH                                                                                                                        25-37
NH$_2$—Arg$^{25}$—Lys$^{26}$—Lys$^{27}$—Leu$^{28}$—Gln$^{29}$—Asp$^{30}$—Val$^{31}$—His$^{32}$—Asn$^{33}$—Phe$^{34}$—Val$^{35}$—Ala$^{36}$—Leu$^{37}$—OH
(19)
hPTH                                                                                                                        26-37
NH$_2$—Lys$^{26}$—Lys$^{27}$—Leu$^{28}$—Gln$^{29}$—Asp$^{30}$—Val$^{31}$—His$^{32}$—Asn$^{33}$—Phe$^{34}$—Val$^{35}$—Ala$^{36}$—Leu$^{37}$—OH    (20)
hPTH                                                                                                                        27-37
NH$_2$—Lys$^{27}$—Leu$^{28}$—Gln$^{29}$—Asp$^{30}$—Val$^{31}$—His$^{32}$—Asn$^{33}$—Phe$^{34}$—Val$^{35}$—Ala$^{36}$—Leu$^{37}$—OH    (21)

2

Exh. 1, Page 166

DE   44 34 551   A1

hPTH 28-37 $NH_2$—Leu$^{28}$—Gln$^{29}$—Asp$^{30}$—Val$^{31}$—His$^{32}$—Asn$^{33}$—Phe$^{34}$—Val$^{35}$—Ala$^{36}$—Leu$^{37}$—OH   (22)

hPTH 29-37 $NH_2$—Gln$^{29}$—Asp$^{30}$—Val$^{31}$—His$^{32}$—Asn$^{33}$—Phe$^{34}$—Val$^{35}$—Ala$^{36}$—Leu$^{37}$—OH   (23)

hPTH 30-37 $NH_2$—Asp$^{30}$—Val$^{31}$—His$^{32}$—Asn$^{33}$—Phe$^{34}$—Val$^{35}$—Ala$^{36}$—Leu$^{37}$—OH   (24)

hPTH 31-37 $NH_2$—Val$^{31}$—His$^{32}$—Asn$^{33}$—Phe$^{34}$—Val$^{35}$—Ala$^{36}$—Leu$^{37}$—OH   (25)

hPTH 32-37 $NH_2$—His$^{32}$—Asn$^{33}$—Phe$^{34}$—Val$^{35}$—Ala$^{36}$—Leu$^{37}$—OH   (26)

hPTH 33-37 $NH_2$—Asn$^{33}$—Phe$^{34}$—Val$^{35}$—Ala$^{36}$—Leu$^{37}$—OH   (27)

hPTH 24-36
$NH_2$—Leu$^{24}$—Arg$^{25}$—Lys$^{26}$—Lys$^{27}$—Leu$^{28}$—Gln$^{29}$—Asp$^{30}$—Val$^{31}$—His$^{32}$—Asn$^{33}$—Phe$^{34}$—Val$^{35}$—Ala$^{36}$—OH·
(28)

hPTH 24-35
$NH_2$—Leu$^{24}$—Arg$^{25}$—Lys$^{26}$—Lys$^{27}$—Leu$^{28}$—Gln$^{29}$—Asp$^{30}$—Val$^{31}$—His$^{32}$—Asn$^{33}$—Phe$^{34}$—Val$^{35}$—OH   (29)

hPTH 24-34
$NH_2$—Leu$^{24}$—Arg$^{25}$—Lys$^{26}$—Lys$^{27}$—Leu$^{28}$—Gln$^{29}$—Asp$^{30}$—Val$^{31}$—His$^{32}$—Asn$^{33}$—Phe$^{34}$—OH   (30)

hPTH 24-33 $NH_2$—Leu$^{24}$—Arg$^{25}$—Lys$^{26}$—Lys$^{27}$—Leu$^{28}$—Gln$^{29}$—Asp$^{30}$—Val$^{31}$—His$^{32}$—Asn$^{33}$OH   (31)

hPTH 24-32 $NH_2$—Leu$^{24}$—Arg$^{25}$—Lys$^{26}$—Lys$^{27}$—Leu$^{28}$—Gln$^{29}$—Asp$^{30}$—Val$^{31}$—His$^{32}$—OH   (32)

hPTH 24-31 $NH_2$—Leu$^{24}$—Arg$^{25}$—Lys$^{26}$—Lys$^{27}$—Leu$^{28}$—Gln$^{29}$—Asp$^{30}$—Val$^{31}$—OH   (33)

hPTH 24-30 $NH_2$—Leu$^{24}$—Arg$^{25}$—Lys$^{26}$—Lys$^{27}$—Leu$^{28}$—Gln$^{29}$—Asp$^{30}$—OH·   (34)

hPTH 24-29 $NH_2$—Leu$^{24}$—Arg$^{25}$—Lys$^{26}$—Lys$^{27}$—Leu$^{28}$—Gln$^{29}$—OH   (35)

hPTH 24-28 $NH_2$—Leu$^{24}$—Arg$^{25}$—Lys$^{26}$—Lys$^{27}$—Leu$^{28}$—OH   (36)

Die genannten Sequenzen repräsentieren in ihrer Primärstruktur wesentliche Merkmale der Sekundärstruktur, wie sich durch NMR-Daten unterstützend belegen läßt. Voraussetzung dazu war eine Festlegung der Sekundärstruktur für PTH 1-37 in physiologischer Lösung.

Die genannten strukturell auffälligen Bereiche wirken gut immunogen. Es werden Antikörper gebildet, die an den ersten Aminosäuren des N-Terminus binden. Bereits das Fehlen von zwei Aminosäuren führt zu einem erheblichen Affinitätsverlust. Da diese Aminosäuren zur Ausübung der biologischen Wirkung unerläßlich sind, ist es mit dem erfindungsgemäßen Peptid möglich Antikörper zu erhalten, die nur hPTH und Fragmente davon erkennen, die biologisch aktiv sind.

Weiterhin sind Antikörper herstellbar, die den midregionalen Bereich 9–15 detektieren, und Antikörper die L-terminal der Aminosäuren 30–37 binden. Erfindungsgemäß können also Antikörper gegen Bereiche des hPTH 1-37 produziert werden, die aufgrund theoretischer Berechnungen im Gesamtmolekül nicht immunogen wirken. Diese Bereiche liegen zudem soweit auseinander, daß keine sterische Hinderung vorliegt, die ein gleichzeitiges Binden zweier Antikörper verhindern würde.

Die Peptide können in bevorzugten Ausführungsformen am N-terminalen Ende, in der Seitenkette und/oder am C-terminalen Ende modifiziert sein, und zwar in Form von Acetylierungs-, Amidierungs-, Phosphorylierungs- und/oder Glycosylierungsprodukten.

Schließlich können erfindungsgemäße Peptide auch an Carrierproteine wie Hämocyanin, Thyroglobulin, Rinderserumalbumin, Ovalbumin oder Mausserumalbumin etc. gebunden sein. Die Bindung an die Carrierproteine erfolgt vorzugsweise durch Carbodiimid oder Formaldehyd.

Die erfindungsgemäßen Peptide können verwendet werden, um ein Diagnostikum herzustellen. Das erfindungsgemäße Diagnostikum ist dabei erhältlich durch an sich bekannte Immunisierung von Tieren mit mindestens einem der erfindungsgemäßen Peptide. Nach der Immunisierung kann aus den immunisierten Tieren eine Immunoglobulin-Fraktion isoliert werden, die Antikörper-Fraktionen enthält, welche einen Antikörper-Titer gegen mindestens eines der erfindungsgemäßen Peptide aufweisen. Die so erhaltenen Antikörpern sind ebenfalls Gegenstand der vorliegenden Erfindung. In einer alternativen Ausführungsform können neben den vollständigen Antikörpern bestehend aus $F_{ab}$ und $F_c$ auch deren Fragmente wie $F_{ab}$ oder Fragmente der Antikörper verwendet werden, welche die Idiotypen zu den Epitopen der Peptide sind.

Die Peptide gemäß der Erfindung sind zur Herstellung eines Mittels zur Diagnose von biologisch aktiven h-PTH (1-37) geeignet.

Die Erfindung wird anhand der folgenden Beispiele näher beschrieben:

Beispiel 1

Festphasensynthese der Peptide

Das erfindungsgemäße Verfahren zur Synthese der Peptide beruht auf der Peptidsynthese am festen Träger. Die C-terminale Aminosäure wird jeweils in Gegenwart von Dicyclohexylcarbodiimid und Dimethylaminopyridin an das Trägermaterial gebunden. Als Trägermaterial für die Synthesen wird Wang-Harz oder entsprechende Harze eingesetzt.

Folgende L-Aminosäure-Derivate werden für die Synthese der Sequenz, ausgehend vom aufgeführten Peptidyl-Harz, verwendet: a) hPTH 1-10: Fmoc—Asn(Trt)-Wang-Harz, Fmoc—His(Trt)—OH, Fmoc—Met—OH, Fmoc—Leu—OH, Fmoc—Gln(Trt)—OH, Fmoc—Ile—OH, Fmoc—Glu(OtBu)—OH, Fmoc—Ser(tBu)-OH, Fmoc—Val—OH, Bocer(tBu)-OH. b) hPTH 9-18: Fmoc—Met-Wang-Harz, Fmoc—Ser(tBu)—OH, Fmoc—Asn(Trt)—OH, Fmoc—Leu—OH, Fmoc—His(Trt)—OH, Fmoc—Lys(Boc)—OH, Fmoc—Gly—OH, Fmoc—Leu—OH, Fmoc—Asn(Trt)—OH, Boc-His(Trt)—OH. c) hPTH 24-37: Fmoc—Leu-Wang-Harz, Fmoc—Ala—OH, Fmoc—Val—OH, Fmoc—Phe—OH, Fmoc—Asn(Trt)—OH, Fmoc—His(Trt)—OH, Fmoc—Val—OH, Fmoc—Asp(OtBu)-OH, Fmoc—Gln(Trt)—OH, Fmoc—Leu—OH, Fmoc—Lys(Boc)—OH, Fmoc—Lys(Boc)—OH, Fmoc—Arg(Pmc)—OH, Fmoc—Leu—OH.

3

Die Synthese kann durch in situ-Aktivierung mit 2-(1H-Benzotriazol-1-yl)-1,1,3,3,-tetramethyluroniumtetra-fluoroborat (TBTU) oder dessen Derivaten oder mit Benzotriazol-1-yl-oxytris-(dimethylamino)-phosphonium-hexafluorophosphat (BOP) oder dessen Derivaten in Gegenwart von Diisopropylethylamin oder N-Methylmorpholin und 1-Hydroxybenzotriazol durchgeführt werden, wobei während der Kupplungen in N,N-Dimethylformamid, N,N-Dimethylacetamid oder N-Methylpyrrolidon ein vier- bis zehnfacher Überschuß der Fmoc—L-A-minosäure verwendet wird. Die Abspaltungen der Fmoc-Gruppen werden mit 20% Piperidin oder 2% Piperidin und 2% 1,8-Diazbicyclo[5,4,0]undec-7-en (DBU) in N,N-Dimethylformamid, N,N-Dimethylacetamid oder N-Methylpyrrolidon durchgeführt. Nach der Synthese werden die Harze mit 2-Propanol und Dichlormethan gewaschen und im Hochvakuum bis zur Gewichtskonstanz getrocknet.

Zur Abspaltung vom Träger und Entblockierung wird das Peptidyl-Harz 30—90 Minuten bei Raumtemperatur mit Trifluoressigsäure, die 5% Scavenger, Wasser, Ethandiol, Phenol oder Thioanisol, enthält, umgesetzt, filtriert, mit Trifluoressigsäure gewaschen und anschließend mit tert-Butylmethylether ausgefällt. Der Niederschlag wird aus wäßriger Lösung lyophilisiert.

## Beispiel 2

### Reinigung und Analyse

Die Reinigung der Rohprodukte erfolgt chromatographisch über eine C18-Reverse-Phase-Säule (10 µm, Puffer A: 0,01 N HCl in Wasser; Puffer B: 20% Isopropanol, 30% Methanol, 50% Wasser, 0,01 N HCl; Gradient: 10—80% in 60 Minuten; Detektion 230 nm).

Reinheit der Produkte werden durch Massenspektrometrie und C18-Reverse-Phase-Chromatographie bestimmt.

## Beispiel 3

### Kopplung an Carrierprotein

Als Carrierprotein werden Hämocyanin, Thyroglobulin, Rinderserumalbumin, Ovalbumin oder Mausserumalbumin verwendet. Die Kopplung erfolgt nach der Carbodiimid Methode über Carboxylgruppen des Peptides. Das Peptid wird in wäßriger Lösung durch 5 minütige Umsetzung mit 1-Ethyl-3-(3-dimethylaminopropyl) carbodiimid Hydrochlorid aktiviert. Die Kopplung erfolgt durch Zugabe des aktivierten Peptides zu einer wäßrigen Lösung des Carriers. Das molare Verhältnis beträgt 1 Peptid auf 50 Aminosäuren des Carrierproteins. Die Umsetzung dauert 4 Stunden.

Die Reaktion wird durch Zugabe von Natriumacetat in einer Endkonzentration von 100 mM gestoppt. Man läßt eine Stunde inkubieren.

Die Abtrennung des Protein-Peptid Konjugates vom Peptid erfolgt durch wiederholte Dialyse gegen 100 mM Phosphatpuffer pH 7,2.

## Beispiel 4

### Synthese der Multiple Antigenic Pepides (MAP)

Die dreifache Lysin-Verzweigung wird erreicht, indem an C-terminales Alanin, gebunden an Wang-Harz, in drei Kupplungszyklen jeweils Fmoc—L-Lysin(Fmoc)—OH gebunden wird. Durch Abspaltung mit Piperidin werden danach acht freie Aminofunktionen erhalten, an denen die Sequenzen des humanen Parathormons nach obiger Beschreibung synthetisiert werden.

## Beispiel 5

### Immunisierung

Für die Erstimmunisierung werden pro kg Körpergewicht des zu immunisierenden Tieres 125 µg des Carrier-Peptid Konjugates bzw. MAP in 250 ml Wasser gelöst und mit 250 µl komplettem Freund'schen Adjuvans emulgiert. Die Emulsion wird über den Rücken verteilt in 10 Portionen s.c. appliziert.

Das Boostern erfolgt nach 2—4 Wochen analog. Hierbei wird lediglich das komplette Freund'sche Adjuvans durch inkomplettes Freund'sches Adjuvans ersetzt.

### Patentansprüche

1. Peptide aus der Sequenz des hPTH (1-37) enthaltend α-helicale Aminosäuresequenzbereiche und/oder nicht strukturierte Aminosäuresequenzbereiche, wobei die Peptide bei Injektion in Tiere Antikörper zu induzieren vermögen.

2. Peptide nach Anspruch 1 aus hPTH (1-37) mit der Sequenz

hPTH 1-10 $NH_2$—$Ser^1$—$Val^2$—$Ser^3$—$Glu^4$—$Ile^5$—$Gln^6$—$Leu^7$—$Met^8$—$His^9$—$Asn^{10}$—OH   (1)
hPTH 1-9 $NH_2$—$Ser^1$—$Val^2$—$Ser^3$—$Glu^4$—$Ile^5$—$Gln^6$—$Leu^7$—$Met^5$—$His^9$—OH   (2)
hPTH 1-8 $NH_2$—$Ser^1$—$Val^2$—$Ser^3$—$Glu^4$—$Ile^5$—$Gln^6$—$Leu^7$—$Met^5$—OH   (3)

4

hPTH 1-7 $NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-Leu^7-OH$   (4)
hPTH 1-6 $NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-Gln^6-OH$   (5)
hPTH 1-5 $NH_2-Ser^1-Val^2-Ser^3-Glu^4-Ile^5-OH$   (6)
hPTH 9-18 $NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$   (7)
hPTH 10-18 $NH_2-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$   (8)
hPTH 11-18 $NH_2-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$   (9)
hPTH 12-18 $NH_2-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$   (10)
hPTH 13-18 $NH_2-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$   (11)
hPTH 14-18 $NH_2-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-Met^{18}-OH$   (12)
hPTH 9-17 $NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-Ser^{17}-OH$   (13)
hPTH 9-16 $NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-Asn^{16}-OH$   (14)
hPTH 9-15 $NH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-Leu^{15}-OH$   (15)
hPTH 9-14 $NH_2-His^9-Asn-{}^{10}-Leu^{11}-Gly^{12}-Lys^{13}-His^{14}-OH$   (16)
hPTH 9-13 $TH_2-His^9-Asn^{10}-Leu^{11}-Gly^{12}-Lys^{13}-OH$   (17)

hPTH 24-37
$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$   (18)

hPTH 25-37
$NH_2-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$   (19)

hPTH 26-37
$NH_2-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$   (20)

hPTH 27-37
$NH_2-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$   (21)

hPTH 28-37
$NH_2-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$   (22)
hPTH 29-37 $NH_2-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$   (23)
hPTH 30-37 $NH_2-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$   (24)
hPTH 31-37 $NH_2-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$   (25)
hPTH 32-37 $NH_2-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$   (26)
hPTH 33-37 $NH_2-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$   (27)

hPTH 24-36
$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-OH$   (28)

hPTH 24-35
$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-OH$   (29)

hPTH 24-34
$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-OH$   (30)

hPTH 24-33
$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-OH$   (31)
hPTH 24-32 $NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-OH$   (32)
hPTH 24-31 $NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-OH$   (33)
hPTH 24-30 $NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-OH$   (34)
hPTH 24-29 $NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-OH$   (35)
hPTH 24-28 $NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-OH$   (36).

3. Peptide nach Anspruch 1 und/oder 2, die am N-terminalen Ende, in der Seitenkette und/oder am C-terminalen Ende modifiziert sind in Form von Acetylierungs-, Amidierungs-Phosphorylierungs- und/oder Glycosylierungsprodukten, und/oder gebunden sind an Carrierproteine wie Hämocyanin, Thyroglobulin, Rinderserumalbumin, Ovalbumin oder Mausserumalbumin.

4. Diagnostikum, erhältlich durch an sich bekannte Immunisierung von Tieren mit mindestens einem der Peptide gemäß mindestens einem der Ansprüche 1 bis 3, Gewinnung von Immunoglobulinen enthaltenden Fraktionen aus den immunisierten Tieren und Isolierung von Fraktionen, die einen Antikörper-Titer gegen mindestens eines der Peptide gemäß mindestens einem der Ansprüche 1 bis 3 aufweisen und das gegebenenfalls weiter Hilfs- und/oder Trägerstoffe enthält.

5. Antikörper oder Fragmente von Antikörpern erhältlich durch Immunisierung von Tieren mit mindestens einem Peptid nach mindestens einem der Ansprüche 1 bis 3.

6. Verwendung der Peptide gemäß mindestens einem der Ansprüche 1 bis 3 zur Herstellung eines Mittels zur Diagnose von biologisch aktiven h-PTH (1-37).

5

Exh. 1, Page 169

– Leerseite –

**F**

**PCT**

WELTORGANISATION FÜR GEISTIGES EIGENTUM
Internationales Büro

INTERNATIONALE ANMELDUNG VERÖFFENTLICHT NACH DEM VERTRAG ÜBER DIE
INTERNATIONALE ZUSAMMENARBEIT AUF DEM GEBIET DES PATENTWESENS (PCT)

| (51) Internationale Patentklassifikation 6 : C07K 14/635, 16/24, G01N 33/78 | A1 | (11) Internationale Veröffentlichungsnummer: WO 96/10041 |
| --- | --- | --- |
| | | (43) Internationales Veröffentlichungsdatum: 4. April 1996 (04.04.96) |

| (21) Internationales Aktenzeichen: PCT/EP95/03757 | (81) Bestimmungsstaaten: JP, US, europäisches Patent (AT, BE, CH, DE, DK, ES, FR, GB, GR, IE, IT, LU, MC, NL, PT, SE). |
| --- | --- |
| (22) Internationales Anmeldedatum: 22. September 1995 (22.09.95) | |
| (30) Prioritätsdaten: P 44 34 551.8   28. September 1994 (28.09.94)   DE | **Veröffentlicht** *Mit internationalem Recherchenbericht.* *Vor Ablauf der für Änderungen der Ansprüche zugelassenen Frist. Veröffentlichung wird wiederholt falls Änderungen eintreffen.* |
| (71)(72) Anmelder und Erfinder: FORSSMANN, Wolf-Georg [DE/DE]; Niedersächsisches Institut für Peptidforschung, Feodor-Lynen-Strasse 31, D-30625 Hannover (DE). | |
| (72) Erfinder; und (75) Erfinder/Anmelder *(nur für US)*: ADERMANN, Knut [DE/DE]; Schleidenstrasse 5, D-30177 Hannover (DE). HOCK, Dieter [DE/DE]; Weinbergstrasse 14, D-74924 Neckarsbischofsheim (DE). MÄGERLEIN, Markus [DE/DE]; Blumenstrasse 5, D-63785 Obernburg (DE). | |
| (74) Anwalt: GODEMEYER, Thomas; Hauptstrasse 58, D-51491 Overath (DE). | |

(54) Title: PEPTIDES FROM THE hPTH SEQUENCE (1-37)

(54) Bezeichnung: PEPTIDE AUS DER SEQUENZ DES hPTH (1-37)

(57) Abstract

The invention concerns peptides from the human parathyroid hormone (hPTH) sequence (1-37) and containing α-helical amino acid sequence regions and/or non-structured amino acid sequence regions. The said peptides are capable of inducing antibodies when injected into animals. The invention also concerns a diagnostic agent and antibodies obtainable by vaccination of animals with the peptides in question.

(57) Zusammenfassung

Gegenstand der vorliegenden Erfindung sind Peptide aus der Sequenz des hPTH (1-37) enthaltend α-helicale Aminosäuresequenzbereiche und/oder nicht strukturierte Aminosäuresequenzbereiche, wobei die Peptide bei Injektion in Tiere Antikörper zu induzieren vermögen. Ein weiterer Gegenstand der Erfindung sind ein Diagnostikum und Antikörper erhältlich durch Immunisierung von Tieren mit den erfindungsgemäßen Peptiden.

*LEDIGLICH ZUR INFORMATION*

Codes zur Identifizierung von PCT-Vertragsstaaten auf den Kopfbögen der Schriften, die internationale Anmeldungen gemäss dem PCT veröffentlichen.

| | | | | | |
|---|---|---|---|---|---|
| AT | Österreich | GA | Gabon | MR | Mauretanien |
| AU | Australien | GB | Vereinigtes Königreich | MW | Malawi |
| BB | Barbados | GE | Georgien | NE | Niger |
| BE | Belgien | GN | Guinea | NL | Niederlande |
| BF | Burkina Faso | GR | Griechenland | NO | Norwegen |
| BG | Bulgarien | HU | Ungarn | NZ | Neuseeland |
| BJ | Benin | IE | Irland | PL | Polen |
| BR | Brasilien | IT | Italien | PT | Portugal |
| BY | Belarus | JP | Japan | RO | Rumänien |
| CA | Kanada | KE | Kenya | RU | Russische Föderation |
| CF | Zentrale Afrikanische Republik | KG | Kirgisistan | SD | Sudan |
| CG | Kongo | KP | Demokratische Volksrepublik Korea | SE | Schweden |
| CH | Schweiz | KR | Republik Korea | SI | Slowenien |
| CI | Côte d'Ivoire | KZ | Kasachstan | SK | Slowakei |
| CM | Kamerun | LI | Liechtenstein | SN | Senegal |
| CN | China | LK | Sri Lanka | TD | Tschad |
| CS | Tschechoslowakei | LU | Luxemburg | TG | Togo |
| CZ | Tschechische Republik | LV | Lettland | TJ | Tadschikistan |
| DE | Deutschland | MC | Monaco | TT | Trinidad und Tobago |
| DK | Dänemark | MD | Republik Moldau | UA | Ukraine |
| ES | Spanien | MG | Madagaskar | US | Vereinigte Staaten von Amerika |
| FI | Finnland | ML | Mali | UZ | Usbekistan |
| FR | Frankreich | MN | Mongolei | VN | Vietnam |

Page 71
Exhibit F

Exh. 1, Page 172

Peptide aus der Sequenz des hPTH (1-37)


Die vorliegende Erfindung betrifft Peptide aus der Sequenz
des hPTH (1-37), ein Diagnostikum erhältlich durch Immuni-
sierung von Tieren mit den Peptiden, Antikörper oder deren
Fragmente erhältlich durch Immunisierung von Tieren mit den
Peptiden sowie die Verwendung der Peptide zur Herstellung
eines Mittels zur Diagnose von biologisch aktivem h-PTH.


Humanes Parathormon (hPTH), ein lineares Polypeptid aus 84
Aminosäuren, spielt eine wichtige Rolle in der Regulation
des Calciumstoffwechsels. Der Metabolismus dieses Hormons
führt zu einer großen Zahl C-terminaler Fragmente, deren
biologische Funktion noch nicht geklärt ist. Als zirkulie-
rendes N-terminales Fragment ist das hPTH 1-37 festgelegt
(EP-A 0 349 545). Dieses Fragment besitzt die volle biologi-
sche Aktivität des Gesamthormons. Diese nimmt allerdings bei
Verlust der ersten Aminosäure, Serin, deutlich ab und geht
ohne die ersten beiden Aminosäuren, Serin und Valin, völlig
verloren.


Für das intakte Hormon hPTH 1-84 und für das N-terminale
Fragment werden Serumkonzentrationen im Bereich von
$10^{-12}$ mol/l gemessen. Zur Bestimmung solch niedriger Konzen-
trationen bedient man sich immunologischer Meßverfahren. Die
validesten Ergebnisse liefern hierbei Meßverfahren nach dem
Doppelantikörper oder Sandwich Prinzip (z.B. Two-site Radio-
immunometric Assay, IRMA oder Sandwich Enzym Linked Immuno
Sorbent Assay, Sandwich ELISA). Solche Assays sind für hPTH
1-84 kommerziell erhältlich. Zur Messung von hPTH 1-34 ist
ein Assay nach dem Doppelantikörper-Prinzip nicht bekannt.


Hierfür sind zwei Antikörper notwendig. Diese müssen, um ei-
ne gegenseitige sterische Hinderung zu vermeiden, Epitope
des Antigens erkennen, die in ausreichender Entfernung zu-
einander liegen. Bei Immunisierung mit dem intakten Antigen
erhält man ein heterogenes Gemisch unterschiedlicher Anti-

- 2 -

körper, die für einen Sandwich-Assay erst aufwendig gerei-
nigt werden müssen. Zwar war es bisher möglich aufgrund
theoretischer Berechnungen nach B.A. Jameson & H. Wolf, The
antigenic index: a novel algorithm for predicting antigenic
determinants, CABIOS 4, p 181-186, 1988 am N-Terminus eine
bevorzugte immunogen wirkende Sequenz im Bereich der Amino-
säuren 7 - 14 festzustellen. Eine Immunisierung mit N-termi-
nalen Fragmenten nach etablierten Methoden führt in erster
Linie zu Antikörpern, die, wie für hPTH 1-34 beschrieben (J.
Tampe, P. Brozio, H.E. Manneck, A. Mißbichler, E. Blind,
K.B. Müller, H. Schmidt-Gayk und F.P. Armbruster; Charac-
terisation of antibodies against human N-terminal parathy-
roid hormon by epitope mapping; J. Immunoassay 13 S. 1-13,
1992), in dem Bereich dieser Aminosäuren binden. Diese An-
tikörper können aber nicht zwischen biologisch aktiven und
biologisch inaktiven PTH 1-84 oder Fragmenten davon, denen
die ersten beiden Aminosäuren Serin und Valin fehlen, unter-
scheiden.

Das der Erfindung zugrunde liegende technische Problem be-
steht darin, Peptide anzugeben, mit deren Hilfe die oben
genannten Nachteile der Diagnose von biologisch aktivem
h-PTH beseitigt werden können.

Das angesprochene technische Problem wird überraschender-
weise gelöst durch Peptide aus der Sequenz des hPTH (1-37)
enthaltend α-helicale Aminosäuresequenzbereiche und/oder
nicht strukturierte Aminosäuresequenzbereiche, wobei die
Peptide bei Injektion in Tiere Antikörper zu induzieren ver-
mögen. Dabei enthalten die Peptide vorzugsweise die N-termi-
nale α-Helix im Bereich der Aminosäuren 5-9, einen unstruk-
turierten Abschnitt der Aminosäuren 10-16 und/oder eine C-
terminale α-Helix im Bereich der Aminosäuresequenz 17-34 des
hPTH (1-37). Vorzugsweise werden die folgenden erfindungs-
gemäßen Peptide zur Immunisierung verwendet:

- 3 -

hPTH 1-10
$NH_2$-$Ser^1$-$Val^2$-$Ser^3$-$Glu^4$-$Ile^5$-$Gln^6$-$Leu^7$-$Met^8$-$His^9$-$Asn^{10}$-OH        (1)

5   hPTH 1-9
$NH_2$-$Ser^1$-$Val^2$-$Ser^3$-$Glu^4$-$Ile^5$-$Gln^6$-$Leu^7$-$Met^8$-$His^9$-OH        (2)

hPTH 1-8
$NH_2$-$Ser^1$-$Val^2$-$Ser^3$-$Glu^4$-$Ile^5$-$Gln^6$-$Leu^7$-$Met^8$-OH        (3)

10   hPTH 1-7
$NH_2$-$Ser^1$-$Val^2$-$Ser^3$-$Glu^4$-$Ile^5$-$Gln^6$-$Leu^7$-OH        (4)

hPTH 1-6
$NH_2$-$Ser^1$-$Val^2$-$Ser^3$-$Glu^4$-$Ile^5$-$Gln^6$-OH        (5)

15   hPTH 1-5
$NH_2$-$Ser^1$-$Val^2$-$Ser^3$-$Glu^4$-$Ile^5$-OH        (6)

hPTH 9-18
20   $NH_2$-$His^9$-$Asn^{10}$-$Leu^{11}$-$Gly^{12}$-$Lys^{13}$-$His^{14}$-$Leu^{15}$-$Asn^{16}$-$Ser^{17}$-$Met^{18}$-OH   (7)

hPTH 10-18
$NH_2$-$Asn^{10}$-$Leu^{11}$-$Gly^{12}$-$Lys^{13}$-$His^{14}$-$Leu^{15}$-$Asn^{16}$-$Ser^{17}$-$Met^{18}$-OH        (8)

25   hPTH 11-18
$NH_2$-$Leu^{11}$-$Gly^{12}$-$Lys^{13}$-$His^{14}$-$Leu^{15}$-$Asn^{16}$-$Ser^{17}$-$Met^{18}$-OH        (9)

hPTH 12-18
$NH_2$-$Gly^{12}$-$Lys^{13}$-$His^{14}$-$Leu^{15}$-$Asn^{16}$-$Ser^{17}$-$Met^{18}$-OH        (10)

30   hPTH 13-18
$NH_2$-$Lys^{13}$-$His^{14}$-$Leu^{15}$-$Asn^{16}$-$Ser^{17}$-$Met^{18}$-OH        (11)

hPTH 14-18
35   $NH_2$-$His^{14}$-$Leu^{15}$-$Asn^{16}$-$Ser^{17}$-$Met^{18}$-OH        (12)

- 4 -

hPTH 9-17
$NH_2$-$His^9$-$Asn^{10}$-$Leu^{11}$-$Gly^{12}$-$Lys^{13}$-$His^{14}$-$Leu^{15}$-$Asn^{16}$-$Ser^{17}$-OH     (13)

hPTH 9-16
$NH_2$-$His^9$-$Asn^{10}$-$Leu^{11}$-$Gly^{12}$-$Lys^{13}$-$His^{14}$-$Leu^{15}$-$Asn^{16}$-OH     (14)

hPTH 9-15
$NH_2$-$His^9$-$Asn^{10}$-$Leu^{11}$-$Gly^{12}$-$Lys^{13}$-$His^{14}$-$Leu^{15}$-OH     (15)

hPTH 9-14
$NH_2$-$His^9$-$Asn^{10}$-$Leu^{11}$-$Gly^{12}$-$Lys^{13}$-$His^{14}$-OH     (16)

hPTH 9-13
$NH_2$-$His^9$-$Asn^{10}$-$Leu^{11}$-$Gly^{12}$-$Lys^{13}$-OH     (17)

hPTH 24-37
$NH_2$-$Leu^{24}$-$Arg^{25}$-$Lys^{26}$-$Lys^{27}$-$Leu^{28}$-$Gln^{29}$-$Asp^{30}$-$Val^{31}$-$His^{32}$-$Asn^{33}$-$Phe^{34}$-$Val^{35}$-$Ala^{36}$-$Leu^{37}$-OH     (18)

hPTH 25-37
$NH_2$-$Arg^{25}$-$Lys^{26}$-$Lys^{27}$-$Leu^{28}$-$Gln^{29}$-$Asp^{30}$-$Val^{31}$-$His^{32}$-$Asn^{33}$-$Phe^{34}$-$Val^{35}$-$Ala^{36}$-$Leu^{37}$-OH     (19)

hPTH 26-37
$NH_2$-$Lys^{26}$-$Lys^{27}$-$Leu^{28}$-$Gln^{29}$-$Asp^{30}$-$Val^{31}$-$His^{32}$-$Asn^{33}$-$Phe^{34}$-$Val^{35}$-$Ala^{36}$-$Leu^{37}$-OH     (20)

hPTH 27-37
$NH_2$-$Lys^{27}$-$Leu^{28}$-$Gln^{29}$-$Asp^{30}$-$Val^{31}$-$His^{32}$-$Asn^{33}$-$Phe^{34}$-$Val^{35}$-$Ala^{36}$-$Leu^{37}$-OH     (21)

hPTH 28-37
$NH_2$-$Leu^{28}$-$Gln^{29}$-$Asp^{30}$-$Val^{31}$-$His^{32}$-$Asn^{33}$-$Phe^{34}$-$Val^{35}$-$Ala^{36}$-$Leu^{37}$-OH   (22)

hPTH 29-37
$NH_2$-$Gln^{29}$-$Asp^{30}$-$Val^{31}$-$His^{32}$-$Asn^{33}$-$Phe^{34}$-$Val^{35}$-$Ala^{36}$-$Leu^{37}$-OH     (23)

- 5 -

hPTH 30-37
$NH_2-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (24)

hPTH 31-37
$NH_2-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (25)

hPTH 32-37
$NH_2-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (26)

hPTH 33-37
$NH_2-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$ (27)

hPTH 24-36
$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-OH$ (28)

hPTH 24-35
$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-OH$ (29)

hPTH 24-34
$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-OH$ (30)

hPTH 24-33
$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-OH$ (31)

hPTH 24-32
$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-OH$ (32)

hPTH 24-31
$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-OH$ (33)

hPTH 24-30
$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-OH$ (34)

Exh. 1, Page 177

- 6 -

hPTH 24-29

$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-OH$ (35)

hPTH 24-28

$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-OH$ (36)

Die genannten Sequenzen repräsentieren in ihrer Primärstruktur wesentliche Merkmale der Sekundärstruktur, wie sich durch NMR-Daten unterstützend belegen läßt. Voraussetzung dazu war eine Festlegung der Sekundärstruktur für PTH 1-37 in physiologischer Lösung.

Die genannten strukturell auffälligen Bereiche wirken gut immunogen. Es werden Antikörper gebildet, die an den ersten Aminosäuren des N-Terminus binden. Bereits das Fehlen von zwei Aminosäuren führt zu einem erheblichen Affinitätsverlust. Da diese Aminosäuren zur Ausübung der biologischen Wirkung unerläßlich sind, ist es mit dem erfindungsgemäßen Peptid möglich Antikörper zu erhalten, die nur hPTH und Fragmente davon erkennen, die biologisch aktiv sind.

Weiterhin sind Antikörper herstellbar, die den midregionalen Bereich 9-15 detektieren, und Antikörper, die C-terminal im Bereich der Aminosäuren 30-37 binden. Erfindungsgemäß können also Antikörper gegen Bereiche des hPTH 1-37 produziert werden, die aufgrund theoretischer Berechnungen im Gesamtmolekül nicht immunogen wirken. Diese Bereiche liegen zudem soweit auseinander, daß keine sterische Hinderung vorliegt, die ein gleichzeitiges Binden zweier Antikörper verhindern würde.

Die Peptide können in bevorzugten Ausführungsformen am N-terminalen Ende, in der Seitenkette und/oder am C-terminalen Ende modifiziert sein, und zwar in Form von Acetylierungs-, Amidierungs-, Phosphorylierungs- und/oder Glycosylierungsprodukten.

- 7 -

Schließlich können erfindungsgemäße Peptide auch an Carrier-
proteine wie Hämocyanin, Thyroglobulin, Rinderserumalbumin,
Ovalalbumin oder Mausserumalbumin etc. gebunden sein. Die
Bindung an die Carrierproteine erfolgt vorzugsweise durch
5 Carbodiimid oder Formaldehyd.

Die erfindungsgemäßen Peptide können verwendet werden, um
ein Diagnostikum herzustellen. Das erfindungsgemäße Diagno-
stikum ist dabei erhältlich durch an sich bekannte Immuni-
10 sierung von Tieren mit mindestens einem der erfindungsgemäss-
sen Peptide. Nach der Immunisierung kann aus den immunisier-
ten Tieren eine Immunoglobulin-Fraktion isoliert werden, die
Antikörper-Fraktionen enthält, welche einen Antikörper-Titer
gegen mindestens eines der erfindungsgemäßen Peptide auf-
15 weisen. Die so erhaltenen Antikörpern sind ebenfalls Gegen-
stand der vorliegenden Erfindung. In einer alternativen Aus-
führungsform können neben den vollständigen Antikörpern be-
stehend aus $F_{ab}$ und $F_c$ auch deren Fragmente wie $F_{ab}$ oder
Fragmente der Antikörper verwendet werden, welche die Idio-
20 typen zu den Epitopen der Peptide sind.

Die Peptide gemäß der Erfindung sind zur Herstellung eines
Mittels zur Diagnose von biologisch aktiven h-PTH (1-37)
geeignet.
25

Die Erfindung wird anhand der folgenden Beispiele näher be-
schrieben:

Beispiel 1
30

Festphasensynthese der Peptide:

Das erfindungsgemäße Verfahren zur Synthese der Peptide be-
ruht auf der Peptidsynthese am festen Träger. Die C-termina-
35 le Aminosäure wird jeweils in Gegenwart von Dicyclohexylcar-
bodiimid und Dimethylaminopyridin an das Trägermaterial ge-
bunden. Als Trägermaterial für die Synthesen werden Wang-

Page 78
Exhibit F

- 8 -

Harz oder entsprechende Harze eingesetzt.

Folgende L-Aminosäure-Derivate werden für die Synthese der
Sequenz, ausgehend vom aufgeführten Peptidyl-Harz, verwen-
det: a) hPTH 1-10: Fmoc-Asn(Trt)-Wang-Harz, Fmoc-His(Trt)-
OH, Fmoc-Met-OH, Fmoc-Leu-OH, Fmoc-Gln(Trt)-OH, Fmoc-Ile-OH,
Fmoc-Glu(OtBu)-OH, Fmoc-Ser(tBu)-OH, Fmoc-Val-OH, Boc-
Ser(tBu)-OH. b) hPTH 9-18: Fmoc-Met-Wang-Harz, Fmoc-
Ser(tBu)-OH, Fmoc-Asn(Trt)-OH, Fmoc-Leu-OH, Fmoc-His(Trt)-
OH, Fmoc-Lys(Boc)-OH, Fmoc-Gly-OH, Fmoc-Leu-OH, Fmoc-
Asn(Trt)-OH, Boc-His(Trt)-OH. c) hPTH 24-37: Fmoc-Leu-Wang-
Harz, Fmoc-Ala-OH, Fmoc-Val-OH, Fmoc-Phe-OH, Fmoc-Asn(Trt)-
OH, Fmoc-His(Trt)-OH, Fmoc-Val-OH, Fmoc-Asp(OtBu)-OH, Fmoc-
Gln(Trt)-OH, Fmoc-Leu-OH, Fmoc-Lys(Boc)-OH, Fmoc-Lys(Boc)-
OH, Fmoc-Arg(Pmc)-OH, Fmoc-Leu-OH.

Die Synthese kann durch in situ-Aktivierung mit 2-(1H-Benzo-
triazol-1-yl)-1,1,3,3,-tetramethyluroniumtetrafluoroborat
(TBTU) oder dessen Derivaten oder mit Benzotriazol-1-yl-oxy-
tris-(dimethylamino)-phosphoniumhexafluorophosphat (BOP)
oder dessen Derivaten in Gegenwart von Diisopropylethylamin
oder N-Methylmorpholin und 1-Hydroxybenzotriazol durchge-
führt werden, wobei während der Kupplungen in N,N-Dimethyl-
formamid, N,N-Dimethylacetamid oder N-Methylpyrrolidon ein
vier- bis zehnfacher Überschuß der Fmoc-L-Aminosäure verwen-
det wird. Die Abspaltungen der Fmoc-Gruppen werden mit 20%
Piperidin oder 2% Piperidin und 2% 1,8-Diazbicyclo[5,4,0]un-
dec-7-en (DBU) in N,N-Dimethylformamid, N,N-Dimethylacetamid
oder N-Methylpyrrolidon durchgeführt. Nach der Synthese wer-
den die Harze mit 2-Propanol und Dichlormethan gewaschen und
im Hochvakuum bis zur Gewichtskonstanz getrocknet.

Zur Abspaltung vom Träger und Entblockierung wird das Pepti-
dyl-Harz 30-90 Minuten bei Raumtemperatur mit Trifluoressig-
säure, die 5% Scavenger, Wasser, Ethandiol, Phenol oder
Thioanisol, enthält, umgesetzt, filtriert, mit Trifluores-
sigsäure gewaschen und anschließend mit tert-Butylmethylet-

- 9 -

her ausgefällt. Der Niederschlag wird aus wäßriger Lösung
lyophilisiert.

**Beispiel 2**

<u>Reinigung und Analyse</u>

Die Reinigung der Rohprodukte erfolgt chromatographisch über
eine C18-Reverse-Phase-Säule (10µm, Puffer A: 0,01 N HCl in
Wasser; Puffer B: 20% Isopropanol, 30 % Methanol, 50% Was-
ser, 0,01 N HCl; Gradient: 10-80% in 60 Minuten; Detektion
230 nm).

Die Reinheit der Produkte wird durch Massenspektrometrie und
C18-Reverse-Phase-Chromatographie bestimmt.

**Beispiel 3**

<u>Kopplung an Carrierprotein</u>

Als Carrierprotein werden Hämocyanin, Thyroglobulin, Rinder-
serumalbumin, Ovalbumin oder Mausserumalbumin verwendet. Die
Kopplung erfolgt nach der Carbodiimid-Methode über Carboxyl-
gruppen des Peptides. Das Peptid wird in wässriger Lösung
durch 5 minütige Umsetzung mit 1-Ethyl-3-(3-dimethylamino-
propyl) carbodiimid-Hydrochlorid aktiviert. Die Kopplung
erfolgt durch Zugabe des aktivierten Peptides zu einer wäss-
rigen Lösung des Carriers. Das molare Verhälnis beträgt 1
Peptid auf 50 Aminosäuren des Carrierproteins. Die Umsetzung
dauert 4 Stunden.
Die Reaktion wird durch Zugabe von Natriumacetat in einer
Endkonzentration von 100 mM gestoppt. Man läßt eine Stunde
inkubieren.

- 10 -

Die Abtrennung des Protein-Peptid Konjugates vom Peptid erfolgt durch wiederholte Dialyse gegen 100 mM Phosphatpuffer pH 7,2.

5

Beispiel 4

Synthese der Multiple Antigenic Peptides (MAP)

10 Die dreifache Lysin-Verzweigung wird erreicht, indem an C-terminales Alanin , gebunden an Wang-Harz, in drei Kupplungszyklen jeweils Fmoc-L-Lysin(Fmoc)-OH gebunden wird. Durch Abspaltung mit Piperidin werden danach acht freie Aminofunktionen erhalten, an denen die Sequenzen des humanen
15 Parathormons nach obiger Beschreibung synthetisiert werden.


Beispiel 5

20 Immunisierung

Für die Erstimmunisierung werden pro kg Körpergewicht des zu immunisierenden Tieres 125 µg des Carrier-Peptid Konjugates bzw. MAP in 250 ml Wasser gelöst und mit 250 µl kompletten
25 Freund'schen Adjuvans emulgiert. Die Emulsion wird über den Rücken verteilt in 10 Portionen s.c. appliziert.

Das Boostern erfolgt nach 2-4 Wochen analog. Hierbei wird lediglich das komplette Freund'sche Adjuvans durch inkom-
30 plettes Freund'sches Adjuvans ersetzt.

Page 81
Exhibit F

- 11 -

Patentansprüche

5   1. Peptide aus der Sequenz des hPTH (1-37) enthaltend α-he-
       licale Aminosäuresequenzbereiche und/oder nicht struktu-
       rierte Aminosäuresequenzbereiche, wobei die Peptide bei
       Injektion in Tiere Antikörper zu induzieren vermögen.

10  2. Peptide nach Anspruch 1 aus hPTH (1-37) mit der Sequenz

       hPTH 1-10
       $NH_2$-Ser$^1$-Val$^2$-Ser$^3$-Glu$^4$-Ile$^5$-Gln$^6$-Leu$^7$-Met$^8$-His$^9$-Asn$^{10}$-OH     (1)

15     hPTH 1-9
       $NH_2$-Ser$^1$-Val$^2$-Ser$^3$-Glu$^4$-Ile$^5$-Gln$^6$-Leu$^7$-Met$^8$-His$^9$-OH              (2)

       hPTH 1-8
       $NH_2$-Ser$^1$-Val$^2$-Ser$^3$-Glu$^4$-Ile$^5$-Gln$^6$-Leu$^7$-Met$^8$-OH                     (3)

20     hPTH 1-7
       $NH_2$-Ser$^1$-Val$^2$-Ser$^3$-Glu$^4$-Ile$^5$-Gln$^6$-Leu$^7$-OH                          (4)

       hPTH 1-6
25     $NH_2$-Ser$^1$-Val$^2$-Ser$^3$-Glu$^4$-Ile$^5$-Gln$^6$-OH                               (5)

       hPTH 1-5
       $NH_2$-Ser$^1$-Val$^2$-Ser$^3$-Glu$^4$-Ile$^5$-OH                                    (6)

30     hPTH 9-18
       $NH_2$-His$^9$-Asn$^{10}$-Leu$^{11}$-Gly$^{12}$-Lys$^{13}$-His$^{14}$-Leu$^{15}$-Asn$^{16}$-Ser$^{17}$-Met$^{18}$-
       OH                                                              (7)

35

Page 82
Exhibit F

Exh. 1, Page 183

- 12 -

hPTH 10-18

$NH_2$-Asn$^{10}$-Leu$^{11}$-Gly$^{12}$-Lys$^{13}$-His$^{14}$-Leu$^{15}$-Asn$^{16}$-Ser$^{17}$-Met$^{18}$-OH (8)


hPTH 11-18

5  $NH_2$-Leu$^{11}$-Gly$^{12}$-Lys$^{13}$-His$^{14}$-Leu$^{15}$-Asn$^{16}$-Ser$^{17}$-Met$^{18}$-OH       (9)


hPTH 12-18

$NH_2$-Gly$^{12}$-Lys$^{13}$-His$^{14}$-Leu$^{15}$-Asn$^{16}$-Ser$^{17}$-Met$^{18}$-OH       (10)


10  hPTH 13-18

$NH_2$-Lys$^{13}$-His$^{14}$-Leu$^{15}$-Asn$^{16}$-Ser$^{17}$-Met$^{18}$-OH       (11)


hPTH 14-18

$NH_2$-His$^{14}$-Leu$^{15}$-Asn$^{16}$-Ser$^{17}$-Met$^{18}$-OH       (12)

15

hPTH 9-17

$NH_2$-His$^9$-Asn$^{10}$-Leu$^{11}$-Gly$^{12}$-Lys$^{13}$-His$^{14}$-Leu$^{15}$-Asn$^{16}$-Ser$^{17}$-OH  (13)


20  hPTH 9-16

$NH_2$-His$^9$-Asn$^{10}$-Leu$^{11}$-Gly$^{12}$-Lys$^{13}$-His$^{14}$-Leu$^{15}$-Asn$^{16}$-OH       (14)


hPTH 9-15

$NH_2$-His$^9$-Asn$^{10}$-Leu$^{11}$-Gly$^{12}$-Lys$^{13}$-His$^{14}$-Leu$^{15}$-OH       (15)


25  hPTH 9-14

$NH_2$-His$^9$-Asn$^{10}$-Leu$^{11}$-Gly$^{12}$-Lys$^{13}$-His$^{14}$-OH       (16)


hPTH 9-13

$NH_2$-His$^9$-Asn$^{10}$-Leu$^{11}$-Gly$^{12}$-Lys$^{13}$-OH       (17)

30

hPTH 24-37

$NH_2$-Leu$^{24}$-Arg$^{25}$-Lys$^{26}$-Lys$^{27}$-Leu$^{28}$-Gln$^{29}$-Asp$^{30}$-Val$^{31}$-His$^{32}$-Asn$^{33}$-
Phe$^{34}$-Val$^{35}$-Ala$^{36}$-Leu$^{37}$-OH       (18)


35

- 13 -

hPTH 25-37
$NH_2-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$           (19)

5      hPTH 26-37
$NH_2-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$        (20)

10     hPTH 27-37
$NH_2-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$        (21)

hPTH 28-37
$NH_2-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$        (22)

15

hPTH 29-37
$NH_2-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$    (23)

20     hPTH 30-37
$NH_2-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$        (24)

hPTH 31-37
$NH_2-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$        (25)

25

hPTH 32-37
$NH_2-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$        (26)

30     hPTH 33-37
$NH_2-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-Leu^{37}-OH$        (27)

hPTH 24-36
$NH_2-Leu^{24}-Arg^{25}-Lys^{26}-Lys^{27}-Leu^{28}-Gln^{29}-Asp^{30}-Val^{31}-His^{32}-Asn^{33}-Phe^{34}-Val^{35}-Ala^{36}-OH$        (28)

35

Exh. 1, Page 185

- 14 -

hPTH 24-35

$NH_2$-$Leu^{24}$-$Arg^{25}$-$Lys^{26}$-$Lys^{27}$-$Leu^{28}$-$Gln^{29}$-$Asp^{30}$-$Val^{31}$-$His^{32}$-$Asn^{33}$-$Phe^{34}$-$Val^{35}$-OH

(29)

hPTH 24-34

$NH_2$-$Leu^{24}$-$Arg^{25}$-$Lys^{26}$-$Lys^{27}$-$Leu^{28}$-$Gln^{29}$-$Asp^{30}$-$Val^{31}$-$His^{32}$-$Asn^{33}$-$Phe^{34}$-OH

(30)

hPTH 24-33

$NH_2$-$Leu^{24}$-$Arg^{25}$-$Lys^{26}$-$Lys^{27}$-$Leu^{28}$-$Gln^{29}$-$Asp^{30}$-$Val^{31}$-$His^{32}$-$Asn^{33}$-OH

(31)

hPTH 24-32

$NH_2$-$Leu^{24}$-$Arg^{25}$-$Lys^{26}$-$Lys^{27}$-$Leu^{28}$-$Gln^{29}$-$Asp^{30}$-$Val^{31}$-$His^{32}$-OH (32)

hPTH 24-31

$NH_2$-$Leu^{24}$-$Arg^{25}$-$Lys^{26}$-$Lys^{27}$-$Leu^{28}$-$Gln^{29}$-$Asp^{30}$-$Val^{31}$-OH

(33)

hPTH 24-30

$NH_2$-$Leu^{24}$-$Arg^{25}$-$Lys^{26}$-$Lys^{27}$-$Leu^{28}$-$Gln^{29}$-$Asp^{30}$-OH

(34)

hPTH 24-29

$NH_2$-$Leu^{24}$-$Arg^{25}$-$Lys^{26}$-$Lys^{27}$-$Leu^{28}$-$Gln^{29}$-OH

(35)

hPTH 24-28

$NH_2$-$Leu^{24}$-$Arg^{25}$-$Lys^{26}$-$Lys^{27}$-$Leu^{28}$-OH

(36)

3. Peptide nach Anspruch 1 und/oder 2, die am N-terminalen Ende, in der Seitenkette und/oder am C-terminalen Ende modifiziert sind in Form von Acetylierungs-, Amidierungs-, Phosphorylierungs- und/oder Glycosylierungsprodukten, und/oder gebunden sind an Carrierproteine wie Hämocyanin, Thyroglobulin, Rinderserumalbumin, Ovalbumin oder Maus-serumalbumin.

- 15 -

4. Diagnostikum, erhältlich durch an sich bekannte Immuni-
   sierung von Tieren mit mindestens einem der Peptide gemäß
   mindestens einem der Ansprüche 1 bis 3, Gewinnung von
   Immunoglobulinen enthaltenden Fraktionen aus den immuni-
   sierten Tieren und Isolierung von Fraktionen, die einen
   Antikörper-Titer gegen mindestens eines der Peptide gemäß
   mindestens einem der Ansprüche 1 bis 3 aufweisen und das
   gegebenenfalls weiter Hilfs- und/oder Trägerstoffe ent-
   hält.

5. Antikörper oder Fragmente von Antikörpern erhältlich
   durch Immunisierung von Tieren mit mindestens einem Pep-
   tid nach mindestens einem der Ansprüche 1 bis 3.

6. Verwendung der Peptide gemäß mindestens einem der Ansprü-
   che 1 bis 3 zur Herstellung eines Mittels zur Diagnose
   von biologisch aktiven h-PTH (1-37).

**A. CLASSIFICATION OF SUBJECT MATTER**
IPC 6   C07K14/635   C07K16/24   G01N33/78

According to International Patent Classification (IPC) or to both national classification and IPC

**B. FIELDS SEARCHED**

Minimum documentation searched (classification system followed by classification symbols)
IPC 6   C07K   G01N

Documentation searched other than minimum documentation to the extent that such documents are included in the fields searched

Electronic data base consulted during the international search (name of data base and, where practical, search terms used)

**C. DOCUMENTS CONSIDERED TO BE RELEVANT**

| Category * | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
|---|---|---|
| X | WO,A,94 03201 (HILLIKER SANDRA R) 17 February 1994 see claims; example 1 --- | 1,2 |
| X | CHEMICAL ABSTRACTS, vol. 96, no. 21, 24 May 1982 Columbus, Ohio, US; abstract no. 174594, NAKAMURA, RYUICHI ET AL 'Action of fragments of human parathyroid hormone on blood pressure in rats' see abstract & ENDOCRINOL. JPN. (1981), 28(4), 547-9 CODEN: ECJPAE;ISSN: 0013-7219, 1981 --- -/-- | 1,2 |

| X | Further documents are listed in the continuation of box C. | | X | Patent family members are listed in annex. |
|---|---|---|---|---|

* Special categories of cited documents :

"A" document defining the general state of the art which is not considered to be of particular relevance

"E" earlier document but published on or after the international filing date

"L" document which may throw doubts on priority claim(s) or which is cited to establish the publication date of another citation or other special reason (as specified)

"O" document referring to an oral disclosure, use, exhibition or other means

"P" document published prior to the international filing date but later than the priority date claimed

"T" later document published after the international filing date or priority date and not in conflict with the application but cited to understand the principle or theory underlying the invention

"X" document of particular relevance; the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone

"Y" document of particular relevance; the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art.

"&" document member of the same patent family

| Date of the actual completion of the international search | Date of mailing of the international search report |
|---|---|
| 10 January 1996 | 26. 01. 96 |

| Name and mailing address of the ISA | Authorized officer |
|---|---|
| European Patent Office, P.B. 5818 Patentlaan 2 NL - 2280 HV Rijswijk Tel. (+31-70) 340-3040, Tx. 31 651 epo nl, Fax: (+31-70) 340-3016 | Fuhr, C |

Form PCT/ISA/210 (second sheet) (July 1992)

| C.(Continuation) DOCUMENTS CONSIDERED TO BE RELEVANT | | |
|---|---|---|
| Category* | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
| X | CHEMICAL ABSTRACTS, vol. 96, no. 5, 1 February 1982 Columbus, Ohio, US; abstract no. 29060, NUSSBAUM, SAMUEL R. ET AL 'Monoclonal antibodies directed against the biologically active region of parathyroid hormone' see abstract & MONOCLONAL ANTIBODIES ENDOCR. RES. (1981), 181-92. EDITOR(S): FELLOWS, ROBERT E.;EISENBARTH, GEORGE S. PUBLISHER: RAVEN, NEW YORK, N. Y. CODEN: 46PAAZ, 1981 | 1,2,4-6 |
| | --- | |
| X | JOURNAL OF IMMUNOASSAY, vol. 13, no. 1, 1992 NEW YORK, US, pages 1-13, J. TAMPE ET AL. 'Characterization of Antibodies against Human N-Terminal Parathyroid Hormone by Epitope Mapping' cited in the application see page 2, paragraph 2 see page 4, paragraph 1 see results and discussion of the pages 5-12; | 1-6 |
| | --- | |
| X | J. PHARMACOL. EXP. THER. (1981), 216(3), 567-71 CODEN: JPETAB;ISSN: 0022-3565, 1981 PANG, PETER K. T. ET AL 'Hypotensive action of synthetic fragments of parathyroid hormone' see page 567, right column, paragraph 2 see page 568, right column, paragraph 5; figure 1; table 1 | 1,2 |
| | --- | |
| X | CHEMICAL ABSTRACTS, vol. 95, no. 17, 26 October 1981 Columbus, Ohio, US; abstract no. 144316, HASHIMOTO, KEITARO ET AL 'Effects of parathyroid hormone and related polypeptides on the heart and coronary circulation of dogs' see abstract & J. CARDIOVASC. PHARMACOL. (1981), 3(4), 668-76 CODEN: JCPCDT;ISSN: 0160-2446, 1981 | 1,2 |
| | --- | |
| X | FR,A,2 550 204 (TOYO JOZO KK) 8 February 1985 see fragment 10 of page 25 and fragment 40 of page 50. | 1-3 |
| | -/-- | |

| C.(Continuation) DOCUMENTS CONSIDERED TO BE RELEVANT | | |
|---|---|---|
| Category * | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
| X | E. Wingender et al. 'Structure-Function Relationship in Parathyroid Hormone' in: Advances in Protein Design, International Workshop 1988, GBF Monographs, Vol. 12, ed. by H. Blöcker, J. Collins, R.D. Schmid, D. Schomburg; pub. by VCH, 1988, p. 167-176, see page 169, paragraph 3 --- | 1 |
| X | ADVANCES IN EXPERIMENTAL MEDICINE AND BIOLOGY, vol. 208, 1986 NEW YORK, US, pages 315-327, L.H. CAPORALE AND M. ROSENBLATT 'Parathyroid Hormone Antagonists effective in vivo' see figure 1 --- | 1 |
| X | WO,A,91 06564 (FORSSMANN WOLF GEORG) 16 May 1991 see page 5, paragraph 3; claims 1-5,14 --- | 1,3-6 |
| A | DE,A,33 47 548 (JUEPPNER HARALD WERNER DR MED;HESCH ROLF DIETER) 11 July 1985 see claims; examples ----- | 1,4-6 |

| Patent document cited in search report | Publication date | Patent family member(s) | | Publication date |
|---|---|---|---|---|
| WO-A-9403201 | 17-02-94 | CA-A- | 2141588 | 17-02-94 |
| | | EP-A- | 0656784 | 14-06-95 |
| FR-A-2550204 | 08-02-85 | JP-C- | 1684818 | 31-07-92 |
| | | JP-B- | 3052479 | 12-08-91 |
| | | JP-A- | 60034996 | 22-02-85 |
| | | JP-A- | 61024598 | 03-02-86 |
| | | DE-A- | 3428942 | 28-02-85 |
| | | US-A- | 4656250 | 07-04-87 |
| WO-A-9106564 | 16-05-91 | DE-A- | 3935738 | 08-05-91 |
| | | AT-T- | 121424 | 15-05-95 |
| | | AU-B- | 643725 | 25-11-93 |
| | | AU-B- | 6871291 | 31-05-91 |
| | | CA-A- | 2071538 | 28-04-91 |
| | | DE-D- | 59008949 | 24-05-95 |
| | | EP-A- | 0497915 | 12-08-92 |
| | | ES-T- | 2071837 | 01-07-95 |
| DE-A-3347548 | 11-07-85 | NONE | | |

**A. KLASSIFIZIERUNG DES ANMELDUNGSGEGENSTANDES**

IPK 6   C07K14/635   C07K16/24   G01N33/78

Nach der Internationalen Patentklassifikation (IPK) oder nach der nationalen Klassifikation und der IPK

**B. RECHERCHIERTE GEBIETE**

Recherchierter Mindestprüfstoff (Klassifikationssystem und Klassifikationssymbole )

IPK 6   C07K   G01N

Recherchierte aber nicht zum Mindestprüfstoff gehörende Veröffentlichungen, soweit diese unter die recherchierten Gebiete fallen

Während der internationalen Recherche konsultierte elektronische Datenbank (Name der Datenbank und evtl. verwendete Suchbegriffe)

**C. ALS WESENTLICH ANGESEHENE UNTERLAGEN**

| Kategorie* | Bezeichnung der Veröffentlichung, soweit erforderlich unter Angabe der in Betracht kommenden Teile | Betr. Anspruch Nr. |
|---|---|---|
| X | WO,A,94 03201 (HILLIKER SANDRA R) 17.Februar 1994 siehe Ansprüche; Beispiel 1 --- | 1,2 |
| X | CHEMICAL ABSTRACTS, vol. 96, no. 21, 24.Mai 1982 Columbus, Ohio, US; abstract no. 174594, NAKAMURA, RYUICHI ET AL 'Action of fragments of human parathyroid hormone on blood pressure in rats' siehe Zusammenfassung & ENDOCRINOL. JPN. (1981), 28(4), 547-9 CODEN: ECJPAE;ISSN: 0013-7219, 1981 --- -/-- | 1,2 |

| X | Weitere Veröffentlichungen sind der Fortsetzung von Feld C zu entnehmen | | X | Siehe Anhang Patentfamilie |

* Besondere Kategorien von angegebenen Veröffentlichungen :

'A' Veröffentlichung, die den allgemeinen Stand der Technik definiert, aber nicht als besonders bedeutsam anzusehen ist

'E' älteres Dokument, das jedoch erst am oder nach dem internationalen Anmeldedatum veröffentlicht worden ist

'L' Veröffentlichung, die geeignet ist, einen Prioritätsanspruch zweifelhaft erscheinen zu lassen, oder durch die das Veröffentlichungsdatum einer anderen im Recherchenbericht genannten Veröffentlichung belegt werden soll oder die aus einem anderen besonderen Grund angegeben ist (wie ausgeführt)

'O' Veröffentlichung, die sich auf eine mündliche Offenbarung, eine Benutzung, eine Ausstellung oder andere Maßnahmen bezieht

'P' Veröffentlichung, die vor dem internationalen Anmeldedatum, aber nach dem beanspruchten Prioritätsdatum veröffentlicht worden ist

'T' Spätere Veröffentlichung, die nach dem internationalen Anmeldedatum oder dem Prioritätsdatum veröffentlicht worden ist und mit der Anmeldung nicht kollidiert, sondern nur zum Verständnis der Erfindung zugrundeliegenden Prinzips oder der ihr zugrundeliegenden Theorie angegeben ist

'X' Veröffentlichung von besonderer Bedeutung; die beanspruchte Erfindung kann allein aufgrund dieser Veröffentlichung nicht als neu oder auf erfinderischer Tätigkeit beruhend betrachtet werden

'Y' Veröffentlichung von besonderer Bedeutung; die beanspruchte Erfindung kann nicht als auf erfinderischer Tätigkeit beruhend betrachtet werden, wenn die Veröffentlichung mit einer oder mehreren anderen Veröffentlichungen dieser Kategorie in Verbindung gebracht wird und diese Verbindung für einen Fachmann naheliegend ist

'&' Veröffentlichung, die Mitglied derselben Patentfamilie ist

| Datum des Abschlusses der internationalen Recherche | Absendedatum des internationalen Recherchenberichts |
|---|---|
| 10.Januar 1996 | 26.01.96 |

| Name und Postanschrift der Internationale Recherchenbehörde | Bevollmächtigter Bediensteter |
|---|---|
| Europäisches Patentamt, P.B. 5818 Patentlaan 2 NL - 2280 HV Rijswijk Tel. (+31-70) 340-2040, Tx. 31 651 epo nl, Fax (+31-70) 340-3016 | Fuhr, C |

Formblatt PCT/ISA/210 (Blatt 2) (Juli 1992)

| C.(Fortsetzung) ALS WESENTLICH ANGESEHENE UNTERLAGEN | | |
|---|---|---|
| Kategorie* | Bezeichnung der Veröffentlichung, soweit erforderlich unter Angabe der in Betracht kommenden Teile | Betr. Anspruch Nr. |
| X | CHEMICAL ABSTRACTS, vol. 96, no. 5, 1.Februar 1982 Columbus, Ohio, US; abstract no. 29060, NUSSBAUM, SAMUEL R. ET AL 'Monoclonal antibodies directed against the biologically active region of parathyroid hormone' siehe Zusammenfassung & MONOCLONAL ANTIBODIES ENDOCR. RES. (1981), 181-92. EDITOR(S): FELLOWS, ROBERT E.;EISENBARTH, GEORGE S. PUBLISHER: RAVEN, NEW YORK, N. Y. CODEN: 46PAAZ, 1981 --- | 1,2,4-6 |
| X | JOURNAL OF IMMUNOASSAY, Bd. 13, Nr. 1, 1992 NEW YORK, US, Seiten 1-13, J. TAMPE ET AL. 'Characterization of Antibodies against Human N-Terminal Parathyroid Hormone by Epitope Mapping' in der Anmeldung erwähnt siehe Seite 2, Absatz 2 siehe Seite 4, Absatz 1 siehe 'results' und 'discussion' auf den Seiten 5-12 --- | 1-6 |
| X | J. PHARMACOL. EXP. THER. (1981), 216(3), 567-71 CODEN: JPETAB;ISSN: 0022-3565, 1981 PANG, PETER K. T. ET AL 'Hypotensive action of synthetic fragments of parathyroid hormone' siehe Seite 567, rechte Spalte, Absatz 2 siehe Seite 568, rechte Spalte, Absatz 5; Abbildung 1; Tabelle 1 --- | 1,2 |
| X | CHEMICAL ABSTRACTS, vol. 95, no. 17, 26.Oktober 1981 Columbus, Ohio, US; abstract no. 144316, HASHIMOTO, KEITARO ET AL 'Effects of parathyroid hormone and related polypeptides on the heart and coronary circulation of dogs' siehe Zusammenfassung & J. CARDIOVASC. PHARMACOL. (1981), 3(4), 668-76 CODEN: JCPCDT;ISSN: 0160-2446, 1981 --- | 1,2 |
| X | FR,A,2 550 204 (TOYO JOZO KK) 8.Februar 1985 siehe Fragment 10 auf Seite 25 und Fragment 40 auf Seite 50 --- -/-- | 1-3 |

| C.(Fortsetzung) ALS WESENTLICH ANGESEHENE UNTERLAGEN | | |
|---|---|---|
| Kategorie* | Bezeichnung der Veröffentlichung, soweit erforderlich unter Angabe der in Betracht kommenden Teile | Betr. Anspruch Nr. |
| X | E. Wingender et al. 'Structure-Function Relationship in Parathyroid Hormone' in: Advances in Protein Design, International Workshop 1988, GBF Monographs, Vol. 12, ed. by H. Blöcker, J. Collins, R.D. Schmid, D. Schomburg; pub. by VCH, 1988, p. 167-176, siehe Seite 169, Absatz 3 --- | 1 |
| X | ADVANCES IN EXPERIMENTAL MEDICINE AND BIOLOGY, Bd. 208, 1986 NEW YORK, US, Seiten 315-327, L.H. CAPORALE AND M. ROSENBLATT 'Parathyroid Hormone Antagonists effective in vivo' siehe Abbildung 1 --- | 1 |
| X | WO,A,91 06564 (FORSSMANN WOLF GEORG) 16.Mai 1991 siehe Seite 5, Absatz 3; Ansprüche 1-5,14 --- | 1,3-6 |
| A | DE,A,33 47 548 (JUEPPNER HARALD WERNER DR MED;HESCH ROLF DIETER) 11.Juli 1985 siehe Ansprüche; Beispiele ----- | 1,4-6 |

| Im Recherchenbericht angeführtes Patentdokument | Datum der Veröffentlichung | Mitglied(er) der Patentfamilie | | Datum der Veröffentlichung |
|---|---|---|---|---|
| WO-A-9403201 | 17-02-94 | CA-A- | 2141588 | 17-02-94 |
|  |  | EP-A- | 0656784 | 14-06-95 |
| FR-A-2550204 | 08-02-85 | JP-C- | 1684818 | 31-07-92 |
|  |  | JP-B- | 3052479 | 12-08-91 |
|  |  | JP-A- | 60034996 | 22-02-85 |
|  |  | JP-A- | 61024598 | 03-02-86 |
|  |  | DE-A- | 3428942 | 28-02-85 |
|  |  | US-A- | 4656250 | 07-04-87 |
| WO-A-9106564 | 16-05-91 | DE-A- | 3935738 | 08-05-91 |
|  |  | AT-T- | 121424 | 15-05-95 |
|  |  | AU-B- | 643725 | 25-11-93 |
|  |  | AU-B- | 6871291 | 31-05-91 |
|  |  | CA-A- | 2071538 | 28-04-91 |
|  |  | DE-D- | 59008949 | 24-05-95 |
|  |  | EP-A- | 0497915 | 12-08-92 |
|  |  | ES-T- | 2071837 | 01-07-95 |
| DE-A-3347548 | 11-07-85 | KEINE | | |

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         SOUTHERN DISTRICT OF CALIFORNIA

10

11   NICHOLS INSTITUTE DIAGNOSTICS, INC., a          No.        02 CV 0046 B (LAB)
     California corporation,
12                                                   **[PROPOSED] ORDER GRANTING**
                 Plaintiff,                          **MOTION FOR SUMMARY**
13                                                   **JUDGMENT PURSUANT TO**
          v.                                         **35 U.S.C. § 102(f) FOR NONJOINDER**
14                                                   **OF CO-INVENTOR**
     SCANTIBODIES CLINICAL LABORATORY,
15   INC., a California corporation; and             **[Fed. R. Civ. P. 56]**
     SCANTIBODIES LABORATORY, INC., a
16   California corporation,

17               Defendants.

18
     SCANTIBODIES CLINICAL LABORATORY,
19   INC., a California corporation; and
     SCANTIBODIES LABORATORY, INC., a
20   California corporation,

21               Counter-Claimants

22        v.

23   NICHOLS INSTITUTE DIAGNOSTICS, INC., a
     California corporation,
24
                 Counter-Defendants.
25

26

27

28
     ─────────────────────────────────────────────────
                                              CASE NO. 02 CV 0046 B (LAB)
                                              [PROPOSED] ORDER GRANTING MOTION
                                              FOR SUMMARY JUDGMENT

Exh. 1, Page 196

1         This matter coming before the Court on Defendants' Motion for Summary Judgment

2    for invalidity pursuant to 35 U.S.C. § 102(f), the Court, having considered the papers and

3    arguments of counsel,

4         WHEREAS, Nichols Institute Diagnostics, Inc. ("Nichols") commenced this action

5    for alleged infringement of U.S. Patent No. 6,030,790 (the "'790 patent");

6         WHEREAS, the '790 patent lists only three co-inventors on its face:  Knut Adermann

7    ("Adermann"), Dieter Hock ("Hock"), and Markus Mägerlein ("Mägerlein").  The '790

8    patent is the "national stage" of an earlier international patent application filed under the

9    Patent Cooperation Treaty ("PCT").  As was appropriate under the PCT and the patent laws

10   of the United States, the '790 patent claimed the filing date of the earlier PCT Application;

11        WHEREAS, the '790 patent does not name the same inventors as the PCT

12   Application.  The PCT Application identified Adermann, Hock, Mägerlein *and Wolf-Georg*

13   *Forssmann* as inventors.  The '790, however, does not include Forssmann; and

14        WHEREAS, the omission of Forssmann from the U.S. application for the '790 patent

15   renders it invalid under 35 U.S.C. § 102(f),

16        NOW, THEREFORE, Defendants' Motion for summary Judgment is GRANTED.

17   Nichols must now seek judicial correction of inventorship on notice and hearing of all

18   concerned parties or have its patent declared invalid pursuant to section 102(f).

19

20

21                        _____

22                        Hon. Rudi M. Brewster
                          U.S. District Court Judge

23

24

25

26

27

28                                             1

EXHIBIT 2

# LYON & LYON LLP FILING RECORD

Attorney Docket No.:        274/128

Attorney:        James T. Carmichael
                 (202) 974-6013

**RECEIVED**

**JUL 0 1 2002**

**TECH CENTER 1600/2900**

Examiner:        Supervisory Primary Examiner
Art Unit:        1646

Patent No.:      6,030,790
Filed:           March 27, 1997

Title:           ANTIBODIES THAT BIND PEPTIDES FROM THE HPTH
                 SEQUENCES
Inventors:       Knut Adermann et al.

Fee Transmitted:   $130.00 check and any other fees due to be charged to our
                   Deposit Account No. 12-2475

## THE PTO STAMP HEREON ACKNOWLEDGES RECEIPT OF:

## DOCUMENTS BEING FILED:

1. Transmittal Letter
2. Check for $130.00
3. Appointment of Associate Attorney
4. Request for Expedited Handling of Certificate of Correction of Office Mistake
5. Certificate of Correction of Office Mistake
6. Form PTO 1050
7. Petition for Correction of Inventorship
8. Statement of Markus Magerlein
9. Statement of Dieter Hock
10. Statement of Assignee
11. Statement of Knut Adermann
12. Statement of Wolf-Georg Forssmann
13. Complaint for Patent Infringement
14. Answer and Counterclaim
15. Scantibodies' Notice of Motion and Motion for Summary Judgment for Nonjoinder of Co-Inventor
16. Scantibodies' Memorandum of Points and Authorities in Support of Motion for Summary Judgment
17. Declaration of M. Andrew Woodmansee in Support of Scantibodies' Motion for Summary Judgment
18. [Proposed] Order Granting Motion for Summary Judgment

DC-11475.1

**EXHIBIT 3**



UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
WASHINGTON, D.C. 20231
www.uspto.gov

**DATE:**     July 3, 2002
**TO:**       Certificates of Correction Branch
**FROM:**     Yvonne Eyler, Ph.D.
              SPE, Art Unit 1646
**SUBJECT:**  REQUEST FOR CERTIFICATE OF CORRECTION

Please issue a Certificate of Correction in U. S. Letters Patent No.
6,030,790 as specified on the attached Certificate.

Yvonne Eyler, Ph.D., SPE
Art Unit 1646

**Exh. 3, Page 199**

# UNITED STATES PATENT AND TRADEMARK OFFICE

# CERTIFICATE

Patent No.  6,030,790
Patented:  February 29, 2000

On petition requesting issuance of a certificate for correction of inventorship pursuant to 35 U.S.C. 256, it has been found that the above identified patent, through error and without deceptive intent, improperly sets forth the inventorship.  Accordingly, it is hereby certified that the correct inventorship of this patent is:

Wolf-Georg Forssmann, Knut Adermann, Dieter Hock, and Markus Mägerlein.

Yvonne  Eyler, Ph.D.
Supervisory Patent Examiner,
Art Unit 1646

EXHIBIT 4

United States Patent and Trademark Office

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 08/817,547 | 03/27/1997 | KNUT ADERMANN | 07856-0007 | 8367 |

23594        7590        07/08/2002

JOHN S. PRATT
KILPATRICK STOCKTON LLP
1100 PEACHTREE
SUITE 2800
ATLANTA, GA  30309

| EXAMINER |
|---|
| KEMMERER, ELIZABETH |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1646 | 24 |

DATE MAILED: 07/08/2002

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 07-01)



UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATEN
UNITED STATES PATENT AND TRADEMARK OFFIC
WASHINGTON. D.C. 202
www.uspto.g

Paper No. 25

| | |
|---|---|
| *In re* Patent No. 6,030,790 : | **DECISION GRANTING** |
| Issue Date:  February 29, 2000 : | **PETITION** |
| Appl No.: 08/817,547 : | *37 CFR 1.324* |
| Filed: September 22, 1995 : | |
| For:  Haemopep Pharma GmbH : | |

## I.  CORRECTION OF INVENTORSHIP UNDER 37 CFR 1.324

This is a decision on the petition filed 01 July 2002 (Paper No. 24) to correct inventorship under 37 CFR 1.324.

The petition is granted.

The patented file is being forwarded to Certificate of Corrections Branch for issuance of a certificate naming only the actual inventor or inventors.

## II. REQUEST FOR CORRECTION OF OFFICE MISTAKE

This is a decision on the request for correction of office mistake filed 01 July 2002 (Paper No. 24).

The request is granted.

The patented file is being forwarded to Certificate of Corrections Branch for issuance of a certificate of Corrections adding the text appearing on the form PTO 1050 attached as Attachment # 6 to Paper No. 24, 01 July 2002.

Yvonne  Eyler, Ph.D.
Supervisory Patent Examiner,
Art Unit 1646,
Technology Center 1646

.

**EXHIBIT 5**

# UNITED STATES PATENT AND TRADEMARK OFFICE

## CERTIFICATE

Patent No.   6,030,790
Patented:    February 29, 2000

On petition requesting issuance of a certificate for correction of inventorship pursuant to 35 U.S.C. 256, it has been found that the above identified patent, through error and without deceptive intent, improperly sets forth the inventorship.  Accordingly, it is hereby certified that the correct inventorship of this patent is:

> Wolf-Georg Forssmann, Hannover, Germany; Knut Adermann, Hannover, Germany; Dieter Hock, Neckarbischofsheim, Germany; Markus Mägerlein, Obernburg, Germany

**Signed and Sealed this Sixth Day of August 2002.**

Yvonne Eyler, Ph. D.
Supervisory Patent Examiner
Art Unit 1646

**EXHIBIT 6**

## NOTICE RE: CERTIFICATES OF CORRECTION

DATE : _)/16/2007_                              Paper No.: _____

TO : **Supervisor, Art Unit** _1646_

SUBJECT : **Certificate of Correction Request in Patent No.:** _6103679()_

A response to the following question is requested with respect to the accompanying request for a certificate of correction.

**With respect to the change(s) requested, correcting Office and/or Applicant's errors, should the patent read as shown in the certificate of correction?  No new matter should be introduced, nor should the scope or meaning of the claims be changed.**

*PLEASE COMPLETE THIS FORM AND*
*RETURN WITH FILE, WITHIN 7 DAYS,*
*TO CERTIFICATES OF CORRECTION BRANCH -* **PK 3-915/922**
*PALM LOCATION 7580 - TEL. N0. 305-8309*

*THANK YOU FOR YOUR ASSISTANCE!*

Note your decision by placing a check mark in the appropriate box below, indicating whether all changes requested in the Request for Certificate of Correction should be applied.  Please specify which changes should not be applied and indicate the reason(s) for denial, in the "Comments" section below.

☐ **YES**      ☐ **NO**

☐ **Comments:** _____

_____

_____

_____

_____

_____        _____
      **Supervisor**                            **Art Unit**

PTOL-306 (REV. 2/02)                    **U.S. DEPARTMENT OF COMMERCE Patent and Trademark Office**